

2015 APR 23   PM 4:03

WILLIAM W. BLEVINS
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

**INDICTMENT FOR CONSPIRACY TO COMMIT WIRE FRAUD AND TO LAUNDER MONEY, WIRE FRAUD, MONEY LAUNDERING, MAKING AND SUBSCRIBING FALSE INCOME TAX RETURNS, MAIL FRAUD AND NOTICE OF FORFEITURE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET NO. 15-100** |
| **v.** | * | **SECTION SECT. L MAG 2** |
| **WALTER P. REED** | * | **VIOLATIONS: 18 U.S.C. § 2** |
| **STEVEN P. REED** | | **18 U.S.C. § 371** |
| | * | **18 U.S.C. § 1341** |
| | | **18 U.S.C. § 1343** |
| | * | **18 U.S.C. § 1956** |
| | | **26 U.S.C. § 7206(1)** |
| | * | |

\*     \*     \*

The Grand Jury charges that:

## COUNT 1
(18 U.S.C. § 371 – Conspiracy)

**A.    AT ALL TIMES MATERIAL HEREIN:**

*Defendant Walter P. Reed and the Walter Reed Campaign Organization*

1.    From about 1985 through January 12, 2015, the defendant, **WALTER P. REED**, resided in Covington, Louisiana and was the District Attorney for the State of Louisiana's 22nd Judicial District.  As District Attorney, **WALTER P. REED** served approximately 300,000

_____ Fee_____
_____ Process_____
  X   Dktd_____
_____ CtRmDep_____
_____ Doc. No._____

residents of Washington and St. Tammany Parishes.  As the elected chief law enforcement officer for the 22nd Judicial District, **WALTER P. REED** supervised a staff of approximately forty-seven assistant district attorneys as of about 2012.

2.       As District Attorney, **WALTER P. REED** served six-year terms between elections.

3.       The defendant, **WALTER P. REED**, formed and maintained a campaign organization entitled "Walter Reed Campaign" to solicit and raise campaign funds from individual and corporate donors.  The campaign funds were solicited on the representations and premise that the funds would be used to facilitate **WALTER P. REED**'s reelection for the position of District Attorney for the 22nd Judicial District.

4.       Beginning in or around January 2005, **WALTER P. REED** maintained and had signatory authority over the Walter Reed Campaign Fund account at Resource Bank, bearing account number xxx6465.

5.       In addition to having a separate bank account, the "Walter Reed Campaign" organization also had a treasurer, R.G., and a tax identification number ("TIN").  In accordance with federal law, the Walter Reed Campaign organization was required to file federal tax returns with the Internal Revenue Service.  The Walter Reed Campaign filed returns for tax years 1995 through 2014.

### *Steven P. Reed and His Companies*

6.       The defendant, **STEVEN P. REED**, was the son of the defendant, **WALTER P. REED**.

7.       **STEVEN P. REED** resided within the Eastern District of Louisiana.

2

8.    On or about October 25, 2002, defendant **STEVEN P. REED** incorporated Globop, Inc. ("Globop"), a wholly owned Louisiana corporation domiciled in New Orleans, Louisiana.  Globop purportedly designed and produced multi-media events, including concerts and films.  **STEVEN P. REED** opened and maintained a bank account in the name of Globop at Capital One Bank bearing account number xxxxxx8591 (the "Globop bank account").

9.    On or about July 15, 2010, defendant **STEVEN P. REED** incorporated Liquid Bread, LLC. ("Liquid Bread"), a wholly owned Louisiana corporation domiciled in New Orleans, Louisiana.  Liquid Bread purportedly provided, among other things, catering services for events.  **STEVEN P. REED** opened and maintained a bank account in the name of "Liquid Bread, LLC DBA Tugendhaft's Tavern" at Gulf Coast Bank & Trust Company bearing account number xxxxx6220 (the "Liquid Bread bank account").

10.    On or about September 22, 2010, defendant **STEVEN P. REED**, in the name of "Liquid Bread LLC, d/b/a Tugendhaft's Tavern," applied for and received a loan in the amount of approximately $60,000 (loan number 91982) from Gulf Coast Bank and Trust Company to open, own, and operate Tugendhaft's Tavern, a bar located in Covington, Louisiana (the "Tugendhaft's loan").

11.    To guarantee receipt of the Tugendhaft's loan, the defendant, **WALTER P. REED**, co-signed the loan for his son, defendant **STEVEN P. REED**.  As co-signor, defendant **WALTER P. REED** was equally responsible to repay the Tugendhaft's loan should **STEVEN P. REED** default or fall behind on payments.

### *Campaign Finance Laws of the State of Louisiana*

12.     Under the Campaign Finance Laws of the State of Louisiana ("Campaign Finance Laws"), prior to about 2011, the position of District Attorney for the 22nd Judicial District qualified as a "District" office. *See* La. Rev. Stat. 18:1483(7). After about 2011, and continuing through 2015, the position of District Attorney for the 22nd Judicial District qualified as a "Major" office. *See* La. Rev. Stat. 18:1483(11).

13.     The Campaign Finance Laws require that campaign contributions for Major and District offices, including the position of District Attorney for the 22nd Judicial District, must be for the purpose of supporting, opposing, or otherwise influencing the nomination or election of a person to public office. *See* La. Rev. Stat. 18:1483(6)(a).

14.     The Campaign Finance Laws prohibit the use of campaign funds by any elected public office holder or any candidate for public office, including the position of District Attorney for the 22nd Judicial District, to pay for personal expenses unrelated to a political campaign or the holding of public office or party position. *See* La. Rev. Stat. 18:1505.2(I)(1).

15.     The Campaign Finance Laws require candidates for the position of District Attorney for the 22nd Judicial District to designate a bank, savings and loan, or money market mutual fund as a campaign depository. All receipts must be deposited into an account maintained at the depository. All expenditures, except for non-personal service payments (*i.e.*, "petty cash") in amounts less than $100, must be made by check drawn on the account. *See* La. Rev. Stat. 18:1495.2(D).

16.     The Campaign Finance Laws also require candidates for the position of District Attorney for the 22nd Judicial District to keep and maintain records of every contribution,

4

including the sale of tickets to testimonials and fundraising events, except purchases of campaign paraphernalia in the amount of $25 or less. *See* La. Rev. Stat. 18:1495.3.

17.     The Campaign Finance Laws also prohibit a candidate from steering campaign funds to a candidate's immediate family member, including a candidate's children, unless, among other requirements, (1) the family member's business is a bona fide business that has done business regularly in the state for at least twelve months at the time of the payment, (2) the campaign account payment is made solely for campaign purposes, and (3) the campaign account payment is made through an arm's length transaction in which the value of the goods or services furnished is commensurate with the consideration provided. *See* La. Rev. Stat. 18:1505.2(I)(5).

18.     The Campaign Finance Laws require elected public office holders and candidates for Major and District offices, including the District Attorney for the 22nd Judicial District, to file with the Louisiana Board of Ethics, either electronically or via mail, detailed annual reports of all campaign account activity.  The annual reports must detail contributions received and expenditures made from a campaign account, by or on behalf of such public office holder or candidate. *See* La. Rev. Stat. 18:1495.5.

19.     In or around January 2010, defendant, **WALTER P. REED**, arranged to file his campaign finance reports electronically.

20.     Once filed, the campaign finance reports are available for public viewing online at http://ethics.la.gov/EthicsViewReports.aspx?Reports=CampaignFinance.

21.     Acting at the direction and on behalf of defendant, **WALTER P. REED**, R.G. prepared the Walter Reed Campaign campaign finance reports for filing with the Louisiana

5

Board of Ethics. Defendant, **WALTER P. REED**, reviewed and approved the Walter Reed Campaign campaign finance reports before they were filed electronically.

**B.    THE CONSPIRACY:**

Beginning at a time unknown, and continuing in or near the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **WALTER P. REED** and **STEVEN P. REED**, willfully and knowingly did combine, conspire, confederate, and agree:

1.    To devise and intend to devise a scheme and artifice to defraud and to obtain money and property from the Walter Reed Campaign and from contributors to the Walter Reed Campaign by means of materially false and fraudulent pretenses, representations, and promises, by use of interstate wire transmissions, in violation of Title 18, United States Code, Section 1343; and

2.    Knowing the funds involved were the proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and foreign commerce, which involved proceeds of a specified unlawful activity, wire fraud, knowing that the transactions were designed in whole or in part to conceal the nature, location, source, ownership and control of the proceeds of specified unlawful activity, wire fraud, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**C.    THE SCHEME AND ARTIFICE TO DEFRAUD:**

1.    Beginning at a time unknown, and continuing through on or about December 31, 2012, in the Eastern District of Louisiana and elsewhere, the defendant, **WALTER P. REED**, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property from the Walter Reed Campaign and from contributors to the Walter

6

Reed Campaign by means of materially false and fraudulent pretenses, representations, and promises, as a means to pay the prohibited personal expenses of the defendant, **WALTER P. REED**.

2.      It was part of the scheme to defraud that the defendant, **WALTER P. REED**, would solicit and cause to be solicited individuals, entities, and political action committees to contribute monies to the Walter Reed Campaign for the stated purpose of supporting his reelection to the position of District Attorney for the 22nd Judicial District.

3.      It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, regularly held fundraising events to raise money for the stated purpose of supporting his reelection to the position of District Attorney for the 22nd Judicial District, including events at the Castine Center in Mandeville, Louisiana on about June 10, 2011, at which the musicians Irma Thomas and Christopher Cross performed, and on about September 22, 2012, at which the rock band "America" performed ("the America Event").

4.      It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, solicited contributions to the Walter Reed Campaign and intentionally failed to disclose to potential contributors that he had already used a substantial portion of funds contributed to the Walter Reed Campaign for his personal benefit and that he intended to use a portion of any new Walter Reed Campaign contributions to pay personal expenses.

5.      It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, caused the public filing of false and misleading campaign finance reports with the Louisiana Board of Ethics in which **WALTER P. REED** falsely characterized expenditures from the account as being for legitimate purposes related to his campaign, such as "catering,"

"production expenses," and "campaign function" to disguise the fact that the expenditures were actually for personal expenses unrelated to his campaign for reelection.

6.     It was further part of the scheme to defraud that the false and misleading campaign reports filed by the defendant, **WALTER P. REED**, enabled him to continue the scheme to defraud without detection for a lengthy period of time and thereby avoiding scrutiny from the Louisiana Board of Ethics or the general public.

7.     It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, spent at least $100,000 from the Walter Reed Campaign Fund bank account on personal expenses unrelated to his campaign.

8.     It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, caused checks to be written drawing on the funds from the Walter Reed Campaign Fund bank account to pay for expenses unrelated to his campaign for the position of District Attorney for the 22nd Judicial District.  These checks were used to recruit potential clients for his private legal practice, to pay off various expenses incurred by his son, **STEVEN P. REED**, to pay for private and personal dinners, and for other personal expenses.

9.     It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, overpaid his son, **STEVEN P. REED**, from the Walter Reed Campaign Fund for work allegedly performed for or on behalf of the Walter Reed Campaign.  These payments were not made solely for campaign purposes and the payment amounts grossly exceeded the value of any services provided (*i.e.*, not commensurate with the work performed).  In this manner, **WALTER P. REED** was able to funnel campaign money to **STEVEN P. REED** without inviting scrutiny.

10.     It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, overpaid his son, **STEVEN P. REED**, from the Walter Reed Campaign Fund for work allegedly performed to produce an anti-drug digital video entitled "Prevention of Juvenile Drug Abuse" ("anti-drug video").

11.     It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, hosted a housewarming party for his friends and family on about April 14, 2012, to celebrate moving into a new residence.  Although the event was unrelated to his position as District Attorney or his campaign for reelection, **WALTER P. REED** caused a total of approximately $25,289.11 to be paid from the Walter Reed Campaign Fund for the housewarming party, including approximately $8,352.64 to Globop, **STEVEN  P. REED**'s company, purportedly for providing production services.

12.     It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, arranged for his son, **STEVEN P. REED**, to be paid approximately $29,400 from the Walter Reed Campaign Fund purportedly for providing catering or bar services at the America Event.  Any services **STEVEN P. REED** provided were not commensurate with the amount listed on the invoice.

13.     It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, used funds from the Walter Reed Campaign Fund to hire Company A to produce the entertainment for the America Event.  **WALTER P. REED** also required the owner of Company A to pay **STEVEN P. REED** $5,000 and agreed to add $5,000 to Company A's price as a means to funnel campaign monies to the defendant, **STEVEN P. REED**.

9

14.     It was further part of the scheme to defraud that the defendant, **WALTER P. REED**, used Company B to funnel money from the Walter Reed Campaign Fund to **STEVEN P. REED** by hiring Company B to provide food catering services for the America Event and then directing Company B to funnel a $5,000 payment from the monies Company B received from the Walter Reed Campaign Fund account to Liquid Bread LLC, a company controlled by **STEVEN P. REED**.

## D.     OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY:

In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

1.     On or about March 27, 2009, **WALTER P. REED** caused a payment to be made via check from the Walter Reed Campaign Fund to **STEVEN P. REED**, through his company Globop, in the amount of approximately $5,000 as partial payment for the production of an anti-drug digital video.

2.     On or about March 31, 2009, **STEVEN P. REED** submitted to the Walter Reed Campaign a Globop invoice in the amount of $9,800 purporting to be for the production of an anti-drug video.

3.     On or about April 1, 2009, **WALTER P. REED** caused a payment to be made via check from the Walter Reed Campaign Fund to **STEVEN P. REED**, through his company Globop, in the amount of approximately $4,800 as partial payment for the production of an anti-drug video.

4.      On or about June 12, 2009, **WALTER P. REED** caused a payment to be made via check from the Walter Reed Campaign Fund to **STEVEN P. REED**, through his company Globop, in the amount of approximately $2,000 as partial payment for the production of an anti-drug video.

5.      On or about October 5, 2009, **WALTER P. REED** caused a payment to be made via check from the Walter Reed Campaign Fund to **STEVEN P. REED**, through his company Globop, in the amount of approximately $2,500 as partial payment for the production of an anti-drug video.

6.      On or about November 9, 2009, **STEVEN P. REED** submitted to the Walter Reed Campaign a second invoice in the amount of $14,300 purporting to be for the production of an anti-drug video.

7.      On about April 13, 2012, **WALTER P. REED** caused the Walter Reed Campaign Fund to issue a check made payable to **STEVEN P. REED'S** company, Globop, in the amount of $7,806.12 for a housewarming party at **WALTER P. REED'S** residence that was unrelated to the campaign.

8.      On about April 22, 2012, **WALTER P. REED** caused the Walter Reed Campaign Fund to issue a check made payable to **STEVEN P. REED'S** company, Globop, in the amount of $552.64 for a housewarming party at **WALTER P. REED'S** residence that was unrelated to the campaign.

9.      On or about September 22, 2012, **WALTER P. REED** held the America Event for the purpose of "assuring the public that Walter is by far the best and only choice for our

11

District Attorney." Tickets to the America Event cost approximately $150 each, and approximately 1,421 tickets were sold.

10.     At a date unknown, but prior to October 1, 2012, **STEVEN P. REED** submitted to the Walter Reed Campaign a Liquid Bread invoice in the amount of $29,400 purporting to be for "Bar Services: Beverages and Liquor for 2,450 persons at $12.00 per person" provided at the America Event.

11.     On about October 5, 2012, **WALTER P. REED** caused the Walter Reed Campaign Fund to issue a check made payable to **STEVEN P. REED'S** company, Liquid Bread LLC, in the amount of $29,400 purporting to be in payment for services provided at the America Event.

12.     On or about September 20, 2012, **WALTER P. REED** caused a check in the amount of $32,350 to be paid to Company A from the bank account of the Walter Reed Campaign Fund.  This check funded the production of live entertainment at the America Event, as well as the $5,000 payment to **STEVEN P. REED**.

13.     On or about September 25, 2012, Company A, acting at **WALTER P. REED's** direction, issued a $5,000 check to **STEVEN P. REED'S** company, Glopbop.

14.     On or about February 15, 2013, **WALTER P. REED** caused the filing of a false 2012 campaign finance report.  The report falsely represented that the entire $32,350 Walter Reed Campaign Fund account payment to Company A was for "production expenses - fundraiser" and failed to disclose the $5,000 payment to **STEVEN P. REED,** through his company, Globop.

15.     On or about September 5, 2012, **WALTER P. REED** caused a check in the amount of $17,500 to be paid to Company B from the Walter Reed Campaign Fund bank account for services provided at the America Event.

16.     On or about September 24, 2012, **WALTER P. REED** caused another check in the amount of $17,500 to be paid to Company B from the Walter Reed Campaign Fund bank account for services provided by Company B at the America Event.

17.     On or about September 24, 2012, **WALTER P. REED** instructed Company B's owner to refund $5,000 of the agreed upon price and to provide the refund directly to **STEVEN P. REED** in the form of a cashier's check made out to Liquid Bread LLC.

18.     On or about September 25, 2012, acting at **WALTER P. REED's** direction, a representative of Company B provided a cashier's check in the amount of $5,000 to "Liquid Bread LLC," **STEVEN P. REED'S** company.

19.     On or about October 4, 2012, **STEVEN P. REED** used monies he received directly from his father's campaign account and the monies his father directed Company B to pay to **STEVEN P. REED** to repay the bulk of the Tugendhaft's Tavern loan that he and his father **WALTER P. REED** owed Gulf coast Bank & Trust Company.

20.     On or about February 15, 2013, **WALTER P. REED** caused the filing of a false 2012 campaign finance report.  The report falsely represented that the entire $35,000 payment to Company B was for "catering-fundraising event" and failed to disclose the $5,000 payment to **STEVEN P. REED**.

21.     On or about May 21, 2014, contemporaneous with widespread news media coverage of the $29,400 payment from the Walter Reed Campaign Fund account to **STEVEN P. REED, STEVEN P. REED** filed an amended federal income tax return for tax year 2012.  The amended return, for the first time, reported the $29,400 payment from his father's campaign account as income.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### (18 U.S.C. § 1343 – Wire Fraud)

A.     The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

B.     On or about June 14, 2010, in the Eastern District of Louisiana and elsewhere, the defendant, **WALTER P. REED**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money, funds and property by means of false and fraudulent pretenses, representations and promises and attempting to do so, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals and sounds by means of wire communications from the Eastern District of Louisiana, namely the bank account for the Walter Reed Campaign Fund at Resource Bank, to a location outside the State of Louisiana, when he caused a check in the amount of $2,635.00 drawn on the Walter Reed Campaign Fund to be provided to and deposited into the bank account of "Gerald's Steakhouse" for an expense unrelated to the campaign of the defendant, **WALTER P. REED**, for reelection as District Attorney for the 22nd Judicial District, to wit: a dinner for "Pentecostal Preachers" for the purpose of recruiting them to refer private civil legal work to him

14

and the law firm with which he was affiliated, which expense **WALTER P. REED** subsequently submitted to the law firm for reimbursement claiming that "[w]e have already gotten [sic] one good personal injury case from this dinner, which I will tell you about later."

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 3
(18 U.S.C. § 1343 – Wire Fraud)

A.     The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

B.     On or about June 15, 2010, in the Eastern District of Louisiana and elsewhere, the defendant, **WALTER P. REED**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money, funds and property by means of false and fraudulent pretenses, representations and promises and attempting to do so, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals and sounds by means of wire communications from the Eastern District of Louisiana, namely the bank account for the Walter Reed Campaign Fund at Resource Bank, to a location outside the State of Louisiana, when he caused a check in the amount of $589.68 drawn on the Walter Reed Campaign Fund to be provided to and deposited into the bank account of "Annadelle's Plantation" for an expense unrelated to the campaign of the defendant, **WALTER P. REED**, for reelection as District Attorney for the 22nd Judicial District, to wit: a birthday party for a seventeen-year-old male and his approximately nine friends, all of whom were minors.

All in violation of Title 18, United States Code, Sections 1343 and 2.

15

## COUNT 4
(18 U.S.C. § 1343 – Wire Fraud)

**A.**      The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

**B.**      On or about November 24, 2011, in the Eastern District of Louisiana and elsewhere, the defendant, **WALTER P. REED**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money, funds and property by means of false and fraudulent pretenses, representations and promises and attempting to do so, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals and sounds by means of wire communications from the Eastern District of Louisiana, namely the bank account for the Walter Reed Campaign Fund at Resource Bank, to a location outside the State of Louisiana, when he caused a check in the amount of $1,885.36 drawn on the Walter Reed Campaign Fund to be provided to and deposited into the bank account of "Dakota Restaurant" for an expense unrelated to the campaign of the defendant, **WALTER P. REED**, for reelection as District Attorney for the 22nd Judicial District, to wit: a Thanksgiving Day dinner for **WALTER P. REED** and approximately ten other members of his family and a $500 gift card for his future personal use.

     All in violation of Title 18, United States Code, Sections 1343 and 2.

16

## COUNT 5
### (18 U.S.C. § 1343 – Wire Fraud)

**A.**     The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

**B.**     On or about April 23, 2012 in the Eastern District of Louisiana and elsewhere, the defendant, **WALTER P. REED**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money, funds and property by means of false and fraudulent pretenses, representations and promises and attempting to do so, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals and sounds by means of wire communications from the Eastern District of Louisiana, namely the bank account for the Walter Reed Campaign Fund at Resource Bank, to a location outside the State of Louisiana, when he caused a check in the amount of $614.49 drawn on the Walter Reed Campaign Fund to be provided to and deposited into the bank account of "Flowers N Fancies" for an expense unrelated to the campaign of the defendant, **WALTER P. REED**, for reelection as District Attorney for the 22nd Judicial District, to wit: floral arrangements to several individuals including to his daughter and to Person A, with a message that stated, "[T]o my rodeo girl from a secret admirer from Camp J."

All in violation of Title 18, United States Code, Sections 1343 and 2.

17

## COUNT 6
### (18 U.S.C. § 1343 – Wire Fraud)

A.      The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

B.      On or about August 29, 2012 in the Eastern District of Louisiana and elsewhere, the defendant, **WALTER P. REED**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money, funds and property by means of false and fraudulent pretenses, representations and promises and attempting to do so, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals and sounds by means of wire communications from the Eastern District of Louisiana, namely the bank account for the Walter Reed Campaign Fund at Resource Bank, to a location outside the State of Louisiana, when he caused a check in the amount of $4,701.79 drawn on the Walter Reed Campaign Fund to be provided to and deposited into the bank account of "First Pentecostal Church" in North Little Rock, Arkansas for an expense unrelated to the campaign of the defendant, **WALTER P. REED**, for reelection as District Attorney for the 22nd Judicial District, to wit: a dinner for a gathering of religious figures for the purpose of recruiting them to refer private civil legal work to him and the law firm with which he was affiliated.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 7
### (18 U.S.C. § 1343 – Wire Fraud)

**A.** The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

**B.** On or about October 1, 2012 in the Eastern District of Louisiana and elsewhere, the defendants, **WALTER P. REED** and **STEVEN P. REED**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money, funds and property by means of false and fraudulent pretenses, representations and promises and attempting to do so, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals and sounds by means of wire communications from the Eastern District of Louisiana, namely the bank account for the Walter Reed Campaign Fund at Resource Bank, to a location outside the State of Louisiana, when they caused a check in the amount of $29,400.00 drawn on the Walter Reed Campaign Fund to be provided to and deposited into the bank account of Liquid Bread, LLC, which included expenses unrelated to the campaign of the defendant, **WALTER P. REED**, for reelection as District Attorney for the 22nd Judicial District.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 8 - 9
(18 U.S.C. § 1956 – Money Laundering)

**A.**   **AT ALL TIMES MATERIAL HEREIN:**

The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

**B.**   **WAYS AND MEANS BY WHICH THE MONEY WAS LAUNDERED:**

1.   In or about September 2012, **WALTER P. REED** and **STEVEN P. REED** conducted or caused to be conducted financial transactions in the Eastern District of Louisiana and elsewhere whereby funds generated from the fraudulent scheme set for in Part B of Count 1 of this Indictment were paid to entities controlled and owned by **STEVEN P. REED**.

2.   These transactions, which involved Company A and Company B, both service providers to the America Event sponsored and paid for by the Walter Reed Campaign, were conducted at the direction of **WALTER P. REED**, who caused Company A and Company B to make payments to entities controlled by **STEVEN P. REED** in a manner that would conceal and disguise these payments as legitimate campaign expenditures when, in truth and in fact, the payments were made for the personal benefit of **WALTER P. REED** and **STEVEN P. REED**.

**C.**   **MONEY LAUNDERING:**

On or about the dates listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **WALTER P. REED** and **STEVEN P. REED**,

1.   Knowing that the funds involved represented the proceeds of some form of unlawful activity, as defined in Title 18, United States Code, Section 1956(c)(1),

2.   Did knowingly and willfully conduct and cause to be conducted financial transactions as defined in Title 18, United States Code, Section 1956(c)(4), that is, the deposit of

20

funds into bank accounts at financial institutions which were engaged in and the activities of which affected interstate commerce, as set forth below,

        3.      Such financial transactions in fact involved the proceeds of specified unlawful activity, that is, the knowing and intentional commission of wire fraud in violation of Title 18, United States Code, Section 1343, and

        4.      The defendants acted with knowledge that the transactions were designed in whole or in part to conceal the nature, location, source, ownership and control of the proceeds of specified unlawful activity, the financial transactions being:

| Count | Date of Deposit | Amount | Transaction |
|-------|-----------------|--------|-------------|
| 8 | October 4, 2012 | $5,000.00 | Deposit of cashier's check from Company A into Liquid Bread bank account at Gulf Coast Bank and Trust Company |
| 9 | October 4, 2012 | $5,000.00 | Deposit of check from Company B into Globop, Inc. bank account at Capital One Bank |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 10 – 13
(26 U.S.C. § 7206(1) – False Statements on Income Tax Return)

**A.**     The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

**B.**     That on or about the dates listed below under the caption "Date Filed," in the Eastern District of Louisiana, the defendant, **WALTER P. REED**, did willfully make and subscribe United States Individual Tax Returns, Forms 1040, for the calendar years listed below under the caption "Tax Year," which were verified by a written declaration that they were made under the

penalties of perjury and which the defendant, **WALTER P. REED**, did not believe to be true and correct as to every material matter. Specifically, as **WALTER P. REED** then and there knew, the income tax returns, which were filed with the Internal Revenue Service, reported income in the amounts listed below whereas, as he then and there well knew, he had total income in excess of that amount:

| Count | Taxpayer Name | Income Reported | Tax Year | Date Filed |
|-------|---------------|-----------------|----------|------------|
| 10 | Walter P. Reed | $425,898 | 2009 | April 15, 2010 |
| 11 | Walter P. Reed | $270,149 | 2010 | October 15, 2011 |
| 12 | Walter P. Reed | $417,536 | 2011 | October 15, 2012 |
| 13 | Walter P. Reed | $714,060 | 2012 | October 15, 2013 |

All in violation of Title 26, United States Code, Section 7206(1).

## COUNTS 14 – 18
(18 U.S.C. § 1341 – Mail Fraud)

**A.    AT ALL TIMES MATERIAL HEREIN:**

1.    The allegations of Parts A, B, C, and D of Count 1 are hereby realleged and incorporated herein in their entirety by reference.

2.    St. Tammany Parish Hospital Service District Number 1 (St. Tammany Parish Hospital) is a not-for-profit community hospital system in St. Tammany Parish, within the Eastern District of Louisiana.  St. Tammany Parish Hospital's main campus is located in

Covington, Louisiana.  St. Tammany Parish Hospital is the largest healthcare provider in St. Tammany Parish.

3.       St. Tammany Parish Hospital is governed by an eight-member Board of Commissioners, which includes seven members appointed to six-year staggered terms by the St. Tammany Parish Council and an active staff physician elected by the medical staff. The St. Tammany Parish Hospital Board of Commissioners ("Hospital Board") meets approximately once a month and governs hospital operations.

4.       Beginning in about February 1990, L.C., an Assistant District Attorney with the Office of the District Attorney for the 22nd Judicial District, began attending Hospital Board meetings and advising the Hospital Board on various legal issues.  L.C. acted in his capacity as an Assistant District Attorney.  Initially, neither L.C., nor the Office of the District Attorney for the 22nd Judicial District was compensated for L.C.'s work.

5.       On or about August 17, 1992, the St. Tammany Parish Hospital Board passed a resolution establishing that the Office of the District Attorney for the 22nd Judicial District would provide legal representation to the Hospital Board in exchange for a legal retainer of $25,000 per year.

6.       On or about June 20, 1994, the Hospital Board passed a resolution reaffirming that the Office of the District Attorney for the 22nd Judicial District provided the St. Tammany Parish Hospital Board with legal representation and increasing the amount of the annual retainer to approximately $26,973.00.

7.      On or about March 26, 2001, the Hospital Board passed a resolution reaffirming that the Office of the District Attorney for the 22nd Judicial District provided the St. Tammany Parish Hospital Board with legal representation and increasing the amount of the annual retainer to approximately $30,000.00.

**B.      THE SCHEME TO DEFRAUD:**

1.      Beginning at a time unknown, but in or about 1994, and continuing through in or about May 2014, in the Eastern District of Louisiana and elsewhere, the defendant, **WALTER P. REED**, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property from the Office of the District Attorney for the 22nd Judicial District for the State of Louisiana by means of false and fraudulent pretenses, representations, and promises.

2.      It was part of the scheme to defraud that in about 1994, **WALTER P. REED** began attending meetings of the Hospital Board and advising the Hospital Board on various legal issues.  **WALTER P. REED** attended the meetings in his capacity as District Attorney for the 22nd Judicial District.

3.      It was further part of the scheme to defraud that **WALTER P. REED** arranged for monthly checks from St. Tammany Parish Hospital to be sent via United States mail or other commercial carrier to the Office of the District Attorney for the 22nd Judicial District. **WALTER P. REED** caused the checks to be deposited into a personal bank account under his custody and control, instead of into the bank account of the Office of the District Attorney for the 22nd Judicial District.

4.      It was further part of the scheme to defraud that between about May 1994 and May 2014, on dozens of occasions, when **WALTER P. REED** did not attend Hospital Board meetings, he directed an Assistant District Attorney from the Office of the District Attorney for the 22nd Judicial District to attend the meeting.  Assistant District Attorneys who attended the Hospital Board meetings were not compensated beyond their standard salary for their attendance.

5.      It was further part of the scheme to defraud that, notwithstanding **WALTER P. REED's** use of resources and personnel of the Office of the District Attorney for the 22nd Judicial District to appear at Hospital Board meetings, **WALTER P. REED** continued to keep and deposit into his personal bank accounts payments made by St. Tammany Parish Hospital that were intended for the Office of the District Attorney for the 22nd Judicial District as a retainer for legal representation.

6.      It was further part of the scheme to defraud that on or about July 7, 2014, **WALTER P. REED** arranged for a representative to transmit an unsigned Hospital Board resolution purporting to be from October 1996 to counsel for St. Tammany Parish Hospital.  The resolution claimed to recognize that **WALTER P. REED** had advised St. Tammany Parish Hospital in his personal capacity since May 1, 1994.  As **WALTER P. REED** well knew the Hospital Board did not discuss, vote on, or pass the purported resolution.

7.      It was further part of the scheme to defraud **WALTER P. REED** caused funds from St. Tammany Parish Hospital to be deposited into his personal financial accounts on a regular basis, when, in truth and in fact, he knew that these funds were actually intended for the Office of the District Attorney for the 22nd Judicial District for the legal representation that

representatives of the Office of the District Attorney for the 22nd Judicial District provided to St. Tammany Parish Hospital.

8.      It was further part of the scheme to defraud that **WALTER P. REED** furnished representatives of St. Tammany Parish Hospital with Tax ID Number XX-0XXX034 for St. Tammany Parish Hospital to complete and submit tax documents, including Forms 1099, in accordance with federal law.  In truth and in fact, Tax ID Number XX-XXX1034 was affiliated with an entity owned by **WALTER P. REED** named "Old English Antiques."

9.      It was further part of the scheme to defraud that in order to conceal the fact that he was taking money and property from the Office of the District Attorney for the 22nd Judicial District for the State of Louisiana, **WALTER P. REED** reported the funds that he diverted as income on his "Tier 2" personal financial disclosure to the Louisiana Board of Ethics, and, in all but one year, as gross receipts on his personal income tax returns.

**C.     THE MAILINGS:**

On or about the following dates, in the Eastern District of Louisiana, the defendant, **WALTER P. REED**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money, funds and property by means of false and fraudulent pretenses, representations and promises and attempting to do so, did knowingly cause to be delivered by mail or commercial carrier, according to the directions thereon, checks from St. Tammany Parish Hospital to the Office of the District Attorney for the 22nd Judicial District in the amounts listed below:

26

| Count | Check Date | Check Number | Amount of Check |
|-------|------------|--------------|-----------------|
| 14 | December 29, 2011 | 299717 | $2,500.00 |
| 15 | February 2, 2012 | 301402 | $2,500.00 |
| 16 | March 1, 2012 | 302805 | $2,500.00 |
| 17 | August 1, 2013 | 325804 | $2,500.00 |
| 18 | February 27, 2014 | 369500 | $2,500.00 |

## NOTICE OF FRAUD FORFEITURE

1.      The allegations of Counts 1-7 and 14-18 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 371, 1341, 1343 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

2.      As a result of the offenses alleged in Counts 1-7 and 14-18, **WALTER P. REED** and **STEVEN P. REED**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 371, 1341 and 1343, including but not limited to:

            a.      At least $365,932.00 in United States Currency and all interest and
                    proceeds traceable thereto.

27

b. The government specifically provides notice of its intent to seek a personal money judgment against the defendant in the amount of the fraudulently-obtained proceeds.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Sections 371, 1341 and 1343 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

## NOTICE OF MONEY LAUNDERING FORFEITURE

1. The allegations of Counts 1, 8, and 9 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

2. As a result of the offenses, alleged in Counts 1, 8, and 9, defendants, **WALTER P. REED** and **STEVEN P. REED**, shall forfeit to the United States all property real or personal,

involved in the aforesaid offenses and all property traceable to such property which was involved in the said violations of Title 18, United States Code, Sections 371, 1956 and 982, including but not limited to the following property:

    a.    At least $10,000.00 in United States Currency and all interest and proceeds traceable thereto.

    b.    The government specifically provides notice of its intent to seek a personal money judgment against the defendant in the amount of the fraudulently-obtained proceeds.

3.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) to

seek forfeiture of any other property of said defendants up to the value of the above forfeitable

property.

　　　All in violation of Title 18, United States Code, Section 982.

A TRUE BILL:

FOREPERSON

KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY

JORDAN GINSBERG
Assistant United States Attorney
Illinois Bar No. 6282956

RICHARD WESTLING
First Assistant United States Attorney
Louisiana Bar No. 20027

April 23, 2015

FORM OBD-34

No.

# UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

_____ Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

### WALTER REED
### STEVEN REED

## INDICTMENT

FOR CONSPIRACY TO COMMIT WIRE FRAUD AND
TO LAUNDER MONEY, WIRE FRAUD, MONEY
LAUNDERING, MAKING AND SUBSCRIBING FALSE
INCOME TAX RETURNS, MAIL FRAUD

**VIOLATIONS:**
    18 U.S.C. § 2
    18 U.S.C. § 371
    18 U.S.C. § 1341
    18 U.S.C. § 1343
    18 U.S.C. § 1956
    26 U.S.C. § 7206(1)



_A true bill_

_____

_Filed in open court this_ _____ _day of_
_____ _A.D. 2015._

_____
    _Clerk_

_Bail $_ _____

_____
Jordan Ginsberg
Assistant United States Attorney