UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 15-100 |
| WALTER REED<br>STEVEN REED | SECTION "L" |

**ORDER & REASONS**

The Court has pending before it Defendants Walter and Steven Reed's Motions to Dismiss several counts of the indictment. (R. Docs. 40, 43). The Court has reviewed the briefs and heard oral argument and now issues this Order and Reasons.

**I.    BACKGROUND**

From 1985 to January 12, 2015, Walter Reed served as the District Attorney for Louisiana's 22nd Judicial District. Steven Reed is his son. On April 23, 2015, the United States government filed an eighteen-count indictment (the "Indictment") charging Defendants Walter and Steven Reed with conspiracy to commit wire fraud and money laundering, as well as substantive counts of wire fraud, money laundering, false statements on income tax returns, and mail fraud. The gravamen of the Indictment is Defendants' alleged improper personal use of campaign funds. Walter Reed is alleged to have solicited campaign funds from donors on the premise that the funds would be used to facilitate his reelection and then used those funds to pay for personal expenses unrelated to his campaign. The counts at issue with regard to the present pretrial motions are as follows: count 1 charges Walter and Steven Reed with conspiring to commit wire fraud and money laundering in violation of 18 U.S.C. § 371; counts 2-6 charge Walter Reed with wire fraud in violation of 18 U.S.C. § 1343; count 7 charges Walter and Steven

Reed with wire fraud in violation of 18 U.S.C. § 1343; and counts 8 and 9 charge Walter and Steven Reed with money laundering in violation of 18 U.S.C. § 1956.

## II. LAW AND ANALYSIS

Defendants Walter and Steven Reed now move to dismiss the conspiracy, wire fraud, and money laundering counts against them. The Defendants argue that these counts fail to charge an offense because (1) they represent a federal encroachment upon the State of Louisiana's right to establish and enforce state campaign laws in violation of Article X of the United States Constitution; (2) the wire fraud counts fail to properly allege a victim defrauded of something of tangible, calculable value; and (3) the money laundering counts are in violation of Congressional intent to exclude campaign violations from predicate offenses for money laundering. The Court will address each of these arguments in turn.

### a. Standard on Motion to Dismiss Indictment

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to move to dismiss an indictment for failure to charge an offense. Rule 7(c) requires a "plain, concise and definite written statement of the essential facts constituting the offense charged." These requirements are essentially the same as those of the Sixth Amendment, which mandates that an indictment must: "(1) enumerate each *prima facie* element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Gaytan,* 74 F.3d 545, 551 (5th Cir.1996). The law "does not compel a ritual of words" when determining if an indictment is sufficient. *United States v. Wilson,* 884 F.2d 174, 179 (5th Cir. 1989). An indictment setting forth the offense in the words of the statute itself is generally sufficient, provided that the statue sets forth the essential elements of the offense. *See United States v. Gordon,* 780 F.2d 1165, 1169 (5th

Cir.1986). This is because the indictment's most basic purpose is to fairly inform the defendant of the charge against him. *Id.* Indeed, the "test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.* The Government is not required to prove its case in the indictment, but simply to set forth the elements of the offense, fairly inform defendants of the charges, and ensure no risk of future prosecution for the same offense. *United States v. Cavalier,* 17 F.3d 90, 92 (5th Cir.1994). Finally, on a motion to dismiss an indictment, the Court must take the indictment's allegations as true. *See United States v. Kay,* 359 F.3d 738, 742 (5th Cir.2004) (quoting *United States v. Hogue,* 132 F.3d 1087, 1089 (5th Cir.1998)). Therefore, the Court must examine the wire fraud and money laundering statutes as applied to the facts alleged in the Indictment, and determine whether Defendants' conduct, as charged, reflects a proper interpretation of criminal activity under the relevant criminal statutes.

### b. Federal Fraud in Conjunction with State Elections

Defendants argue that federal regulation and enforcement of state campaign law runs afoul of Supreme Court and Fifth Circuit precedent and violates Article X of the United States Constitution, which mandates that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." In support of this argument, Defendants point to the fact that the State of Louisiana has criminalized the conduct with which they are charged and set out a detailed procedure for enforcing the law by specifying allowable campaign expenditures, establishing a procedure for investigating alleged violations, setting applicable civil and criminal penalties, and setting a statute of limitations. La.R.S. 18 § 1, et seq. Defendants aver that the government's case relies on a finding that the expenses were "unrelated" to Reed's campaign; and, that question—whether

3

an expenditure of state political campaign funds by a state political candidate is "related to a campaign"—is a question of state law interpretation that does not implicate interstate commerce or individuals in other states. In further support of this argument, Defendants rely on the federalism concerns raised in *Cleveland v. United States*, 531 U.S. 12 (2000) and *United States v. Ratcliff*, 488 F.3d 639 (5th Cir. 2007). However, Defendants' reliance on these cases for the proposition that they preclude defendants from being charged with federal criminal violations for fraud committed in conjunction with state elections is misplaced. The federalism concerns expressed in the *Ratcliff* and *Cleveland* cases are not the bases for the holdings in those cases.

In *Cleveland*, the Supreme Court considered the question of whether the mail fraud statute reaches false statements made in an application for a state lottery license. *Cleveland*, 531 U.S. at 15. In holding that it does not, the Supreme Court stated that "[e]quating issuances of licenses or permits with deprivation of property would subject to federal mail fraud prosecution a wide range of conduct traditionally regulated by state and local authorities." *Id.* at 24. However, despite this language, the holding in *Cleveland* was predicated on the fact the alleged fraud did not deprive the state of "property" under § 1341 because a video poker license has no value to the state prior to its issuance. The federalism concern expressed in *Cleveland* related specifically to the expansion of the definition of property.

In *Ratcliff*, the defendant was charged with using the mails in a scheme to defraud Livingston Parish of the salary and employment benefits of elected office through misrepresentations he made to the Board of Ethics concerning the financing of his campaign. 488 F.3d 639, 643 (5th Cir. 2007). According to the Government, Ratcliff secured his reelection as parish president by obtaining illegal funding and concealing his violations from the Board of Ethics. *Id.* Given that "the financial benefits budgeted for the parish president go to the winning

candidate regardless of who that person is," the Fifth Circuit held that the alleged misconduct could not constitute mail fraud because the parish was not deprived of any money or property by means of Ratcliff's misrepresentations since the parish would have had to pay the salary to whomever won the election.  *Id.* at 645; *see also United States v. Turner,* 465 F.3d 667, 680 (6th Cir. 2006) (finding no deprivation of property "because the relevant salary would be paid to someone regardless of the fraud. In such a case, the citizens have simply lost the intangible right to elect the official who will receive the salary.").  In other words, the scheme in *Ratcliff* was not "money or property fraud" cognizable under the mail fraud statute because the defendant's campaign finance misrepresentations "did not implicate the parish's property rights."  *Ratcliff,* 488 F.3d at 645–46.

Defendants argue that *Ratcliff* precludes finding a scheme to defraud based on alleged misrepresentations made during a state political campaign because it "invites [the Court] to approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress."  *Id.* at 649.  However, *Ratcliff* does not establish a blanket prohibition against federal prosecution of fraud committed under the auspices of a campaign for state office.  In fact, the federalism concerns expressed in *Ratcliff* appear only in the final two paragraphs of the opinion and do not govern the holding.  *See id.* at 648-49 ("Our analysis in this appeal also takes into account federalism concerns….").  The *Ratcliff* court's focus was not on federalism, but, rather, on the fact that the alleged victim, the parish, did not lose any money or property that it otherwise would have retained because the salary and benefits would have been paid out regardless of the defendant's misrepresentation.  *Id.* at 645-46.  This is unlike the present case where, if not for the alleged misrepresentations that campaign donations would be used in reelection efforts, campaign donors may have retained their money by choosing not to donate to

Reed's campaign. *See also United States v. McMillan*, 600 F.3d 434, 449 (5th Cir. 2010) (interpreting *Ratcliff* as requiring "that the scheme be to defraud the victim insofar as victims were left without money that they otherwise would have possessed"). Unlike in *Ratcliff* where "[f]inding a scheme to defraud *a governmental entity of the salary of elected office* based on misrepresentations made during a campaign would 'subject to federal mail fraud prosecution a wide range of conduct traditionally regulated by state and local authorities,'" here, the Government's allegations—that individuals were defrauded of money they would have otherwise retained because of misrepresentations made to them about the purpose to which their money would be put—is consistent with the conduct the federal fraud statute was intended to proscribe. 488 F.3d at 649 (emphasis added) (quoting *Cleveland*, 531 U.S. at 24).

Notably, *Ratcliff* was not the first opportunity the Fifth Circuit considered the federalism implications of prosecuting conduct which simultaneously violated Louisiana election law and the federal mail fraud statute. In *United States v. Curry*, 681 F.2d 406, 409 (5th Cir. 1982)[1], the chairman of a political action committee converted political contributions for personal use and falsely reported the required financial disclosures under Louisiana's Election Campaign Finance Disclosure Act. *Id.* The Fifth Circuit found that the evidence was sufficient to uphold the convictions for mail fraud[2] and discussed the relationship between the federal mail fraud indictments and the state election law violations:

---

[1] The Fifth Circuit's statement in *Curry* that "a scheme to defraud need not necessarily contemplate loss of money or property to the victims" was later limited by the Supreme Court's decision in *McNally v. United States,* 483 U.S. 350, 359 (1987). *See United States v. Herron*, 825 F.2d 50, 55n.6 (5th Cir. 1987) (recognizing that cases holding that defendants could be convicted of mail fraud for depriving citizens of intangible rights, such as the right to good government rather than only money or property, were limited by the *McNally* decision). However, *Curry* is still relevant for the proposition that violations of Louisiana campaign finance laws may also constitute fraud subject to federal prosecution without implicating federalism principles.

[2] The convictions were reversed on the grounds that the district court erred in refusing to provide the requested jury instruction. *Id*. at 408.

> The same conduct [giving rise to the mail fraud indictment] could also give rise to charges of state law violations. Thus, [the defendant] faced the possibility of being indicted under Louisiana law, for, inter alia, embezzling, and for 'knowingly and willfully' filing a false campaign report in violation of the Election Act's criminal provisions. However, '(t)he fact that a scheme may violate state laws does not exclude it from the proscriptions of the federal mail fraud statute....' Thus even when a state is itself the victim of a fraudulent scheme, and makes the scheme illegal under state law, the perpetrators may still be prosecuted under the federal mail fraud statute.

*Id.* at 411 n.11 (internal citations omitted) (quoting *Parr v. United States*, 363 U.S. 370, 389 (1960)).

Additionally, there are examples of other circuits upholding federal fraud convictions for politicians who have expended campaign funds for inappropriate personal uses. For example, in *United States v. Henningsen*, the United States Court of Appeals for the Seventh Circuit affirmed the mail fraud conviction of an alderman who failed to accurately account for campaign contributions and improperly used funds for personal expenses. 387 F.3d 585 (7th Cir. 2004). The defendant contended that he had never lied to campaign contributors, but only promised to seek re-election, and thus there could be no scheme to defraud. *Id.* at 589. The Seventh Circuit rejected this argument and instead found that a rational jury could have found, based upon the defendant's failure to accurately disclose revenue and expenditures in his campaign finance reporting, "that [the defendant's] solicitation of campaign funds for private use was dishonest, and that it influenced donors' decisions to contribute" so as to constitute a scheme to defraud. *Id.* at 589-90. The Seventh Circuit concluded that "it makes no difference that [the defendant] may not have solicited each donor individually. Each person who gave to [his] re-election campaign and whose money was diverted for non-campaign expenses was a victim of his false representations." *Id.* at 590; *see also United States v. Walker*, 490 F.3d 1282, 1299 (11th Cir. 2007) (finding defendant's federalism claims had no merit and affirming mail fraud convictions of former state legislator for misusing campaign funds and other conduct which also violated

7

state financial disclosure and ethics rules); *United States v. Delle Donna*, 552 F. Supp. 2d 475, 494 (D.N.J. 2008), *aff'd*, *United States v. Donna*, 366 F. App'x 441 (3d Cir. 2010) (denying motion to dismiss indictment for fraud when mayor's campaign contributions were expended for personal purposes).

Defendants distinguish both *Delle Donna* and *Henningson* on the grounds that they involve politicians who concealed campaign contributions and expenditures by pocketing donations and failing to list those donations on state-mandated campaign finance reports. In *Delle Donna*, the court found that the indictment sufficiently alleged that the campaign committee was defrauded where defendants pocketed cash contributions intended for deposit into the campaign accounts and failed to disclose the receipt of those contributions to the campaign as required under New Jersey law. *Id.* at 479-480. In *Henningson*, the Defendant was convicted of mail fraud based on the fact that he diverted donations made in support of his re-election bid for private use by writing checks to cash from the campaign account, taking back cash upon deposit of donations, writing checks to pay for personal expenses, and failing to fully disclose campaign revenue and expenditures in campaign finance reports mandated by the State of Wisconsin. *Id.* at 589. Defendants contend that *Henningson* and *Delle Donna*, which involve the failure to report campaign contributions and expenditures entirely, concealing the fact that the candidate was receiving money at all, are distinguishable from the present case where Reed fully disclosed all campaign contributions and expenditures. While *Delle Donna* and *Henningson* may be factually distinct from the present case, these factual distinctions are inapposite to the question of whether the federal fraud statutes can criminalize conduct that is also penalized under state election laws. Criminal fraud cases are inherently factually pregnant. However, the fact remains that if conduct violates state law, it can also violate federal law.

While Defendants are correct that the state could (and perhaps should) be the entity policing this alleged misconduct, this verity does not preclude the federal government from doing the same if it has jurisdiction. Thus, the remaining question before the Court is, assuming the facts alleged in the Indictment are true and correct, has the government sufficiently alleged the requisite elements of wire fraud and money laundering to support jurisdiction under the applicable federal statutes.

### c. Counts 2-7: Wire Fraud

The wire fraud statute provides that "whoever, having devised or intending to devise any scheme or artifice to defraud, *or* for obtaining money or property by means of false or fraudulent pretenses, representations or promises" uses the wires is guilty of wire fraud. *United States v. Hoeffner*, 626 F.3d 857, 863 (5th Cir. 2010) (citing 18 U.S.C. § 1343). "To prove wire fraud under 18 U.S.C. § 1343, the government must prove: (1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme." *United States v. Dowl*, 619 F.3d 494, 499 (5th Cir. 2010) (quotation omitted). The "scheme" referenced in the first element of 18 U.S.C. § 1341 must be one to deprive the alleged victim of money or property. *See Ratcliff*, 488 F.3d at 645.[3] Defendants dispute the sufficiency of the Indictment regarding the scheme to defraud. Specifically, the Defendants argue that the wire fraud charges should be dismissed for failure to allege a *victim defrauded of something of tangible, calculable value*. The Indictment alleges two victims—the Walter Reed Campaign organization and the campaign contributors.

As the Supreme Court has explained, "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the

---

[3] The exception to this rule is "honest services fraud" defined in 18 U.S.C. § 1346, which is not alleged in the Indictment.

9

deprivation of something of value by trick, deceit, chicane, or overreaching.' " *McNally v. United States,* 483 U.S. 350, 359 (1987) (quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188 (1924)). Thus, the issue before the Court is whether the Indictment sufficiently alleges that the Walter Reed Campaign organization or the campaign contributors were defrauded or deprived of money or property through misrepresentations, thereby wronging their property rights. *See id.* at 360 (holding that the fraud statute is "limited in scope to the protection of property rights"); *see also Carpenter v. United States,* 484 U.S. 19, 27 (1987) ("Sections 1341 and 1343 reach any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.").

### 1. Campaign Contributors

Defendants argue that the campaign contributors are not viable victims of the alleged scheme for two reasons: (1) the government failed to identify any misrepresentations by Reed that led the contributors to make donations to the campaign and (2) the campaign contributors had no property interest in the funds at issue at the time of the alleged scheme. Defendants' first argument—the government failed to identify misrepresentations—fails at this early stage in the prosecution given the requirements of Federal Rule of Criminal Procedure 7(c), which states that the indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." The indictment alleges that the "campaign funds were solicited on the representations and premise that the funds would be used to facilitate Walter P. Reed's reelection" and "Walter Reed would solicit and cause to be solicited individuals, entities, and political action committees to contribute monies to the Walter Reed Campaign for the stated purpose of supporting his reelection…" (R. Doc. 1 at 2, 7).

Defendants argue that because Walter Reed made no promises regarding how the campaign dollars would be spent, there is no support in the Indictment for the assertion that Mr.

Reed obtained money from any campaign contributors on "false or fraudulent pretenses and representations" as required by 18 U.S.C. § 1343.  However, while Walter Reed may not have specified exactly how campaign contributions were spent, campaign contributors did not expect their contributions to be used for personal expenses as such personal expenditures are in violation of Louisiana's campaign finance laws.  *See* La. Rev. Stat. 18:1505.2(I)(1).  Moreover, even if there were no state campaign finance laws, campaign contributors would have had certain expectations regarding how their donations would be spent.  If a person donates to the Red Cross on the representation that her money would be used for Hurricane Katrina relief and, instead, it is used for Hurricane Rita relief or to pay the salary of a Red Cross employee, there is likely no fraud.  However, if the same person's money is used to fund a Red Cross employee's family vacation, then that person was deprived of her money based on fraudulent misrepresentations.

In *United States v. Alfortish*, defendants were charged with wire fraud in connection with their operation of a post-Katrina charitable foundation.   No. CRIM. 10-328, 2011 WL 2293136 (E.D. La. June 8, 2011).  According to the indictment, false representations were made to the donors that the funds donated would be distributed after review by a screening committee when, in fact, defendants distributed the funds in their sole discretion without review, including disbursing some of the funds to themselves or their associates, for purposes other than hurricane relief.  *Id.* at *2. Defendants contended that there was no scheme to defraud because there were no false representations; the alleged false representations were no different from the customary assurances that parties to contracts make at the outset of a relationship.  *Id.* at *3.  In declining to dismiss the wire fraud charge, this court held as follows:

> The Indictment adequately alleges a scheme to defraud using false material misrepresentations regarding how the Katrina donations would be administered. Defendants may argue to the jury that the conduct was a mere breach of contract, but their characterization of the allegations is not grounds to dismiss the

11

>Indictment, which adequately sets forth the elements of the statute and notifies Defendants of the charges

*Id.* at *3.  Similarly, in the present case, while Defense counsel may eventually prove that there were no false representations because the allegedly misspent monies were, in fact, in furtherance of Walter Reed's campaign, the Indictment adequately alleges such fraudulent conduct.  Taking the allegations in the Indictment as true, Defendants solicited donations on the premise that the money would be used to facilitate Walter Reed's reelection to the position of District Attorney.  Then, instead of using the money to fund his reelection efforts, the Government contends that Walter Reed spent the money donated to his campaign on personal expenses unrelated to the campaign and to better the financial position of his son, Steven Reed.

Defendants' second argument—that the campaign contributors had no property interest in the funds at issue at the time of the alleged scheme—also does not warrant dismissal of the wire fraud charges.  Relying on *Cleveland v. United States*, Defendants argue that fraud "requires [that] the object of the fraud be property *in the hands of the victim.*" 531 U.S. 12, 26 (2000) (emphasis added).  However, despite this language, the concern in *Cleveland* was the benefit procured as a result of the alleged fraud and whether it constituted "money or property," not whether the money had to be in the hands of the victim at the time of the illicit expenditure.  In *Cleveland*, the United State Supreme Court held that the State of Louisiana was not defrauded of "property" when it issued video poker licenses under false pretenses because the licenses, having no value to the state prior to their issuance, could not constitute "property" for purposes of fraud.  *Id.* at 20.  The present case is distinguishable from *Cleveland*.  Unlike the licenses pre-issuance in *Cleveland*, here, the donors' money undoubtedly had value prior to being contributed to the campaign fund.  Moreover, interpreting *Cleveland* to require that the ill-gotten money must be in the hands of the defrauded party at the time it is spent would be illogical.  If such were the case,

no federal fraud charge could exist against a defendant who embezzles or engages in a Ponzi scheme. Campaign contributors undoubtedly relinquish some control over their money at the time it is donated. Nonetheless, taking the allegations in the Indictment as true, Walter Reed made representations to potential donors about the purpose of the contributions he solicited, solicited contributions based on those representations, and then spent the money in contravention of those representations. Thus, while the donors may not have control as to whether their money is used on a television advertisement or a fundraising dinner, they were deceived into parting with something of value to them on the basis that, at the very least, their money would be used to fund a reelection campaign and they were not so used. That alleged misconduct is sufficient to satisfy the "scheme to defraud" element under 18 U.S.C. § 1343.

### 2. Walter Reed Campaign Organization

The Indictment also alleges that the Walter Reed Campaign organization was defrauded. Defendants argue that the campaign contributors and the campaign organization cannot both be victims of the alleged scheme because, as the money cannot simultaneously belong to both, only one could have a property interest in the funds at the time the funds were allegedly misused. Defendants argue further that the Walter Reed Campaign organization is not a distinct entity from Walter Reed i.e., Walter Reed cannot defraud himself. According to Defendants, the campaign organization is simply the name of the depository created to hold the funds donated by campaign contributors as required by Louisiana's campaign finance regulations. While these arguments have merit, the Court declines to issue a ruling as to whether the campaign fund is a legitimate victim. Because the campaign contributors are appropriately named as victims in the Indictment, the status of the campaign fund as an additional victim is irrelevant to the Court's ruling on the present motions.

### d. Counts 8 and 9: Money Laundering

> The money laundering statute provides in pertinent part:
>
> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
>
>> (A)(i) with the intent to promote the carrying on of specified unlawful activity ... [shall be guilty of money laundering].

18 U.S.C. § 1956. To prove money laundering under § 1956, the government must prove that (1) the financial transaction in question involves the proceeds of unlawful activity, (2) the defendant had knowledge that the property involved in the financial transaction represented proceeds of an unlawful activity, and (3) the financial transaction was conducted with the intent to promote the carrying on of a specified unlawful activity. *United States v. Wilson,* 249 F.3d 366, 377 (5th Cir.2001).

Defendants argue that the money laundering counts must be dismissed because 18 U.S.C. § 1956 does not list violations of state campaign law as a predicate offense. Notably, however, the predicate offense charged in the Indictment is wire fraud. Although wire fraud is not listed as a "specified unlawful activity" in the money laundering statute, "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1)." 18 U.S.C. §1956(c)(7)(A). And, significantly, section 1961 does specifically include wire fraud. Thus, the alleged wire fraud represents the unlawful activity as required by the money laundering statute. *See United States v. Brown*, 186 F.3d 661, 667 n.10 (5th Cir. 1999) ("[T]he money laundering statute defines 'specified unlawful activity' to include mail and wire fraud."); *see also United States v. Valuck*, 286 F.3d 221, 225 (5th Cir. 2002) (finding that first element of the offense of money laundering was established where the defendant did not appeal the sufficiency of the government's evidence charging him with wire fraud). Thus, the allegation that Defendants

engaged in financial transactions using the ill-gotten donations obtained from their fraudulent misrepresentations to further defraud donors is sufficient to allege money laundering.

### III.     CONCLUSION

Defendants' Motions to Dismiss (R. Docs. 40, 43) seek a remedy unavailable at this early stage in the prosecution. For the foregoing reasons, Defendants' Motions to Dismiss are **DENIED**.

New Orleans, Louisiana, this 13th day of October, 2015.

_____
UNITED STATES DISTRICT JUDGE