## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

WALTER REED
STEVEN REED

CRIMINAL ACTION

NO. 15-100

SECTION "L"

### ORDER & REASONS

Pending before the Court are Defendants' Motions to Strike Surplusage (R. Docs. 49, 53), Defendants' Motions to Sever (R. Docs. 50, 52), Defendant Walter Reed's Motion for Reconsideration (R. Doc. 75), and Defendant Walter Reed's Motions to Dismiss (R. Docs. 76, 77). The Court has reviewed the briefs and heard oral argument and now issues this Order and Reasons.

### I.    BACKGROUND

From 1985 to January 12, 2015, Walter Reed served as the District Attorney for Louisiana's 22nd Judicial District. Steven Reed is his son. On April 23, 2015, the United States government filed an eighteen-count indictment charging Defendants Walter and Steven Reed with conspiracy to commit wire fraud and money laundering, as well as substantive counts of wire fraud, money laundering, false statements on income tax returns, and mail fraud. On October 22, 2015, the Government filed a superseding indictment (the "Indictment"), adding an additional wire fraud count (count 8) against Walter Reed.

The gravamen of the conspiracy and wire fraud counts (counts 1-8) is Defendants' alleged improper personal use of campaign funds. Walter Reed is alleged to have solicited campaign funds from donors on the premise that the funds would be used to facilitate his

reelection and then used those funds to pay for personal expenses unrelated to his campaign or the holding of public office.  Specifically, the wire fraud counts allege that, *inter alia*, Walter Reed used campaign donations (i) to recruit potential clients for his private legal practice, (ii) pay off various expenses incurred by Steven Reed, (iii) pay for private and personal dinners, (iv) overpay his son for work allegedly performed on behalf of the Campaign, and (v) host a housewarming party for friends and family unrelated to the Campaign or the holding of public office.  Further, Walter and Steven Reed are alleged to have engaged in money laundering (counts 9 and 10) when they caused two service providers for a campaign-related event to make payments to entities controlled by Steven Reed in a manner that would disguise the payments as legitimate expenses when, in fact, the payments were for the personal benefit of the Defendants. Steven Reed is only charged with conspiracy to commit wire fraud, one count of wire fraud (count 7) and money laundering.

In addition to the wire fraud and money laundering counts, the Indictment also alleges that Walter Reed engaged in mail fraud when he deposited payments made by the St. Tammany Parish Hospital (the "Hospital") in exchange for legal representation by the District Attorney's office into his own personal bank accounts for private use.  Specifically, the mail fraud counts (counts 15-19) allege that Walter Reed began attending meetings of the Hospital board and advising the Hospital board on various issues in his capacity as a District Attorney.  According to the Indictment, he arranged for checks to be sent to the District Attorney's office and then deposited them into his personal bank account when he knew these funds were actually intended for the Office of District Attorney.  Finally, the Indictment alleges that Walter Reed underreported his income on his tax returns for four years.

There are seven defense motions currently before the Court.  The Court will consider each of the motions in accordance with applicable law as follows: (1) Motions to Strike; (2) Motions to Sever; (3) Motion to Reconsider; and (4) Motions to Dismiss.

## II.      MOTIONS TO STRIKE SURPLUSAGE (R. DOCS 49, 53)

Defendants seek to strike certain language from the Indictment that they argue is prejudicial and unecessary to the charged offenses.  Generally, allegations in an indictment that are unnecessary to prove the crime charged are surplusage.  *United States v. Prejean*, 429 F. Supp. 2d 782, 796 (E.D. La. 2006) (citing *United States v. Miller,* 471 U.S. 130, 136–37 (1985)). A district court retains discretion to strike surplusage from an indictment upon motion of the defendant under Rule 7(d) of the Federal Rules of Criminal Procedure.  *Prejean*, 429 F. Supp. at 796.  A district court may strike language as surplusage on the grounds that such material is unduly prejudicial if the language serves to inflame the jury, confuse the issues, or blur the elements necessary for conviction.  *Id.*  Further, "[i]ndirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in language, are defects in an indictment that may be fatal if struck at by a timely motion before trial."  *United States v. Williams,* 203 F.2d 572, 574 (5th Cir.1953).

However, the striking of surplusage is not required: "surplusage in an indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled." *United States v. Trice,* 823 F.2d 80, 89 n. 8 (5th Cir.1987) (citations omitted). The level of proof required to strike surplusage from an indictment is "exacting." *United States v. Bullock,* 451 F.2d 884, 888 (5th Cir.1971).

After reviewing the Indictment, the Court finds that certain language in the Indictment qualifies as inflammatory, confusing, and/or prejudicial surplusage.  First, paragraphs 5 and 6 of

Count 1(C) of the Indictment are prejudicial surplusage unrelated to the offenses with which

Walter Reed is charged.  These paragraphs effectively allege violations of Title 18, U.S.C. §

1346, "Honest Services Fraud," and Louisiana Election Code's campaign finance disclosure

regulations, which are not offenses charged in the Indictment.

> It was further part of the scheme to defraud that the defendant, Walter P.
> Reed, caused the public filing of false and misleading campaign finance
> reports with the Louisiana Board of Ethics…
>
> It was further part of the scheme to defraud that the false and misleading
> campaign reports filed by the defendant, Walter P. Reed, enabled him to
> continue the scheme to defraud without detection for a lengthy period and
> thereby avoiding scrutiny from the Louisiana Board of Ethics and the
> general public.

(R. Doc. 64 at 7-8).  These paragraphs provide extraneous information regarding the filing of

campaign finance disclosures which is neither relevant nor material to the wire fraud and money

laundering changes at hand.  Further, the explicitly specified victims of the scheme to defraud

are the Walter Reed Campaign and the campaign contributors.  Thus, these paragraphs are

prejudicial and confusing as they create the perception of additional charges and victims by

alluding to a scheme to defraud the public and the Louisiana Board of Ethics, a scheme which is

not the subject of any charge in the Indictment.

Second, paragraph 13 of count 1(A) is surplusage that confuses the jury.  In count 1(A),

paragraph 13, the government references Louisiana campaign finance regulations, noting as

follows:

> The Campaign Finance Laws require that campaign contributions for
> Major and District offices, including the position of District Attorney for
> the 22nd Judicial District, must be for the purpose of supporting,
> opposing, or otherwise influencing the nomination or election of a person
> to public office.  *See* La. Rev. Stat. 18 § 1483(6)(a).

4

(R. Doc. 64 at 4).  While this paragraph does articulate how the Louisiana campaign finance laws generally define "contribution", it also blurs the standards applicable to campaign expenditures under Louisiana law.

As set forth in paragraph 14 of count 1(A) in the Indictment, the "Campaign Finance Laws prohibit the use of campaign funds by any elected public office holder…to pay for personal expenses unrelated to a political campaign *or the holding of public office* or party position." *Id.* (emphasis added).  However, paragraph 13 strongly implies that campaign expenditures must be solely for campaign purposes when, in fact, expenditures related to the holding of public office are permissible and legitimate.  Furthermore, such an implication obscures the standards related to a critical issue in this prosecution i.e., the propriety of Walter Reed's campaign expenditures.  Thus, the inclusion of paragraph 13 (particularly, given that it directly precedes and overshadows paragraph 14) is likely to cause jury confusion regarding the same, thereby prejudicing the Defendants.

Defendants make numerous arguments in support of their request to strike additional language from the Indictment.  The Court finds that none of the remaining language is prejudicial surplusage and will review each argument in turn.

**A.  Additional Reference to State Campaign Law**

The reference to state campaign laws related to transactions with family members in paragraph 17 of count 1(A) is properly included in the Indictment as it directly relates to the alleged improper transactions between Walter Reed and his son and co-conspirator, Steven Reed. Several counts of the Indictment focus on expenditures in which Defendants allegedly diverted campaign funds for personal purposes by engaging in transactions with each other.  Moreover, this legal limit on transactions with family members is also relevant to the understanding of the

alleged victims who reasonably expected, based upon governing campaign laws, that their contributions would not be used for the personal benefit of Walter Reed or his son.  To the extent that the jury has to consider this legal standard only in relation to those counts that concern campaign fund expenditures for services provided by business owned by Steven Reed, a well-crafted jury instruction will cure any possible confusion.

**B.  Alleged Misstatements of Law**

In multiple paragraphs, the government classifies an expenditure as "unrelated to the campaign of the defendant" or "unrelated to his campaign."  As discussed above, however, the fact that an expenditure is not related to the campaign of a political candidate does not render the expense improper under Louisiana's campaign finance regulations.  Thus, Walter Reed argues that the use of such phrases amounts to a prejudicial misstatement of the law and asks that they be stricken.

However, these phrases are not statements of law.  These phrases are factual allegations concerning transactions that are part of the alleged scheme to defraud.  The relevant campaign finance law is included in the Indictment and correctly states that prohibitory campaign expenditures are both those "unrelated to a political campaign" and those unrelated to "the holding of public office." (R. Doc. 64 at 4).  Moreover, as discussed above, the Court already ruled to strike paragraph 13 of count 1(A) in order to clarify the relevant law.  Thus, factual allegations that expenditures were unrelated to the campaign do not prejudice the Defendants or confuse the jury.  Defendants are free to assert factual arguments at trial that these expenditures (while not related to the campaign) were proper because they were related to the holding of public office.

**C. Duplicate References to Expenses and Allegations relating to the America Event**

Walter Reed argues that duplicative references to identical expenses are likely to cause jury confusion. Specifically, Walter Reed argues that the inclusion of two invoices related to the production of an anti-drug video by Steven Reed and his company, Globop, is misleading and confusing because the reference to the second invoice in the amount of $14,300.00 does not specify that this figure includes the $9,800.00 referenced in the first invoice. *See* (R. Doc. 64 at 10,11). However, the Indictment includes both invoices because Steven Reed sent both invoices to support the payments made by his father's campaign. Consequently, there is no legal basis for Walter Reed's request to strike factual allegations relating to physical documents created by the Defendants to further the scheme which will be offered as evidence at trial. *See Prejean* 429 F.Supp. at 796 (denying a request to strike references in an indictment to a consent judgment that would be admissible at trial).

Walter Reed also argues that language relating to the cost of tickets and number of tickets sold at the America Event (a campaign fundraiser) is prejudicial because it is irrelevant to the charged offense and casts the Defendant in an unfavorable light. However, the language at issue—that tickets cost approximately $150 each and approximately 1,421 tickets were sold—is merely a statement of fact. The America Event will be the subject of a substantial amount of evidence at trial, and the cost of the event, the ticket price, and the number of attendees (whether ticketed or otherwise) will be addressed in the evidence offered. Thus, as indicated above, factual statements, which directly relate to evidence that will be offered at trial, cannot be considered either surplusage or prejudicial.

**D. Internally Contradictory Paragraphs**

Walter Reed argues that the Indictment's allegation—that he reported his receipt of funds from the Hospital on his Louisiana Board of Ethics financial disclosure filing and on his personal

income tax returns in order to conceal the fact that he was taking money from the District

Attorney's Office—is contradictory and prejudicial and, therefore, must be stricken.  Ad hoc, an

allegation that someone is attempting to conceal his salary by disclosing it is a contradictory and

confusing statement.  However, in context of the Indictment, it is neither.  The Indictment alleges

that Walter Reed reported the income on these filings as income paid to him in his personal

capacity by the Hospital when, in truth, these funds were diverted from the District Attorney's

Office—the entity the Hospital hired to provide legal services.  A key factual dispute in this case

is whether the Hospital hired Walter Reed in his capacity as District Attorney and was paying the

District Attorney's Office or whether he was hired in his personal capacity.  Thus, the allegation

that Walter Reed falsely characterized the funds he took for his own use as personal legal fees in

order to conceal his diversion of funds from the office the public elected him to serve is relevant

and a concept a jury will understand.

### E.  The Amount of Money Subject to Forfeiture

Both Walter and Stephen Reed move to strike the amount of money contained in the

forfeiture allegation of the Indictment.  Walter Reed argues that the amount will confuse the jury

because it lumps both defendants and all counts into one forfeiture amount with no distinction

between defendants or various counts.  Steven Reed argues that the amount overstates the

amount for which he could be held responsible because it exceeds the totality of the amounts

alleged to have been unlawfully received by Steven Reed.  Additionally, although Steven Reed is

likely correct in his assertion that the amount in forfeiture overstates the amount that he

personally might owe, the amount included in the forfeiture allegation is typically a total amount.

The inclusion of a total amount with respect to Defendants cannot be prejudicial or confusing to

the jury.  The jury will not see the forfeiture allegation or the amount of money included in that

allegation during the guilt phase of the trial.  Criminal forfeiture is an issue the jury takes up in the second part of a bifurcated proceeding and, then, only after it has found a defendant guilty of one or more of the crimes charged.

### F.  Aiding and Abetting

Walter Reed seeks to strike references to 18 U.S.C. § 2 (aiding and abetting) on counts 2-6, arguing that aiding and abetting clearly contemplates crimes committed by more than one person and counts 2-6 involve only Walter Reed.  This argument, however, is unavailing as the references to aiding and abetting are not surplusage.  The Indictment charges Walter Reed as both an aidor and abettor and a motion to strike is not the appropriate vehicle to raise a substantive challenge to an offense charged in the Indictment.  Additionally, there is no prejudice because "aiding and abetting is not a separate offense, but it is an alternative charge in every indictment, whether explicit or implicit."  *United States v. Neal*, 951 F.2d 630, 633.  Thus, the explicit references to aiding and abetting—charges which are presumed in every case whether or not expressly pled—are properly included in the Indictment.

### G.  Argumentative Language

Walter Reed also seeks to strike references to his alleged improper use of a "substantial" portion of campaign funds and his making of a payment that "grossly" exceeded the value of any services provided on the grounds that these characterizations are purely argumentative and will inflame the jury.  The government contends that these terms do nothing more than attempt to quantify its anticipated proof at trial.  While these quantitative adjectives could be considered surplusage, they hardly qualify as inflammatory or prejudicial.

### H.  Surplusage related to Anticipated Defenses

Walter Reed argues that the government improperly included allegations in the Indictment aimed at addressing anticipating defenses.  First, Walter Reed argues that allegations about the "dozens of occasions" when Walter Reed did not attend Hospital board meetings, but instead, had an Assistant District Attorney attend the meeting is irrelevant to whether the legal services were being performed by Walter Reed in his personal capacity.  This is not the case.  In considering whether Walter Reed contracted with the Hospital to provide legal services in his personal capacity or in his capacity as the District Attorney, it is relevant that he directed publicly funded personnel from his office to attend meetings in his absence.

Additionally, Walter Reed seeks to strike the following allegation related to an unsigned Hospital board resolution:

> It was further part of the scheme to defraud that on or about July 7, 2014, Walter P. Reed arranged for a representative to transmit an unsigned Hospital Board resolution purporting to be from October 1996 to counsel for St. Tammany Parish Hospital.  The resolution claimed to recognize that Walter P. Reed had advised St. Tammany Parish Hospital in his personal capacity since May 1, 1994.  As Walter P. Reed well knew the Hospital Board did not discuss, vote on, or pass the purported resolutions.

Counts 14-18(B), Paragraph 6. Walter Reed argues that the sole purpose of the above allegation is to refute favorable evidence willingly provided to the government by the defense during the investigation of Walter Reed.  Aware that the defense will seek admission of the draft resolution, Walter Reed argues that the government included the allegation in an attempt to taint the document as a form of obstruction of justice.  However, even if Walter Reed seeks to defend himself based upon his reliance on the resolution, the government is permitted to allege in the Indictment that his scheme included his attempt to rely on the resolution and such reliance was unreasonable.  Thus, this allegation is not surplusage.

In sum, the Court finds that the Defendants are entitled to have paragraphs 5 and 6 of Count 1(C) and paragraph 13 of count 1(A) struck from the Superseding Indictment (R. Doc. 64) as surplusage as those paragraphs confuse the issues and are prejudicial to the Defendants. However, notwithstanding Defendants' arguments to the contrary, none of the remaining language qualifies as surplusage and, even if it did, it can be disregarded because it is not inflammatory, confusing, or prejudicial.

### III.    MOTIONS TO SEVER (R. DOCS. 50, 52)

The Indictment charges nineteen counts.  Counts 1-10 (the "Campaign counts") charge the Defendants with conspiracy, wire fraud, and money laundering.  Counts 11-14 (the "tax counts") charge Defendant Walter Reed with filing false statements on his income tax returns. Counts 15-19 (the "Hospital counts") charge Defendant Walter Reed with mail fraud. Defendants filed separate motions seeking to split the Indictment into multiple trials.  Walter Reed seeks to sever the Campaign and tax counts from the Hospital counts on the grounds that the two sets of alleged crimes are too distinct from one another and a singular trial would undermine his right to present a defense.  Defendant Steven Reed seeks to sever the Campaign counts from the rest of the Indictment on the grounds that he was not alleged to be a participant in either the tax or Hospital counts.

### A.    Joinder – Rule 8

#### 1.    *Legal Standard*

When reviewing a motion to sever, the preliminary inquiry is whether joinder was proper as a matter of law under Rule 8 of the Federal Rules of Criminal Procedure.  *See United States v. Holloway*, 1 F.3d 307, 310 (5th Cir. 1993).  Where, as here, an indictment charges multiple defendants and multiple counts, Rule 8(b) governs the propriety of joinder.  *See United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1998).  This rule allows joinder of defendants in the same

indictment if they are alleged to have participated "in the same series of acts or transactions ... constituting an offense or offenses." Fed. R. Crim. P. 8(b). Whether the counts charged fulfill this "same series" requirement is determined by the facts in the indictment, which are accepted as true absent arguments of prosecutorial misconduct.[1] *See United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012); *United States v. Faulkner*, 17 F.3d 745, 758 (5th Cir. 1994). There is no requirement that each defendant have participated in the same act(s),or that each defendant be charged in the same count(s). Fed. R. Crim. P 8(b); *McRae*, 702 F.3d at 820.

Rather, Rule 8 is "flexible" and broadly construed in favor of joinder. *United States v. Butler*, 429 F.3d 140, 146 (5th Cir. 2005); *see also United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995) ("Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder.") The dispositive inquiry is whether the indictment charges "a series of acts unified by some substantial identity of facts or participants." *See McRae*, 702 F.3d at 821 (quoting *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir. 1981)); *see also United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985) ("Whether the counts of an indictment fulfill the 'same series' requirement is determined by examining the relatedness of the facts underlying each offense.")).

### 2. Analysis

Defendant Walter Reed argues that Campaign and tax counts are improperly joined with the Hospital counts.[2] Walter Reed constructs his joinder analysis under Rule 8(a); however, Rule 8(b) provides the relevant standard. Nonetheless, because the two subsections overlap, the

---

[1] The Defendants have made no arguments regarding prosecutorial misconduct.
[2] Defendant Steven Reed asserts that the Campaign counts, which include the charges against him, are improperly joined under Rule 8 with the tax and Hospital counts. However, he did not offer any support for this assertion. Moreover, this argument is without merit as the tax counts are closely related to the Campaign counts. The misuse of campaign funds constitute a portion of Walter Reed's income that is the basis of the tax charges. Accordingly, the tax counts are properly joined with the Campaign counts under Rule 8.

Court is able to evaluate Walter Reed's arguments under the relevant standard. Walter Reed argues that, other than the fact that the charges are levelled against the same individual, there is no logical connection between (1) the Hospital counts, which allege a scheme to deprive the St. Tammany District Attorney's Office of a salary for legal services and (2) the Campaign and related tax counts, which concern the misuse of campaign funds and allege a scheme to defraud campaign contributors of campaign donations. Walter Reed characterizes these two sets of counts as two distinct schemes with different victims. The allegations in the two schemes involve funds originating from different sources that were deposited in distinct transactions. In the scheme to defraud the Office of the District Attorney, the funds are payments made by the Hospital that were deposited into Walter Reed's personal account. In the scheme to defraud campaign contributors, the funds are campaign donations that were improperly expended for personal use.

While the Court acknowledges the differences between the Hospital counts and the Campaign and tax counts, those differences are insufficient to overcome the liberal rule of joinder. *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995) ("Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder."). The Campaign and tax counts are properly joined with the Hospital counts because they are part of a common series of transactions with a singular purpose—to exploit Walter Reed's influence as district attorney for personal financial betterment. To enrich himself, Defendant Walter Reed employed a singular means—fraud. In addition to the common means and ends, the conduct alleged in the Campaign counts and the Hospital counts occurred during the same time period and involved several of the same people (e.g., Walter Reed's accountant and individuals with Office of the District Attorney). Thus, joinder of all charges in the Superseding Indictment is

proper under Rule 8 because the facts and participants underlying all counts are substantially related.

### B.     Severance – Rule 14

#### 1.     Legal Standard

It is the general rule "that persons who are indicted together should be tried together." *U.S. v. Michel,* 588 F.2d 986, 1001 (5th Cir.1979). "Joint trials play a vital role in the criminal justice system." *Zafiro v. U.S.,* 506 U.S. 534, 537 (1993) (internal quotation omitted).  However, Federal Rule of Criminal Procedure 14 provides that "if the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed.R.Crim.P. 14(a).  The United States Supreme Court has explained that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539. The Fifth Circuit has explained that "[i]n ruling on a motion to sever, a trial court must balance potential prejudice to the defendant against the public interest in joint trials where the case against each defendant arises from the same general transaction." *U.S. v. Simmons,* 374 F.3d 313, 317 (5th Cir. 2004) (internal quotation omitted).

The Fifth Circuit has explained that "[a] defendant is not entitled to severance just because it would increase his chance of acquittal or because evidence is introduced that is admissible against certain defendants." *Burton v. U.S.,* 237 F.3d 490, 495 (5th Cir.2000) (citing *Zafiro,* 506 U.S. at 540). Furthermore, "even where defendants have markedly different degrees of culpability, severance is not always required if less drastic measures, such as limiting

14

instructions will suffice to cure the prejudice." *Id.* (citing *United States v. Broussard,* 80 F.3d 1025, 1037 (5th Cir.1996)); *see also U.S. v. Bermea,* 30 F.3d 1539, 1572 (5th Cir.1994) ("Any prejudice created by a joint trial can generally be cured through careful jury instructions."). The Fifth Circuit has explained that "[i]f the jury can keep separate the evidence that is relevant to each defendant, even if the task is difficult, and render a fair and impartial verdict as to each defendant, a severance should not be granted." *U.S. v. Ramirez,* 145 F.3d 345, 355 (5th Cir.1998) (citing *United States v. Walters,* 87 F.3d 663, 670–71 (5th Cir.1996)).

## 2.   *Analysis*

Notwithstanding proper joinder under Rule 8, the Court may grant severance upon a proper showing of prejudice. Defendant Steven Reed requests severance because of the potential spillover effect from evidence and allegations that do not pertain to him. He argues that the evidence that will be presented against his father in the tax and Hospital counts, including evidence of his father's income, will create a prejudicial spillover effect that will preclude the jury from impartially assessing the evidence against him. However, neither the spillover effect nor the fact that the government might present more evidence against Walter Reed than Steven Reed justifies severance. *See U.S. v. Krout*, 66 F.3d at 1420, 1430 (5th Cir. 1995).

The law is clear that "[w]hile the district court must guard against undue prejudice, it need not protect conspirators from evidence of their confederates' acts in furtherance of their common illegal aims." *U.S. v. Manges*, 110 F.3d 1162 1174-75 (5th Cir. 1997). Accordingly, the prejudice alleged by Steven Reed is not of the type Rule 14 was designed to protect against. *United States v. Jones*, 303 F.R.D. 279, 286 (E.D. La. 2014). And, even if it were, Steven Reed has failed to demonstrate that any potential prejudice could not be cured with a limiting jury instruction. Finally, any potential prejudice that could not be cured by instructions to the jury is outweighed by the public interest in joint trials. *See U.S. v. Simmons,* 374 F.3d 313, 317 (5th

Cir. 2004).  Severance of the tax counts from the campaign counts would require the government to introduce the same evidence in two trials, resulting in inefficiency and unnecessary expenditure of judicial resources.  It is clear which allegations relate to Steven Reed and a jury will be able to sort out the evidence and view each Defendant separately with a curative jury instruction.

Walter Reed argues that a trial including both the Campaign and Hospital counts will prejudice him because he may wish to testify in defense of some of the charges but not others, forcing him to choose between testifying as to both set of counts or testifying as to neither.  He argues that his own testimony is critical to defending against the Hospital counts, whereas he has a strong interest in refraining from testifying on his own behalf with regards to the Campaign and tax counts.

In *United States v. Ballis*, the Fifth Circuit articulated the following two-part standard to address the type of prejudice claimed by Walter Reed in the instant motion.  "A defendant seeking severance of charges because he wishes to testify as to some counts but not as to others has the burden of demonstrating that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." 28 F.3d 1399, 1408 (5th Cir. 1994) (internal citations and quotations omitted).

With respect to part one of the *Ballis* standard, Walter Reed argues that his own testimony is critical to defend against the Hospital counts because the former chairman of the Hospital board, Paul Cordes ("Cordes"), is now deceased and cannot take the stand to provide his understanding of the agreement regarding Walter Reed's legal services.  Walter Reed's proffered defense is that, over twenty years ago, Cordes advised Walter Reed that the Hospital would pay him directly for his legal services as a private attorney, not as the District Attorney.

He argues that the import of his testimony on this subject is the fact that there may have been a misunderstanding as to the capacity in which Walter Reed was retained to provide legal services to the Hospital Board and only he can testify as to his understanding and intent.  If his understanding, based on communications with a deceased member of the hospital board, was his retention in his capacity as a private attorney, and not as DA, then the criminal intent to defraud the District Attorney's office does not exist.

In its opposition, the government argues that Walter Reed's proffered testimony may be available from another source.  For example, at least some of the individuals included on the correspondence attached to his motion should be able to testify consistent with Walter Reed's defense.  Additionally, the government argues that his defense—whether propounded by him or by another witness—would likely be inadmissible as hearsay, as he would not be able to elicit testimony concerning statements made by Cordes who is unavailable for cross-examination.  Walter Reed responds that while those individuals may be able to testify to certain facts regarding the relationship between Walter Reed and the hospital board, he is the only person who can testify as to the communications between himself and Cordes, which contributed to his understanding of the services rendered to the Hospital.  He argues further that testimony regarding those communications is not inadmissible hearsay as it is not necessarily being offered for the truth of the matter asserted; rather, it is offered to demonstrate the basis for his understanding of his role as the attorney for the Hospital board.

With respect to part two of the *Ballis* standard, Walter Reed argues that he has a strong need to refrain from testifying regarding the Campaign counts so as to prevent the government from launching a character assassination against him which will likely prejudice the jury.  He argues that he needs to stand on the presumption of innocence on the Campaign counts "as

17

remaining silent on those counts will limit the opportunity for the government to call to the stand any past romantic partners who have nothing but scandal to add to this case." (R. Doc. 73 at 5).

The limited case law on severance motions related to a defendant's decision to testify does not greatly illuminate the question just how "important" must be the defendant's proffered testimony or what kind of "strong" reasons explain the need not to testify on other counts. *United States v. Alosa*, 14 F.3d 693, 695 (1st Cir. 1994). Nonetheless, the defendant's burden of demonstrating that he has both important testimony to give concerning one count and a strong need to refrain from testifying on another is a "heavy" burden and requires a showing of "real" prejudice. *United States v. Holland*, 10 F.3d 696, 699 (10th Cir. 1993).

Walter Reed fails to meet this burden. While he puts forth a plausible argument that he has important testimony to give regarding the Hospital counts, it is not clear how important this testimony is to his defense. *See Alosa*, 14 F.3d at 695 (finding that while testimony defendant would have offered "might have been of some help to him," it was not a strong enough reason for severance). More significantly, Walter Reed has not demonstrated that he has any need, much less a "strong need," to refrain from testifying in the Campaign counts. His argument is entirely speculative. It turns on whether the government intends to call a past romantic partner as a witness. Moreover, even if called to the stand, neither the Court nor Walter Reed can predict what this witness will say or how the jury will react. It is possible that the jury will not find her credible. It is equally possible that her testimony on cross-examination will have the effect of bolstering Walter Reed's defense. There is no showing of real prejudice with respect to such a speculative argument.

Furthermore, Walter Reed's potential concerns regarding the testimony of a potential witness can be resolved with a curative jury instruction. The jury will be instructed to view each

18

count separately.  Accordingly, if this potential witness is called to rebut a statement made by

Walter Reed, her testimony can only impeach him with regard to the particular count to which it

relates.  Finally, obvious considerations of judicial economy, which support trying all related

counts against the same defendant at one time outweigh Walter Reed's interest in having a free

choice with respect to testifying.  *See United States v. Jardan*, 552 F.2d 216, 220 (8th Cir. 1977);

*United States v. Alosa*, 14 F.3d 693, 695 (1st Cir. 1994).  While the courts zealously guard a

defendant's Fifth Amendment right not to testify at all, the case law is less protective of a

defendant's right to testify selectively, addressing some issues while withholding testimony on

others that are related. *See Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 627

(1958).

For the foregoing reasons, the Court finds that the counts in the Indictment are united by

common facts and participants, and that any potential prejudice inherent in a joint trial is

insufficient to justify severance under Rule 14.

## IV.     MOTION TO RECONSIDER (R. DOC. 75)

Defendants Walter and Steven Reed ask this Court to reconsider its ruling denying

Defendants' motions to dismiss, arguing that the Indictment is improper because it is dependent

on state law.

### A.  Legal Standard

A district court has continuing jurisdiction over its criminal cases and may reconsider its

prior decisions.  *See United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975).  Courts should

apply the standards set forth by the Federal Rules of Civil Procedure for motions to reconsider in

criminal cases.  *See United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (citing *United

States v. Healy*, 376 U.S. 75, 78-79 (1964)).  A Rule 59 motion to reconsider "calls into question

19

the correctness of a judgment," *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002),

and may not be used to rehash evidence or legal theories that could have initially been presented

prior to the judgment.  *See Templet v. HydroChem Inc.*, 376 F.3d 473, 479 (5th Cir. 2004).   Rule

59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or

to present newly discovered evidence." *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th

Cir.1989) (internal quotations omitted).  Reconsideration of a judgment is an extraordinary

remedy to be used sparingly.  *Templet*, 376 F.3d at 479.

### B.  Analysis

Defendants do not meet the standard for the "extraordinary" remedy of reconsideration.

The bulk of Defendants' motion to reconsider simply rehashes their prior arguments that the

charges in the Indictment are deficient because they run afoul of Fifth Circuit precedent in

*United States v. Ratcliff*, 488 F.3d 639 (5th Cir. 2007) (*see* R. Doc. 75-1 at 8-9) and offend

principles of federalism (*see* R. Doc. 75 at 3-4).  Defendants' motion to reconsider does not

demonstrate any error of fact or law in the Court's decision regarding the distinction between

*Ratcliff* and the present case (*see* R. Doc. 63 at 5-6) or the insufficiency of their federalism

argument (*see* R. Doc. 63 at 3-5).  Therefore, the Court declines to revisit these issues.

Although Defendants' novel arguments do not alter the Court's prior ruling, the Court

will address them nonetheless.  Defendants argue that government's failure to accurately state

the law upon which it relies is fatal to the Indictment as it results in an Indictment which does not

actually, on its face, state a violation.  Similarly, Defendant argues that by repeating the phrase

"unrelated to the campaign," the Indictment completely ignores the fact that expenses related to

the holding of public office are legitimate expenses.  These arguments and, in fact, the motion to

reconsider, in general, squarely focus on the notion that the Indictment is deficient because it

20

suggests that only expenditures related to Walter Reed's *campaign* are permissible when, in fact, expenses related to the holding of public office are also permissible. Additionally, in a related argument, Defendants contend that because the Indictment implies that an expenditure related to the holding of public office is impermissible, Defendants did not have fair notice that such an expenditure could be criminal.

While this Court accepts and agrees with Defendants' assertion that both expenses related to the campaign as well as those related to the holding of public office are proper, the Court rejects the argument that this creates a defect in the Indictment. First, the Indictment does fully state the relevant rule—"The Campaign Finance Laws prohibit the use of campaign funds by any elected public office holder…to pay for personal expenses unrelated to a political campaign or the holding of public office." *See* (R. Doc. 64 at 4). Second, this Court already dealt with any potential confusion regarding the relevant law by striking paragraph 13 of count 1(A) of the Indictment. *See, supra* at Section II, Motions to Strike. Finally, the repetition of the phrase "unrelated to the campaign" is not fatal to the Indictment. Any remaining confusion regarding the two classes of acceptable expenditures can be cured with a well-crafted instruction informing the jury of the same.

Additionally, considering the foregoing, Defendants' lack of fair notice argument is moot. By virtue of its inclusion of the relevant state law, the charging language in the Indictment indicates that a candidate is not defrauding his contributors when a campaign expenditure is related to the campaign *or* the holding of public office. Thus, Defendants were on notice that private, personal expenses unrelated to either the campaign or the holding of public office could be considered criminal. Moreover, Defendants are free to offer evidence at trial that the expenditures in question were related to the holding of public office and, therefore, were not

fraudulent.  In sum, Defendants offer no new information or argument that warrants the extraordinary remedy of reconsideration.  Accordingly, the Court declines to depart from its prior ruling.

### V.  MOTIONS TO DISMISS (R. DOCS. 76, 77)

On November 10, 2015, Walter Reed filed two motions to dismiss—Motion to Dismiss Count 8 (R. Doc. 76) and Motion to Dismiss Counts 2-8 (R. Doc. 77).  The Motion to Dismiss Counts 2-8 merely incorporates by reference the Defendants' Motion to Reconsider and Walter Reed's Motion to Dismiss Count 8.  The Court analyzed the Motion to Reconsider above; consequently, this section addresses only the Motion to Dismiss Count 8.

Count 8 alleges that, on or about November 1, 2013, the Walter Reed Campaign Fund deposited $25,000.00 into the bank account of Faith Tabernacle Church (the "Church") in Franklinton, Louisiana in Washington Parish "for the referral of private civil legal work to him and the law firm with which he was affiliated" in violation of 18 U.S.C. § 1343 and 2. Conversely, Walter Reed contends that this was a donation to the building fund of the Church in accordance with La. R.S. 18 § 1505.2(I)(1), which allows contributions from Louisiana political candidates to religious and charitable organizations.

#### A.  Standard on Motion to Dismiss Indictment

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to move to dismiss an indictment for failure to charge an offense.  Rule 7(c) requires a "plain, concise and definite written statement of the essential facts constituting the offense charged."  These requirements are essentially the same as those of the Sixth Amendment, which mandates that an indictment must: "(1) enumerate each *prima facie* element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense

against future prosecutions." *United States v. Gaytan,* 74 F.3d 545, 551 (5th Cir.1996).  The law "does not compel a ritual of words" when determining if an indictment is sufficient. *United States v. Wilson,* 884 F.2d 174, 179 (5th Cir. 1989).  An indictment setting forth the offense in the words of the statute itself is generally sufficient, provided that the statue sets forth the essential elements of the offense. *See United States v. Gordon,* 780 F.2d 1165, 1169 (5th Cir.1986).  This is because the indictment's most basic purpose is to fairly inform the defendant of the charge against him. *Id.*  Indeed, the "test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.*  The Government is not required to prove its case in the indictment, but simply to set forth the elements of the offense, fairly inform defendants of the charges, and ensure no risk of future prosecution for the same offense. *United States v. Cavalier,* 17 F.3d 90, 92 (5th Cir.1994).  Finally, on a motion to dismiss an indictment, the Court must take the indictment's allegations as true. *See United States v. Kay,* 359 F.3d 738, 742 (5th Cir.2004) (quoting *United States v. Hogue,* 132 F.3d 1087, 1089 (5th Cir.1998)).  Therefore, the Court must examine the wire fraud and money laundering statutes as applied to the facts alleged in the Indictment, and determine whether Defendants' conduct, as charged, reflects a proper interpretation of criminal activity under the relevant criminal statutes.

### B.  Analysis

Walter Reed makes two arguments in support of his motion.  First, he argues that, even if the allegations in the indictment are accepted as true, the indictment does not allege a crime of wire fraud as the state statute explicitly sanctions such contributions.  Second, he argues that the count should be dismissed because there is no viable victim.  For the campaign contributors to have been defrauded, they must have been deceived into donating the money to Walter Reed's

campaign.  Here, Walter Reed argues no deception occurred because the fact that he was permitted to and regularly did donate campaign funds to religious institutions was public knowledge.  He made various contributions to churches in the years preceding the one at issue and numerous contributions to various religious organizations were included on his campaign finance disclosure reports.

The Court rejects both of these arguments.  First, Walter Reed's argument that the payment to the hospital cannot be fraudulent because Louisiana campaign finance laws allow for the charitable gift of campaign funds to non-profit religious entities is faulty in that it relies on the assumption that the payment to the church was, in fact, a gift.  However, not all payments to charities or religious organizations are gifts.  *See United States v. Terrell*, 754 F.2d 1139, 1149 n.3 (5th Cir. 1985) (affirming conviction and upholding jury instruction on the definition of "gift" that stated, "[t]he characterization given to a certain payment…is not conclusive," and that payment is not a "gift" if, *inter alia*, it is made to compensate another or with the intent to receive anything in return for it).  The fact that Walter Reed says the payment was a gift, that he listed the payment on his state campaign filings as a donation, or that the money went to a non-profit religious organizations, does not necessarily make it so.  After seeing the evidence, hearing the testimony, and assessing the credibility of the witnesses, the jury will decide Walter Reed's intention in making the payment.  Second, Walter Reed's argument that the campaign contributors are not viable victims was already rejected by this Court in Defendants' prior motion to dismiss. (R. Doc. 63 at 10-11).  Walter Reed offers no new information to justify departing from the Court's prior ruling.  Moreover, this argument similarly relies on the premature assumption that the payment was, in fact, a gift.

**VI.    CONCLUSION**

24

For the reasons previously stated,

IT IS ORDERED that Defendant Walter Reed's Motion to Strike Surplusage from the Indictment (R. Doc. 53) is GRANTED IN PART and DENIED IN PART.  IT IS FURTHER ORDERED that Defendant Steven Reed's Motion to Strike Surplusage from the Indictment is DENIED.  Accordingly, paragraphs 5 and 6 of Count 1(C) and paragraph 13 of count 1(A) are to be struck from the Superseding Indictment.

IT IS FURTHER ORDERED that Defendants Walter and Steven Reed's Motions to Sever (R. Docs. 52, 50) are DENIED.

IT IS FURTHER ORDERED that Defendants Motion to Reconsider (R. Doc. 75) is DENIED.

IT IS FURTHER ORDERED Walter Reed's Motions to Dismiss (R. Docs. 76,77) are DENIED.


New Orleans, Louisiana, this 5th day of January, 2016.

_____

UNITED STATES DISTRICT JUDGE