UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 15-100 |
| WALTER REED<br>STEVEN REED | SECTION "L" |

## ORDER & REASONS

Currently pending before the Court are two Motions *in Limine* filed by Defendant Walter Reed: (1) Motion Requesting Preliminary Rulings on Questions of State Law (R. Doc. 98) and (2) Motion Seeking Inclusion of Custom and Practice Evidence and Expert Testimony at Trial (R. Doc. 100). Having read the parties' briefs, reviewed the applicable law, and heard the parties on oral argument, the Court now issues this Order and Reasons.

I.  BACKGROUND

From 1985 to January 12, 2015, Walter Reed served as the District Attorney for Louisiana's 22nd Judicial District. Steven Reed is his son. On April 23, 2015, the United States government filed an eighteen-count indictment charging Defendants Walter and Steven Reed with conspiracy to commit wire fraud and money laundering, as well as substantive counts of wire fraud, money laundering, false statements on income tax returns, and mail fraud. On October 22, 2015, the Government filed a superseding indictment (the "Indictment"), adding an additional wire fraud count (count 8) against Walter Reed.

The gravamen of the conspiracy and wire fraud counts (counts 1-8) is Defendants' alleged improper personal use of campaign funds. Walter Reed is alleged to have solicited campaign funds from donors on the premise that the funds would be used to facilitate his reelection and then used those funds to pay for personal expenses unrelated to his campaign or

the holding of public office.  Specifically, the wire fraud counts allege that, *inter alia*, Walter Reed used campaign donations (i) to recruit potential clients for his private legal practice, (ii) pay off various expenses incurred by Steven Reed, (iii) pay for private and personal dinners, (iv) overpay his son for work allegedly performed on behalf of the Campaign, and (v) host a housewarming party for friends and family unrelated to the Campaign or the holding of public office.  Further, Walter and Steven Reed are alleged to have engaged in money laundering (counts 9 and 10) when they caused two service providers for a campaign-related event to make payments to entities controlled by Steven Reed in a manner that would disguise the payments as legitimate expenses when, in fact, the payments were for the personal benefit of the Defendants. Steven Reed is only charged with conspiracy to commit wire fraud, one count of wire fraud (count 7) and money laundering.

In addition to the wire fraud and money laundering counts, the Indictment also alleges that Walter Reed engaged in mail fraud when he deposited payments made by the St. Tammany Parish Hospital (the "Hospital") in exchange for legal representation by the District Attorney's office into his own personal bank accounts for private use.  Specifically, the mail fraud counts (counts 15-19) allege that Walter Reed began attending meetings of the Hospital board and advising the Hospital board on various issues in his capacity as a District Attorney.  According to the Indictment, he arranged for checks to be sent to the District Attorney's office and then deposited them into his personal bank account when he knew these funds were actually intended for the Office of District Attorney.  Finally, the Indictment alleges that Walter Reed underreported his income on his tax returns for four years.

## II. DEFENDANT'S MOTION REQUESTING RULINGS ON QUESTIONS OF STATE LAW

Defendant Walter Reed seeks a preliminary ruling on questions of law important to the formulation of his defense regarding Louisiana's Campaign Finance Disclosure Act ("CFDA"). (R. Doc. 98). Specifically, Defendant seeks a preliminary ruling on the following six questions regarding the interpretation of the CFDA and related Board of Ethics opinions (R. Doc. 98-1 at 1-2):

   a) whether parties or social functions that do not have a fundraising component but do have a specific campaign purpose are sufficiently related to the holding of public office and the campaign such that campaign funds may be spent in the production of such events;

   b) whether the purchase of flowers for campaign supporters is sufficiently related to the campaign in light of the Louisiana Board of Ethic's advisory opinion allowing such expenses;

   c) whether the purchase of flowers for office staff, and ill or hospitalized constituents, and/or the funerals of deceased constituents is sufficiently related to the campaign and the holding of public office in light of the Louisiana Board of Ethic's advisory opinion allowing such expenses;

   d) whether the donation of campaign funds to a local high school is allowable when the candidate's child is enrolled at the school in light of the Louisiana Board of Ethic's advisory opinion allowing donations to local high school students and relevant tax evasion cases;

   e) whether the CFDA requires that a donation of surplus campaign funds made to a charitable organization be related to the campaign or the holding of public office; and

   f) whether a candidate may, under §1505.2(I)(1) of the CFDA, donate money to a charitable, non-profit organization, if such a donation has a dual purpose, only one of which is related to the campaign or holding of public office.

Defendant claims that a ruling on these issues are critical to his defense. The Government has indicted Walter Reed for allegedly spending his campaign funds on "personal" expenses. There is no federal law regarding the types of expenditures by a political candidate which

constitute "personal" expenses. Louisiana's CFDA, however, provides guidance on the acceptable ways in which Louisiana political candidates can spend their campaign funds. According to the CFDA, expenses are not personal if they are related to the campaign or related to the holding of public office. Walter Reed intends to present a defense that the expenditures at issue were not personal, as they were related to the campaign and/or related to the holding of public office or, in the alternative, that defendant had a reasonable good faith belief that the expenditures were related to the campaign and/or holding of public office.

Walter Reed argues that in order to present his defense—that expenditures were related to the holding of public office or he had a reasonable belief that they were—this Court must rule on the aforementioned questions of state law regarding what are and what are not appropriate expenditures. The Court disagrees. Walter Reed is still permitted to and fully capable of presenting his defense without a ruling from this Court on questions of state law.

To begin, whether or not state campaign finance law permits the expenditures made by Defendant Walter Reed is irrelevant to whether he committed fraud under federal law, because permissibility of an action under state law is not a defense from prosecution for violations of federal law. *See United States v. Moore*, 37 F.3d 169 (5th Cir. 1994). Additionally, even where state law expressly permits the conduct in question, permissibility under state law does not shield the defendant from federal prosecution. *See United States v. Dotson*, 407 F.3d 387 (5th Cir. 2005). Absent any ruling on state law, Walter Reed is permitted to present relevant and admissible evidence to the jury regarding whether he had the requisite intent to commit fraud under federal law, including his understanding of Louisiana campaign finance laws and good faith in making the expenditures at issue. (R. Doc. 126 at 2). Moreover, the critical issue for the

jury is not whether certain expenditures are or are not permitted under the CFDA but whether Walter Reed honestly believed such expenditures were or were not permitted under the CFDA.

It would serve no purpose for the Court to interpret state campaign finance laws, which have limited applicability to the jury's determination of whether Walter Reed committed wire fraud, or conspired to do the same. For example, a ruling from this Court that the purchase of flowers for campaign volunteer is sufficiently related to the campaign in light of the Louisiana Board of Ethics Advisory opinion has no bearing on the issues before the jury. The Government is not arguing that the purchase of flowers for a campaign volunteer is fraudulent. Rather, the Government argues that the purchase of flowers for Walter Reed's daughter who also volunteered for her father's campaign was fraudulent under the circumstances in that that particular purchase was unrelated to his campaign and the holding of public office. A jury is capable of listening to both the Government's evidence and the Defendant's evidence regarding his intent without the Court detouring into the specifics of state campaign finance law.

Accordingly, the Defendant's Motion for Preliminary Rulings on State Campaign Finance Law is DENIED.

### III. DEFENDANT'S MOTION SEEKING INCLUSION OF CUSTOM/PRACTICE EVIDENCE AND EXPERT TESTIMONY

#### a. Defendant's Argument

In addition to the preliminary legal rulings sought on the permissible expenditures under the CFDA, Defendant Walter Reed also seeks an order ruling on the admissibility of expert evidence at trial regarding industry custom and practice related to expenditures under the CFDA. (R. Doc. 100).  Specifically, Defendant seeks to introduce evidence regarding 1) the Louisiana CFDA, 2) the practices of the Louisiana Board of Ethics in administering and enforcing the

CFDA, and 3) the common practices of other Louisiana candidates with respect to campaign expenditures. (R. Doc. 100-1 at 1).

Defendant submits that testimony and evidence regarding the evolution and enforcement of the relevant provisions of the CFDA, combined with examples of the types of expenditures that have historically been recognized by the Board of Ethics as acceptable under those provisions, is crucial evidence speaking to Defendant's specific intent to defraud. (R. Doc. 100-1 at 5). Defendant's argument is that, if he reasonably believed the CFDA permitted the expenditures he made, then he could not have intended to deceive contributors when he used campaign funds for those purposes. (R. Doc. 100-1 at 5). Defendant seeks to introduce an expert witness, Gray Sexton, who is an attorney and expert on the CFDA to testify about the law and its enforcement, including the types of expenditures that have traditionally been allowed under the CFDA. (R. Doc. 100-1 at 6). Defendant also seeks to have Mr. Sexton testify as to how the Board of Ethics handles alleged CFDA violations, including explaining that the typical remedy requires the candidate to repay the campaign to compensate for the amount improperly expended. (R. Doc. 100-1 at 7).

In support of his argument, Defendant points to *United States v. Simson*, wherein the Fourth Circuit found the defendant's attorney to be ineffective for failing to present evidence of custom and practice at trial because such evidence was so crucial to the issue of intent. In *Simson*, the district court granted a new trial because the defendant's counsel failed

> to properly develop the defense that it was the standard practice in the surety business not to disclose indemnitors on bondability letters." The district court specifically noted that Simpson failed to discover and introduce exculpatory documents, failed to present an expert on standard practices in the surety business, and failed to cross-examine government witnesses adequately regarding the standard practice not to disclose indemnitors in the surety business. To prove its charges against the defendant, the government had to prove that he acted with criminal intent. Since evidence of custom and practice in the surety bond industry

> would have negated criminal intent, the district court concluded [the defendant's attorney's] conduct "was not reasonable under the circumstances and fell below prevailing professional norms...."

940 F.2d 654 (4th Cir. 1991), 1991 WL 141043 at *1. The Fourth Circuit affirmed the grant of a new trial for all these reasons. *Id.* at *2.

In further support, Walter Reed cites to *United States v. Garber*, where the Fifth Circuit reversed the defendant's conviction based on the court's exclusion of expert testimony regarding certain interpretations and theories of tax law which supported the defendant's position that she reasonable believed that the monies she received for her blood plasma were not taxable. 607 F.2d 92 (5th Cir. 1979). There, the Court held, "by disallowing [the expert's] testimony that a recognized theory of tax law supports [the defendant's] feelings, the court deprived the defendant of evidence showing her state of mind to be reasonable. *Id*. at 99. There, the court concluded, "the tax question was completely novel and unsettled by any clearly relevant precedent," and as and admonition, "[a] criminal proceeding pursuant to section 7201 is an inappropriate vehicle for pioneering interpretations of tax law." *Id.* at 100.

Similarly, Walter Reed submits that testimony and evidence regarding the evolution and enforcement of the relevant provisions of the CFDA, combined with examples of the types of expenditures that have historically been recognized by the Board of Ethics as acceptable under those provisions, is crucial evidence speaking to Walter Reed's intent and will be helpful to the jury in understanding the context in which Walter Reed made the expenditures contested by the government.

Walter Reed argues that it is essential for the jury to know that "acceptable campaign expenditures include more than the purchase of campaign buttons and yard signs" and the "Board of Ethics has regularly determined that the acceptable range of expenditures extends to nearly any expense which has the potential to influence voters or obtain the support of

constituents." (R. Doc. 100-1 at 5). Defendant contends that Mr. Sexton's testimony is admissible as it will set the appropriate framework and assist the defense in demonstrating that Walter Reed, acting under the direction and guidance issued by the Board of Ethics, understood many of the expenditures at issue to be "related to the campaign or holding of public office" or otherwise valid under the terms of the CFDA. Defendant submits that, if proven, this would eliminate a vital element of proof – specific intent to defraud. *Id.* at 6-7.

Defendant seeks to have Mr. Sexton testify regarding the customary manner in which formal ethics charges are brought against a political candidate. As noted by Mr. Sexton, "[r]eported expenditures for impermissible purposes typically results in the candidate being directed to <u>repay</u> his campaign fund by the amount improperly expended." (R. Doc. 100-3 at 13). Defendant argues that this is particularly relevant here, as a Board of Ethics complaint was filed concerning many of the expenditures at issue but no formal ethics charges were brought against Walter Reed. *Id.* at 19, 20. Rather, the Board requested that Walter Reed return $2,500.00 paid to Steven Reed to the campaign. *Id.* at 23. Defendant notes that not one campaign expenditure listed in the Indictment was challenged in a formal complaint filed by the Board of Ethics or ordered to be repaid by the Louisiana Board of Ethics. Walter Reed submits that this evidence is admissible for the purpose of establishing that the expenditures in the Indictment were customary and appropriate under the relevant state laws, suggesting that there was a lack of intent to defraud.

Defendant Walter Reed argues further that custom and practice evidence regarding (a) flower purchases, (b) donations to religious organizations, and (c) donations to local academic institutions is admissible to establish lack of specific intent to deceive. In support, Defendant notes that a search of the electronically filed campaign finance reports available on the Board of Ethics website reveals thousands of examples of expenditures on flowers, donations to churches,

and donations to schools, which speaks to the propriety of such expenses according to the Louisiana Board of Ethics and is evidence of Walter Reed's lack of criminal intent.

### b. Government's Response

The Government contends that even if Defendant Reed's expenditures were permitted under the CFDA, Defendant cannot rely on his compliance with state law (a law that Defendant is not charged with breaking) to show that he did not intend to defraud contributors in violation of federal law. The Government urges that whether Defendant's expenditures were customary and appropriate under state law is irrelevant to the alleged violations of federal law, specifically, the charges that the Defendant abused his office (1) to use the campaign to illegally funnel money to Defendant Steven Reed; (2) to use campaign funds for personal expenses; (3) to conceal income from the IRS; and (4) to use the Office of District Attorney to enrich himself. (R. Doc. 127 at 1). Because the evidence is of little probative value and is likely to result in confusion and delay, the Government requests that it be excluded. (R. Doc. 127 at 12).

The Government seeks to exclude the custom and practice evidence on the grounds that permitting the evidence would force the Government to spend time at trial distinguishing the conduct of unrelated third parties (other Louisiana public officials) and would suggest to the jury that the Government is selectively prosecuting the Defendants. (R. Doc. 127 at 5). The Government also argues that evidence of the customary practice of other elected officials is irrelevant because the Government is not alleging that, for example, all campaign donations to schools or churches are per se illegal, but rather that Defendant's motivation in many specific transactions constituted kickbacks or purely personal expenditures constituting fraud under federal law. (R. Doc. 127 at 14-15).

The Government also seeks to exclude the testimony of Defendant's expert witness Sexton on the grounds that the interpretation of state regulation does not assist the jury in

9

understanding what the Defendant contemporaneously believed, which would be relevant to his defense, but rather inappropriately seeks to instruct the jury on the meaning of law and imparts legal conclusions about whether Defendant Reed violated state law, in violation of Federal Rule of Evidence 704. (R. Doc. 127 at 2). In support of its argument, the Government lists seven examples in a bulleted list excerpted from Mr. Sexton's expert report which the Government claims are inadmissible legal conclusions. (R. Doc. 127 at 6-7). The Government argues that any evidence as to the lack of clarity or enforcement of the CFDA is relevant only to the extent that Defendant Reed was actually confused , but the expert testimony to be offered here does not speak to Defendant Reed's personal state of mind at the time his actions occurred. (R. Doc. 127 at 9).

  c. **Law & Analysis**

The proponent of expert testimony bears the burden of establishing its admissibility, *see Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir. 1998), and a district court has wide latitude and broad discretion to exclude expert evidence, *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997). Courts consider several factors when assessing whether to admit testimony from a witness who has been qualified as an expert. Federal Rule of Evidence 702 provides that an expert witness may testify if the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. As with all evidence, expert testimony must be relevant under Federal Rule of Evidence 401 and must satisfy a balancing test under Federal Rule of Evidence 403. *See United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995). Even if the expert testimony is relevant, a court may exclude it under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

    Here, Defendant has not met his burden of establishing the admissibility of Mr. Sexton's expert testimony or other "custom and practice" evidence. At the core of the Defendant's motion is his argument that the expert testimony of Mr. Sexton is crucial to establishing Defendant's state of mind i.e., his lack of criminal intent. However, Mr. Sexton's opinions regarding the CFDA are not relevant to the Defendant's state of mind. Mr. Sexton does not and cannot speak to Defendant Walter Reed's understanding of the rules. Any purported lack of clarity regarding the CDFA is only relevant to the extent that the Defendant himself was actually confused. *See United States v. Whittemore*, 944 F. Supp. 2d 1003, 1011-12 (D. Nev. 2013) *aff'd*, 776 F.3d 1074 (9th Cir. 2015) (denying defendant's motion *in limine* to admit expert testimony regarding ambiguity of campaign finance regulations because "the defendant does not allege that he relied on [the expert's] expertise in interpreting the regulation and [the expert] does not offer testimony relating to [defendant's own ability to understand the legal principles involved.").

    In *United States v. Herzog*, the defendant wanted to offer an attorney-expert's opinion "that tax laws are complex and that even law students, law professors, and attorneys find the subject very difficult." 632 F.2d 469, 473 (5th Cir. 1980). The trial court excluded this testimony, because "[n]one of the questions concerning [the expert's] view of tax laws could be relevant to the willfulness issue…since [the expert's] opinion that the laws are complex could not shed any light on whether Herzog had been confused by any such complexity at the time he submitted the withholding forms." *Id.* The trial court further reasoned that other individuals' "comprehension of the tax laws could not have any bearing on Herzog's intent." *Id.* Similarly, here, Mr. Sexton, like the expert in *Herzog*, does not provide any information about Walter

Reed's understanding of the CFDA, so his testimony is not relevant to Walter Reed's intent. *See Herzog*, 632 F.2d at 472; *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (upholding exclusion of expert testimony that, because tax laws were complex, defendants beliefs about reporting gambling wins were "reasonable" on the grounds that experts could not explain defendant's actual beliefs or ability to understand legal principles); *Whittemore*, 944 F. Supp. 2d at 1012 (excluding expert testimony regarding purported ambiguity in campaign finance regulation, reasoning that it would be confusing because "only defendant's subjective belief is at issue." Mr. Sexton's opinions as to the construction, usage and application of the CFDA based on interpretation of the law by the Louisiana Board of Ethics do not speak to the issue of whether *Walter Reed* believed his expenditures were reasonable under the law. Indeed, Walter Reed may not have ever read or even been aware of the Board of Ethic's actions in interpreting and applying the law. If Walter Reed wishes to testify regarding his understanding of the prohibitions on his campaign expenditures under the CFDA, he may do so, but Mr. Sexton's testimony will not provide insight on Walter Reed's subjective understanding of the law. Consequently, Mr. Sexton's testimony will not "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702.

The present circumstances are unlike the circumstances in *Simson* wherein an expert on standard practices in the surety business was critical to develop the defense that it was the standard practice in the surety business not to disclose indemnitors on bondability letters. Here, although jurors may not be aware of the nuances of the CFDA, a detailed understanding of the CFDA is not relevant and would not "help [the jurors] to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Defendant is not being charged with violating the CFDA. The graveman of the charges against the Defendant are that he used campaign funds for personal

use. A lay person (and presumably a potential campaign contributor) can appreciate that certain expenditures are unrelated to the holding of public office when they are purely personal expenditures. The concept of personal versus professional (unlike bondability letters in the surety business) is one that is well within the grasp of a reasonable juror.

The issue at present is also distinct from the facts in *Garber*. In *Garber*, the court held that the "combined effect of the trial court's evidentiary rulings excluding defendant's proffered expert testimony *and its requested jury charge* [that a misunderstanding as to defendant's liability for the tax is a valid defense] prejudicially deprived the defendant of a valid theory of her defense…. The Court erred by refusing to instruct the jury that a reasonable misconception of the tax law on her part would negate the necessary intent." 607 F.2d at 97, 99. Here, no one is precluding Walter Reed from arguing that he lacked the necessary intent to commit fraud because he believed that his campaign expenditures were related to the holding of public office and permissible under the CFDA. Moreover, the jury will be instructed as to the same.

Additionally, Defendant seeks to introduce "custom and practice" evidence that other candidates have reported expenditures for flowers and have donated money to faith-based organizations and educations. However, like the expert testimony, this evidence about the campaign expenditures of other candidates is also irrelevant. The Government is not arguing that spending money on flowers or donating money to churches or schools is *per se* illegal. Rather, the Government argues that, for example, when the Defendant gave money to the Faith Tabernacle Church and its pastor, Reverend Jerry Cox, this was not a donation. On the contrary, the Indictment alleges that this sum was provided as a kickback in exchange for private legal work. It is of no consequence that other candidates under other circumstances properly (or improperly) gave money to churches. Similarly, the Government seeks to prove that the

Defendant's expenditures were fraudulent because he purchased flowers and made payments to Saint Paul's School for purely personal reasons. Evidence that others purchased flowers and donated money to schools is not relevant to whether Walter Reed did the same for reasons unrelated to his campaign.

Additionally, Mr. Sexton's proffered testimony regarding that such expenditures are permissible under certain circumstances does not speak to Walter Reed's intent in making such expenditures. Although the members of the jury may not have any knowledge or experience relating to campaign finance, a lay person can understand—without expert testimony—when an expenditure is personal and when it is not. Purchasing flowers for a constituent's funeral or in recognition of prior political support is different than purchasing flowers for your girlfriend or to thank someone for a personal favor. Lay people can understand this distinction without expert testimony. Finally, evidence of legitimate purchases by others would shed no light on whether the Defendant in this case used his campaign funds for purely personal expenses or kickbacks.

## IV. CONCLUSION

Considering the foregoing, Defendants' Motion Requesting Preliminary Rulings on Questions of Law (R. Doc. 98) and Defendants' Motion Seeking Inclusion of Custom and Practice Evidence and Expert Testimony at Trial (R. Doc. 100) are DENIED.

New Orleans, Louisiana, this 21st day of March, 2016.

*[signature]*
UNITED STATES DISTRICT JUDGE