**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET NO. 15-100** | |
| **versus** | * | **SECTION L** | **MAG. 2** |
| **WALTER P. REED**<br>**STEVEN P. REED** | * | **VIOLATIONS:** | **18 U.S.C.§2**<br>**18 U.S.C.§371** |
| | * | | **18 U.S.C.§1341**<br>**18 U.S.C.§1343** |
| | * | | **18 U.S.C.§1956**<br>**26 U.S.C.§7206(1)** |
| | * | | |

*  *  *  *  *  *  *  *  *  *  *  *  *

**DEFENDANT WALTER P. REED'S OPPOSITION TO GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE**

**NOW INTO COURT**, through undersigned counsel comes defendant, Walter P. Reed, who moves this Honorable Court to deny or otherwise limit the government's motion for Preliminary Forfeiture Order, for the reasons set forth in his prior pretrial motions (including Motion to Strike Surplusage September 10, 2015, Doc. No. 53-1), his post-trial Motions for Judgment of Acquittal and New Trial and as set forth below in this memorandum in opposition. Walter Reed also adopts the Opposition to Forfeiture filed by Steve Reed.

## INTRODUCTION

Prosecutors, continuing their "overreaching" conduct, now seek:

(1) to reverse course from ten (10) years to a twenty (20) year period for forfeiture of St. Tammany legal fees, disavowing a letter from the First Assistant U.S. Attorney which limited forfeiture to ten (10) years in response to motion practice by the defense and this Court's Orders to reply to defense's request for proper Notice of Forfeiture;

(2) to disregard the jury's finding of "Not Guilty" as to Count 9 and seek forfeiture of $5,000.00 in campaign funds payable to White & Associates for the America Concert;

(3) to reverse course as to the Open House/Patron Party ($24,840.00) after arguing it was only "one overt act", for which the jury could have found a conspiracy, now arguing that the $24,840.11 should be forfeited as part of that conspiracy;

(4) to seek the forfeiture of $25,000.00 from the Reed Campaign Fund which ultimately benefited a church and is now part of the constructed Faith Tabernacle gym (i.e. the funds sought to be forfeited are not in the possession of defendant, but an innocent third party recipient); and

(5) to reverse its position with regard to the value of Steven Reed's video, despite arguing to the jury, its value was $2,500.00 ($14,300 - $11,800) but now seeking forfeiture of the full amount of $14,300.00.

Obviously, if the defendant's Motions on the merits prevail upon appellate review, no forfeiture is in order. The memorandum below addresses other limitations as to the government's forfeiture motion, such as "proceeds" not traceable to the offense, restitution in lieu of forfeiture, a five year statute of limitations, third party recipients of campaign funds who were not charged with misconduct, and direct cost reduction on any forfeiture.

## LAW ON CRIMINAL FORFEITURE

The government's Motion for a Preliminary Forfeiture Order raises the legal questions addressed below:

1. *There are no "proceeds" subject to forfeiture under the United States vs. Santos, 553 U.S. 507 (2008)*

The United States Supreme Court re-wrote the law with regard to money laundering and forfeiture in the Santos case. Santos was convicted of violating federal money laundering statute (18 U.S.C.§1956) which prohibits the use of "proceeds" of criminal activities for various purposes, including transactions intended to promote the carrying on of an "unlawful activity". The Court noted that nowhere in the statute is there a definition of "proceeds", and effectively the task is delegated to federal judges to determine. The Court, using the "rule of lenity" interpreted the word "proceeds" to apply only to transactions involving "criminal profits" and not "criminal receipts".

While in the Reed case, the money laundering counts are charged in Counts 9 and 10, the concept of "proceeds" applied to all the items sought to be forfeited by the government. In Counts 9 and 10, the two $5,000.00 transactions for the White Oak Productions and Lakehouse are funds expensed from the Walter Reed Campaign Fund. The government's evidence did not show that the campaign fund was an "illegal activity". The Superseding Indictment alleges the Walter Reed Campaign Fund as the "victim", and there is no issue as to the existence of the Walter Reed Fund as a legitimate entity. The campaign funds existed prior to the two expenditures, and are not a result of any "unlawful activity".

Unless the funds which were generated came into the possession of the defendant, forfeiture statutes are not applicable. Under the government's theory of the case, the only time this occurred is with the $29,400.00 expenditure to Liquid Bread, and one $5,000.00 cashier's check to Lakehouse which ultimately is payable on the joint loan obligation of Steven Reed and Walter Reed. Otherwise, forfeiture should not apply.

2. *The Government is Not Entitled to Criminal Forfeiture of Funds for Conduct Prior to the Dates of the Offensive Conduct*

In the case of the United States vs. Capoccia, 503 F. 3d 103 (2d Cir. 2007) Circuit Judge, now U.S. Supreme Court Justice, Sotomayor limited the government's forfeiture efforts against

the defendant, finding such funds derived from uncharged conduct, did not bear the requisite nexus to the violation for which he was convicted. In that case the government sought forfeiture of monies for conduct not alleged prior to a particular date.

In the Reed case, the Indictment charges only five discrete violations of mail fraud in Counts 15 through 19. Yet, in its forfeiture effort, the government now seeks to go back 20 years to seize nearly $574,063.00 in legal fees. The government forfeiture should be limited to the charged conduct in Counts 15 through 19.

3. *The Government's Effort to Seek Forfeiture of $574,063.00 of Legal Fees Over a 20 Year Period is in Violation of the 8th Amendments Prohibition Against Excessive Fines. See United States vs. Bajakajian, 524 U.S.321 (1998)*

In United States vs. Bajakajian, 524 U.S. 321 (1998), the Supreme Court held that a punitive forfeiture will constitute a "fine" and is within the meaning of the Eight Amendment's Excessive Fine Clause.[1] The Court found that if the amount of the forfeiture is grossly disproportionate to the gravity of the offense, it is unconstitutional.

In the Reed case, the government seeks legal fees of over $570,000.00 generated over a 20 year period. The actual legal services were not *per se* improper, nor was there any harm of that proportion. While the government will counter that on some occasions, Assistant District Attorneys were utilized at board meetings in lieu of Walter Reed, this utilization was much more limited than the amount of forfeiture which the government seeks. Those limitations are discussed below.

[1] In that case the defendant was charged with failing to report he was transporting more than $10,000.00 out of the country, and the government sought forfeiture of $357,000.00 of monies found in his possession as he was leaving the country.

4. *The Statute of Limitations for the Underlying Mail Fraud Offenses is Five Years and the Criminal Forfeiture Statute Should be Limited by the Limitation of the Underlying Offense*

In the instant case the mail fraud statutes prescribe after five years. 18 U.S.C.§3282 In Counts 15 through 19, the government has alleged violations during the five year period prior to the Indictment. Based on the statute of limitations, the defendant seeks limitation on the forfeiture to the 5 year time period.

5. *Title 18 U.S.C. §981(b) allows deductions from Forfeiture Property for "Direct Costs Incurred in Providing Goods and Services" (See United States v. Mark St. Pierre, 809 F. Supp. 2d 238 (EDLA 2011))*

This Court has previously addressed the issue of "direct cost" deductions in the St. Pierre case, noting that §981 defines "proceeds" differently based on the nature of the case:

> The term proceeds is defined:
>
> (a) in cases involving illegal goods, illegal services, unlawful activities… the term proceeds means property of any kind obtained directly or indirectly as a result of the offense…
>
> (b) in cases involving lawful goods and lawful services that are sold or provided in an illegal manner the term proceeds means the amount of money acquired through the illegal transaction resulting in the forfeiture, less direct cost incurred providing the goods or services. (Emphasis added)

In the Reed case with regard to the goods and services provided to the Campaign Fund, and the legal services provided to St. Tammany Hospital Board, both were lawful "goods and services" for which direct costs (including federal income tax) incurred should be allowed. In the St. Pierre case, this Court found that it was "unreasonable and inconsistent with the purpose of forfeiture to require St. Pierre to forfeit funds which he neither directly or indirectly acquired." The government has to prove the nexus between the offenses and the defendant's interest.

The overwhelming majority of the campaign fund expenditures went to third parties who were not involved in the conspiracy as to the campaign funds. (For example, the $25,000.00 to

the Faith Tabernacle building fund for a gymnasium went to an innocent third party (i.e. the church).) The defendant suggests limitations on any forfeiture for direct costs as argued below in Sections I, II and III:

*6. Restitution, Not Forfeiture, is the Appropriate Relief*

The government's approach in its motion conflates restitution with forfeiture. Forfeiture is for proceeds of crime. If the campaign fund is legitimate, the use of funds for improper expenditures does not taint the funds. It is merely an improper expense which should be reimbursed to the Campaign.

In the instant case, the government seeks forfeiture of campaign funds on allegations they are to be "improper expenditures unrelated to the campaign." If those benefits go to innocent third parties who are not co-conspirators then there should be restitution only, and that restitution has to be to the campaign fund as the "victim".

As to the St. Tammany Hospital legal fees, restitution not forfeiture, is the appropriate relief because the legal services, regardless of the capacity in which Walter Reed appeared at the Board, were properly delivered. The manner in which the fees were paid does not produce any victim from the standpoint of the District Attorney's office, other than time spent by assistant District Attorneys sent in lieu of Walter Reed to individual board meetings for which a $2500.00 monthly retainer was paid. Restitution, not forfeiture, for these amounts should be the Court's only consideration.

Finally, why should the federal government obtain forfeiture, in lieu of directing restitution to the District Attorney for those limited appearances by Assistant District Attorneys?

## RESPONSE TO GOVERNMENT'S MOTION

In its introduction to, its Motion for Preliminary Order of Forfeiture, the prosecution divides the demand amounts into only two figures: $78,539.11 against Walter and Steven Reed and $609,489.57 against Walter Reed solely.

For purposes of a reply, defendant Walter Reed divides the response into three parts.

I. $78,539.11 OF CAMPAIGN FUNDS AS TO WALTER AND STEVEN REED (COUNT 1, 8 AND 9)

II. $35,426.32 OF CAMPAIGN FUNDS AS TO WALTER REED ONLY (COUNTS 2 THROUGH 6 AND 8)

III. $574,063.25 AS WALTER REED ONLY ON THE ST. TAMMANY HOSPITAL LEGAL FEES (COUNTS 15 TO 19)

## I. THE $78,539.11 AMOUNT AS TO WALTER AND STEVEN REED

The prosecution's claim of $78,539 of campaign funds consist of five different elements:

*a) The Globop/Steven Reed Video - $14,300.00*

Despite arguing to the jury that the $14,300.00 value amount for the video should be discounted by $12,800.00, (thus conceding the value of the video at $2500.00), the prosecution now seeks forfeiture of the entire amount of $14,300.00. Thus, the forfeiture figure should be reduced to the conceded value by prosecution (i.e. $11,800, along with reduction of any direct cost).

Additionally, the $14,300.00 total includes one payment which occurs much later after the video production. (See Exhibit 1) This $2,500.00 payment was for Steven Reed's work in connection with a golf tournament and should be deducted from the $14,300.00 amount, along

with another $2,000.00 for pre-production work on a Safe Driving initiative later cancelled. See Steven Reed's Opposition.[2]

*b) The Open House/Patron Party ($24,840.11)*

In the Motion for Judgment of Acquittal, the defense focused on one of these larger items ($24,840.11) alleging that it was a classical political event – a patron party related to the campaign, which, while contained in Count 1 was not a part of a separate count of the Indictment. The $24,840.11 consist primarily of $7,000.00 for Vince Vance & The Valiants, (the featured band), $4,700.00 from Gambino's Catering, $3,100.00 for rental of the tents from Coles, and $8,358.00 to Globop, Steven Reed's company. Unlike the America Event, the prosecution never challenged the fact that Steven Reed supplied the amount of services and products (e.g. liquor) invoiced. The only issue is whether the Open House/Patron Party event was a political event under the state campaign laws (i.e. related to the campaign). See La.R.S.18:1505.2(I)(i) Clearly it was.

During the trial, defense elicited photographs (discovered after the Indictment) which clearly reflect the political nature of the Open House/Patron Party event as it was attended by judges, councilmen, mayors, members of the Walter Reed's Breakfast Club of political supporters, members of the District Attorney's office, and even the St. Tammany Hospital Board members (R. Doc. 307, pp. 53-54). (R. Doc. 312, pp. 49-52) One of the photos depicts Walter Reed speaking to the assembled group. See Exhibit 2.

In seeking to respond to the Motion for Judgment of Acquittal regarding the Open House/Patron Party, the prosecution highlighted the fact that the Open House was only <u>one</u> of many overt acts. Now, seeking forfeiture of this identical amount, the Court is called upon to

---

[2]See Steven Reed's Memorandum in Opposition. Walter Reed joins in the assertion at p. 8, that the entire $14,300.00 should not be forfeited.

make a finding as to whether this event was "related to the campaign." The prosecution should not be able to substitute its view of political campaigns (i.e. the event must have a "fundraising" element and party cups e.g. "Walter Reed for DA" - otherwise such functions cannot be "related to a campaign").

The prosecution's substitution of its interpretation of a "political campaign" event is one of the concerns raised in the defense's federalism arguments which the Court notes may finally be resolved after appellate review. But now, since the government seeks forfeiture of this same amount, the Court is called upon to render an opinion with regard to the nature of the Open House/Patron Party event as "related to the campaign." If the Court determines that the event was a personal party, in the alternative, the direct costs paid to suppliers of goods and services should be excluded. 18 U.S.C.§981(a)(2)(B) (See also Steven Reed's Opposition to the Forfeiture, p. 1-6).

*c) The America/Liquid Bread - $29,400.00*

The defense maintains its position with regard to Motions to Dismiss and appellate issues as to the $29,400.00 Liquid Bread payment. While some of the funds ultimately became a financial benefit to Walter Reed in connection with a repayment of a loan, the forfeiture should be reduced by the amount of any liquor supplied by Steven Reed. See Steven Reed's Memorandum in Opposition.

There is sufficient evidence that 20 cases of liquor was supplied by Steven Reed[3] at the America event, although, the government's evidence challenges the large amount of $29,400.00. The defense believes that, even in view of the government's evidence, this amount should be reduced by $7,548.00, leaving $21,852.00 as the maximum amount of forfeiture. Walter Reed adopts the arguments of Steven Reed's Opposition as to the amounts involved. (See p. 8-10)

[3] Trial Testimony of Bart Pepperman, Day 9, p. 63.

*d) Globop/White Oak - $5,000.00 (Count 9) – "Not Guilty"*

The jury clearly acquitted both defendants with regard to the $5,000 expenditure to White Oak Productions. The testimony of Ed White made clear that: (a) he could not make the America Event, (b) Walter Reed's son was substituted and attended the event, and (c) Steven made arrangements and paid for the Mardi Gras Indians to appear. See Trial Testimony of Ed White, Day 3, p. 239-241. Dwight Carter (the medicine man of the Mardi Gras Indians) testified about his personal relationship with Steven Reed, who invited his group to attend the function, and paid them. See Trial Testimony of Dwight Carter. Clearly, this $5,000.00 should not be subject to forfeiture.

*e) Liquid Bread/Lake House - $5,000.00 (Count 10)*

With regard to this particular entry, Walter Reed reimbursed his campaign a $5,000.00 equivalent amount specifically noting this Lake House entry as a reversal and, returning this amount to his campaign fund account prior to the Indictment. Thus, it should not be subject to forfeiture. (See Exhibit 3)

In summary, with regard to the $78,539.00, defendant Walter Reed contends that only $21,852.00 of the $29,400.00 for Liquid Bread and the $7,300.00 of the $14,300.00[4] for the video are the campaign fund expenditures that could be subject to forfeiture. The additional $5,000.00 to the Lake House would likewise be subject for forfeiture, except for the fact that amount was returned to the campaign – the alleged victim - before Indictment. Defendant contends that the $25,000.00 for the Open House, $5000.00 for White Oak Productions, and $7,000.00 of the video payments should clearly be excluded from the forfeiture amount of $78,000.00, leaving the amounts below.

---

[4] Walter Reed adopts Steven Reed's position, on the merits, that the entire $14,300.00 should be stricken, but based on exclusions totaling $7000.00, uses the $7,300.00 amount.

**DEFENSE SUMMARY OF I ($78,539.00)**

| **Event** | **Amount Sought by Government** | **Date** | **Payable to** | **Payable From** | **Amount of Defense Reduction** | **Remaining Amount** |
|---|---|---|---|---|---|---|
| Open House/Patron Party | $24,840.00 | 4/14/12 | Various Vendors | Campaign | $24,840.00 | 0 |
| Video | $14,300.00 | 3/09-10/09 | Globop | Campaign | - $2,500 (value)<br>- $2,500 (golf tournament)<br>- $2,000 (Driving) | $7,300 |
| America Event | $29,400.00 | 10/5/12 | Liquid Bread | Campaign | - $7,548 | $21,852 |
| America Event (Lakehouse) | $5,000.00 | | (Globop) Lakehouse | Campaign | $5,000.00 | 0 |
| | **$78,539.00** | | | | | **$29,152.00** |

## II. THE $35,426.32 CAMPAIGN FUND AMOUNT FOR COUNTS 2 THROUGH 6, AND[5] 8 AGAINST WALTER REED ONLY

*1. $25,000.00 Building Fund Contribution (Count 8)*

The primary expense among the $35,426.00 is the $25,000.00 campaign expenditure to Faith Tabernacle Church for the purpose of building a gym (Count 8). The tracing of the assets shows that the $25,000.00 went into Faith Tabernacle's building fund (i.e. a third party), and ultimately resulted in the building of the intended gymnasium. There is no evidence whatsoever that Reverend Cox or any of his constituents personally gained from this $25,000.00 amount. Nor was Reverend Cox a co-conspirator as his pleas of guilty were for IRS violations unrelated to instant indictment. Accordingly, Walter Reed contends that this $25,000.00 should not be

[5] The Prosecution concedes that Count 7, the $29,400.00 Liquid Bread amount is included in Count 1, and should not be included again.

subject to a forfeiture because of its ultimate use as intended for an innocent third party (i.e. the Church).

2. *Other Items (Count 2-6)*

Likewise, the meals and flowers in Count 2 through 6 were for third party recipients who were neither charged or alleged to be a co-conspirator. None of these items should be forfeiture. There are additional grounds to exclude the two below items from forfeiture:

a. *Gerald's Steakhouse*

Another portion of the $35,000.00 is the Gerald's Steakhouse $2,635.00. Like the above expenditure to Faith Tabernacle Church, the beneficiary was third parties who were not conspirators. This entry was also reimbursed to Walter Reed from the Sistrunk Law Firm. Prior to the Indictment, $2,635.00 was returned to the Walter Reed Campaign Fund – the victim - and thus this amount should not be subject to forfeiture as the expenditure was reversed. (See Exhibit 4).

b. *Flowers for Open House*

As to Count 5, $614.00 for Flowers and Fancy, this amount should be reduced $272.20. While $119.00 of that amount was for "rodeo girl," $272.20 was for flowers for the Open House (see the above arguments with regard to the exclusion of the Open House expenditures which include these flowers which are depicted in a photograph of Walter Reed and Vince Vance).

The total amount of forfeiture should not include $589.00 from Annadelle's, $1885.00 from Dakota's, $400.00 from Flowers and Fancy, and $4,700.00 from First Pentecostal.

**DEFENSE SUMMARY AS TO II ($35,462.00)**

| Count | Amount Sought by Government | Date | Payable to | Payable from | Amount of Defense Reduction | Remaining Amount |
|---|---|---|---|---|---|---|
| 2 | $2,635.00 | | Gerald's Steakhouse | Campaign | $2,635.00[6] | 0 |
| 3 | $589.00 | 6/15/10 | Annadelle's | Campaign | $589.00 | 0 |
| 4 | $1,885.36 | 11/24/11 | Dakota Restaurant | Campaign | $1,885.00 | 0 |
| 5 | $614.29 | Various | Flowers N Fancies | Campaign | $614.29 ($342.00)[7] | 0 |
| 6 | $4,701.79 | 8/29/12 | First Pentecostal | Campaign | $4,701.79 | 0 |
| 8 | $25,000.00 | | Faith Tabernacle (Gym) | Campaign | $25,000.00 | 0 |
| | **$35,462.00** | | | | | 0 |

3. *Restitution , Not Forfeiture, As to the Campaign Funds in Section I and II*

In connection with this Indictment, the government has alleged that the victim defrauded was the Walter Reed Campaign Fund. To the extent the Walter Reed Campaign Fund is the victim, "restitution" to that entity should suffice and forfeiture is improper. In some instances, the campaign fund has been reimbursed these amounts, and therefore even restitution of these amounts should not be ordered. For the various reasons set forth in this memo in opposition, no forfeiture should be ordered but, in the alternative, should be only the amounts for $21,852.00, for the $29,400.00 Liquid Bread, and $7,000.00 for the video for a total of $29,152.00.

---

[6] Returned to Campaign Fund.

[7] If the flowers for the Open House ($272.20) are excluded, the amount would be $342.09. See Exhibit 8.

## III. THE ST. TAMMANY HOSPITAL LEGAL FEES IN THE AMOUNT OF $574,063.25 AS TO WALTER REED ONLY

### 1. *Restitution, Not Forfeiture, as to St. Tammany Hospital Legal Fees as the DA was Under No Legal Obligation to Represent the Hospital*

As set forth in prior motions, Walter Reed as District Attorney had the capacity to set his own salary, could have allowed the D.A.'s Office to receive all the legal fees proceeds from St. Tammany Hospital, and thereafter, increased his own salary by that amount, even to the extent that additional amounts for retirement would be withheld on his raised salary amounts.

The D.A.'s office, which may not exist outside the person of the DA who was well aware where the money was going.

Further, under the maze of statutory regulations with regard to the DA's responsibility for legal representation of such public bodies, (such as St. Tammany Hospital), the District Attorney's Office of St. Tammany/Washington Parish would have no legal obligation to represent the St. Tammany Hospital Board, provided the Board selected its own legal representative. This occurred in 1991, when the Board of Directors elected to have Bill Jones as his General Counsel to the Board. See Government Exhibit 47 (June 17, 1996).

Under La.R.S.:1051(a): "The District Attorney must represent parish hospital service districts and other such parish created districts, in all legal matters, except where the hospital service chooses to employ another attorney." (Emphasis added) In 1993, this issue was the subject matter of the Louisiana Attorney General Opinion, No. 93-300 wherein then Attorney General Richard Ieyoub issued an Opinion.

> "La.R.S.42:261(I) allows hospital districts to employ or retain its own attorney, whose compensation may be fixed and paid by the Board of such district. Should the hospital service district choose to retain another attorney, your office would be relieved of the duty representing said hospital service district. (Emphasis added) See Exhibit 5. Subsequent attorney general opinions reinforce this ruling. See also Attorney General Opinion 04-0262 regarding the Plaquemines Parish Hospital Service District.

With the retention of Bill Jones as General Counsel, the St. Tammany Hospital Board was free to make contractual arrangements for legal services with the District Attorney, in his official capacity and/or Walter Reed individually. Likewise, the District Attorney's Office was free of any obligation to represent the St. Tammany Hospital Board, and was also free to enter into contractual arrangements with the St. Tammany Hospital Board. Thus, the legal fees received were not funds statutorily owed to the D.A.'s Office.

As reflected by the Board minutes, there is no doubt, that Walter Reed, regardless of his official capacity or personal capacities, attended over 150 meetings during the time period in question. What the government focused upon was Walter Reed's utilization of Assistant District Attorneys to attend certain Board meetings. During the five year period, D.A. assistants attended 9 meetings, and given the stipulated monthly $2500.00 payment, maximum restitution for that period would be $22,500.00. The defendant urges the Court to examine restitution, not forfeiture, as a means to provide restitution to the alleged victim - in accordance with the Indictment (i.e. the District Attorney's Office). Additionally, any restitution amount should be reduced by the taxes[8] paid by Walter Reed on these funds.

2. *In connection with the Notice of Fraud forfeiture at the conclusion of the original Indictment, the government initially cited "at least $365,932.00 in currency" as subject to forfeiture.*

In his Motion for Bill of Particulars, Defendant Walter Reed requested that the government enumerate the following Bill of Particular No. 35:

> With respect to the Notice of Forfeiture, it is alleged that Walter Reed and Steven Reed (in Count 1 through Count 7 and Count 14 through Count 18) derived $365,934.00[9] in forfeitable funds.

[8] Contrary to the Indictment stating that in one year Walter Reed did not pay taxes on this amount, the proof at trial reflected that each and every year, Walter Reed paid taxes on the St. Tammany Hospital legal fees. Thus, any restitution amounts should be reduced by 35%, because of Walter Reed's tax bracket of 35%.

[9] With the Superseding Indictment (Count 8) this amount was increased by the $25,000.00 expenditures for the donation to Rev. Cox's church, the new amount would be $390,932.00.

(a) Please state how and in what manner, the government arrived at this figure;

(b) Please identify any amounts related to campaign funds versus amounts related to the Hospital payments;

* * *

Following the filing of Walter Reed's Motion for Bill of Particulars, the Court directed the parties to exchange additional information to get the particulars as to the above-referenced information as requested by the defense. The First Assistant of U.S. Attorney's Office responded to the Court's direction letter of June 11, 2015 which stated:

> "The amount alleged in the Notice of Fraud Forfeiture is comprised of the amount your client (Walter Reed) received from St. Tammany Hospital in violation of federal law in the ten (10) years prior to the date of the Indictment and funds from the Walter Reed Campaign Fund your client misused."

This response was not mere "discovery" discussions among counsel, but a statement in response to motion practice by defense complaining about "lack of notice as to forfeiture." As a matter of Fair Notice of the charge, such letter by a First Assistant should be binding on the office.

Given the annual $30,000.00 retainer amount paid to Walter Reed in connection with the St. Tammany Hospital Board, approximately $285,000.00 of the forfeiture amount would have been derived from the Hospital Board retainer over the ten (10) year period initially referenced by the government. Now, the government seeks 20 years of legal fees totaling $574,063.00.

The Defendant sought a Motion in Limine to limit the forfeiture notice to five (5) years before the date of the Indictment, thereby substantially reducing the amount of forfeiture for the St. Tammany Parish Hospital Board legal fees to $120,000.00.[10] See Doc. No. 53-1, p. 10

[10] Defendant moved to strike the "$365,000.00" figure as that number is an attempt by the government to confuse the jury as to the nature of its tax case.

The Court deferred ruling on the defense's motion.

3. *<u>If Forfeiture, Not Restitution, is to be Imposed, the Forfeiture of St. Tammany Hospital Legal Fees should be limited as argued below:</u>*

a. *Forfeiture Should be Limited to Evidence of checks of those five (5) specified in the Indictment (Counts 15 to 19) (i.e. $12,500.00)*

The evidence of any payments of legal fees by the Hospital to Walter Reed which are not listed in the Indictment should not be considered for forfeiture. The Superseding Indictment in Counts 15 – 19 charges Defendant with $12,500.00 in mail fraud for five (5) specifically delineated checks issued to Walter Reed by the St. Tammany Hospital Board in the amount of $2,500.00 each. As noted above, Walter Reed paid taxes of approximately 35% on these fees and any forfeiture should be reduced by that amount.

b. *Alternatively, Forfeiture Should be Limited by the Statute of Limitations Five Years*

As per the Superseding Indictment, and the above letter from the U.S. Attorney the government sought forfeiture of $390,932.00 from Mr. Reed.[11] This initial amount includes $280,000.00 in legal fees paid by the St. Tammany Parish Hospital Board, which are associated with the mail fraud charges in Counts 15 – 19 of the Superseding Indictment. Notably, the Indictment charges the defendant with mail fraud involving only five (5) specifically delineated checks totaling $12,500.00. Nevertheless, the government initially advised that this $280,000.00 figure used in the above referenced correspondence comprised of all legal fees received by Walter Reed from the St. Tammany Parish Hospital Board for "the ten years prior to the date of the Indictment." However, the statute of limitations applicable to the mail fraud charges brought in Counts 15-19 is five (5) years.[12] The status of limitations for forfeiture should the statute of limitations for the underlying crime – wire fraud – (i.e. five years).

---

[11] See, Superseding Indictment, Notice of Forfeiture, Rec. Doc. No. 64, p. 28.
[12] 18 U.S.C. § 3282.

The original Indictment was filed on April 23, 2015.[13] Therefore, under no circumstances, should the government obtain a forfeiture related to any legal fees received by Walter Reed from the St. Tammany Parish Hospital Board prior to April 23, 2010. Accordingly, Defendant Walter Reed seeks to limit forfeiture of evidence related to the hospital board legal fees which pre-date April 24, 2010 at the trial of this matter.

Walter Reed was not convicted of mail fraud for any act allegedly occurring before April 23, 2010. Therefore, Board payments to Walter Reed pre-dating April 23, 2010 should be excluded from forfeiture.

*c. Further, in the Alternative, Forfeiture Should be Limited to the Meetings Where Assistant District Attorneys Appeared at the Board in Lieu of Walter Reed*

In connection with the defense to the charges relative to St. Tammany Hospital Legal Fees, defendant Walter Reed testified that there was an issue of misunderstanding as to the capacity in which he was to represent the Board. There was an evidence of activity during the 1994 to 1996 time period supporting Reed's position that he was hired in his personal capacity, and not in his official capacity.

In rebuttal to that defense, the prosecution focused on the more recent "end of year" resolutions with regard to legal fees in 2008, 2009, 2010, 2011 and 2012. It was part of the prosecution's rebuttal to the "misunderstanding" in the 1990's that Walter Reed at some point should have realized that there was an issue as to his capacity. The guilty finding on the five counts in the last five years, does not require the conclusion that legal fees for over 20 years be forfeiture.

Additionally, the essence of the prosecution's case was that if Walter Reed was appearing personally, he should not have sent assistant district attorneys who were salaried by the St.

[13] See, Rec. Doc. No. 1, Indictment.

Tammany Parish DA's Office. The chart represents the attendance in the last five years[14] in which there was situations where an Assistant District Attorney was sent to the meetings in lieu of Walter Reed. During those five years, there were nine occasions in which assistant district attorney attended the motions. Thus, applying the statute of limitations to this concept of the prosecution, the forfeiture should be limited to $22,500.00 (the nine appearances) at the $2500.00 amount per month. See Chart, Exhibit 6.

To the extent that the Court does not agree that the statute of limitations applies, a second chart reflects the attendance by assistant DAs during the 10 year tenure. See Chart, Exhibit 7). $2500.00 per month or $57,500.00.

*d. Forfeiture Cannot be Excessive or Unreasonable*

To impose upon Walter Reed the ten or twenty year forfeiture, is unfair, excessive and/or unreasonable. The motion for $574,063.00 forfeiture is excessive, given that at most the attendance by Assistant DA was valued at $55,000.00. See United States vs. Bajakajian, 524 U.S. 321 (1998) discussed above at p. 4.

*e. Quantum Meruit and Payment of Taxes*

The testimony of the Board of Directors indicated that Walter Reed, despite whatever capacity he acted, contributed to the Board of Directors agenda, and even "saved the hospital" with certain actions he took. See testimony of Bill Jones and John Evans.

Defendant urges a quantum meruit approach to the forfeiture which would limit the forfeiture to those time periods in which assistant district attorneys were sent. The hospital got

[14] Above, the defendant raises the issue as to a statute of limitations for five years.

what it paid for. Additionally, it appears that Walter Reed paid taxes on all of these monies[15] at the 35% tax bracket. Any forfeiture amount should be reduced by 35% to reflect the taxes paid.

## Summary of St. Tammany Legal Fees

The defendant Walter Reed submits the forfeiture should be limited to the St. Tammany five counts in the Indictment totaling $12,500.00, but further reduced by the taxes paid. Alternatively, Reed submits forfeiture should be limited by the statute of limitations for five years limiting the total legal fees for a five year period. Further, in the alternative, forfeiture should reflect quantum meruit of the times that Walter Reed actually attended the meetings in a productive manner, and therefore be limited to the board meetings when Assistant District Attorneys were sent, and District Attorney's Office resources were actually utilized.

## CONCLUSION

**Summary Defense Position as to Total Forfeiture/if any Forfeiture is to be Ordered**

| | | |
|---|---|---|
| I. | Count 1 – American Concert/Liquor<br>($29,400.00) | $21,852.00 |
| | Count 1 - Video<br>($14,300.00) | $7,300.00 |
| II. | Counts 2-6 and 8<br>($35,426.32) | $0 |
| III. | Counts 15 to 19 – St. Tammany Legal Fees<br>$12,500 (Reduced by 35% taxes or $4,375.00 =<br>$8,125.00 | $8,125.00 |
| | **TOTAL** | **$37,277.00** |

[15] The Superseding Indictment alleges that in one year Walter Reed failed to pay his income taxes on the legal fees received from the St. Tammany Parish Hospital Board. The truth is that Walter Reed - indisputably - does not owe taxes on any of the money referenced in the hospital board counts.

**WHEREFORE,** the defendant prays for the relief of limitations on the forfeiture as set forth above.

Respectfully submitted,

**HAILEY, MCNAMARA, HALL,**
**LARMANN & PAPALE, LLP**

/s/Richard T. Simmons, Jr.
**RICHARD T. SIMMONS, JR., #13116**
One Galleria Boulevard, Ste. 1400
P.O. Box 8288
Metairie, Louisiana 70011-8288
Telephone: (504) 836-6500
Facsimile: (504) 836-6565
Counsel for *Walter P. Reed*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management and that a copy of the same was either served on all counsel of record by electronic notification or by U.S. Mail, postage pre-paid.

Metairie, Louisiana this 21ST day of December, 2016.

/s/ Richard T. Simmons, Jr.