**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 15-100 |
| WALTER REED AND STEVEN REED | SECTION "L" |

<u>**ORDER AND REASONS**</u>

Pending before the Court is the Government's Motion for Preliminary Order of

Forfeiture. (R. Doc. 361). Defendants Walter and Steven Reed both oppose the motion. (R.

Docs. 364, 365). Upon leave of the Court, the Government timely filed a reply. (R. Doc.

371). Oral Argument was also heard on this Motion on January 5, 2017. (R. Doc. 374).

Having read the parties' briefs, reviewed the applicable law, and heard the parties on oral

argument, the Court now issues this Order & Reasons.

**I.    BACKGROUND**

On April 23, 2015, Defendants Walter Reed ("W. Reed") and Steven Reed ("S. Reed")

were charged in an eighteen-count indictment. Specifically, the indictment alleged that, *inter*

*alia*, W. Reed used campaign donations (i) to recruit potential clients for his private legal

practice, (ii) pay off various expenses incurred by Steven Reed, (iii) pay for private and personal

dinners, (iv) grossly overpay his son for work allegedly performed on behalf of the Campaign,

and (v) host a housewarming party for friends and family unrelated to the Campaign or the

holding of public office. Further, according to the indictment, W. Reed actively misled his

donors by (i) holding fundraisers, claiming they were the purpose of furthering his reelection

efforts; (ii) misrepresenting the actual purpose of expenditures on filings with the Louisiana

Board of Ethics; and (iii) using recipients of legitimate campaign-related expenses to mask some

illegitimate payments to S. Reed. The indictment also alleges that W. Reed engaged in mail fraud

when he deposited payments made by the St. Tammany Parish Hospital in exchange for legal

representation by the District Attorney's office into his own personal bank accounts for private

use. On October 22, 2015, the Government filed a superseding indictment, adding an additional

wire fraud count against W. Reed. The superseding indictment also contained a Notice of Fraud

Forfeiture, which notified both Defendants of the Govenrment's intent to seek forfeiture for

Counts 1-10 and 15-19 in accordance with F. R. Crim. P. 32.2(a).

Count 1 alleges that W. Reed and S. Reed conspired under 18 U.S.C. § 371 to commit the

above-mentioned offenses.

Counts 2 – 6 and Count 8 allege that W. Reed committed wire fraud by willingly and

knowingly transmitting and causing to be transmitted funds in interstate commerce in violation

of 18 U.S.C. §§ 1342, 1343.

Count 7 alleges that W. Reed and S. Reed committed wire fraud by willingly and

knowingly transmitting and causing to be transmitted funds in interstate commerce in violation

of 18 U.S.C. §§ 1342, 1343.

Counts 9 and 10 allege that W. Reed and S. Reed committed money laundering in

violation of 18 U.S.C. § 1956.

Counts 11 – 14 allege that W. Reed willfully made false statements on income tax returns

in violation of 26 U.S.C. § 7206(1).

Counts 15 – 19 allege that W. Reed committed mail fraud by knowingly cause to be

delivered funds by mail in violation of 18 U.S.C. § 1341.

On May 22, 2016, following an 11-day trial, a jury found W. Reed guilty of Count 1,

conspiracy to commit wire fraud and money laundering; Counts 2 through 8, wire fraud; Count 9,

money laundering; Counts 11 through 14, making false statements on income tax returns; and Counts 15 through 19, mail fraud. The jury also found S. Reed guilty of Count 1, conspiracy to commit wire fraud and money laundering; Count 7, wire fraud; and Count 9, money laundering. The jury acquitted both Defendants of Count 10. After trial, all parties consented to leave the forfeiture determination to the Court. (R. Doc. 314 at 159-61).

The Government now seeks forfeiture of certain funds pertaining to Counts 1, 2-6, 8, and 15-19. The Government seeks a preliminary order of forfeiture pursuant to the Notice of Fraud Forfeiture. Specifically, they seek judgments against W. Reed for $609,489.57 and against W. Reed and S. Reed jointly and severally for $78,539.11. $78,539.11 represents the proceeds of Count 1, conspiracy to commit wire fraud and money laundering, of which both Defendants were convicted at trial. (R. Doc. 361-1 at 3). $609,489.57 represents the proceeds of the wire and mail fraud counts, Counts 2-6, 8, and 15-19, of which W. Reed alone was convicted.

## II.     LAW AND ARGUMENT

### A.     Legal Standard

The federal civil forfeiture statute, 18 U.S.C. § 981, applies to criminal cases pursuant to 28 U.S.C. § 2461(c). Section 981(a)(1)(C) requires the forfeiture of property or proceeds that are traceable to a violation of certain enumerated criminal statutes. Directly or by reference to other statutes, that list includes Wire Fraud (18 U.S.C. § 1343) and Mail Fraud (18 U.S.C. § 1341). Section 981(a)(1)(C) also mandates forfeiture for any conspiracy to commit any of those enumerated crimes. A forfeiture motion may seek a money judgment.

A money judgment is appropriate where, as here, the government seeks forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *See United States. v. Nagin*, 2016 WL 98478, at *4 (5th Cir. Jan. 7, 2016) ("[T]he combined operation of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) authorizes personal money judgments as a form of criminal forfeiture."); *see*

*also United States v. Thomas*, 2015 WL 4730718, at *3 (E.D. La. Aug. 10, 2015) (Duval, J.). The amount of the money judgment must be specified in a preliminary order of forfeiture, which is then made part of the defendant's sentence. Fed. R. Crim. P. 32(b)(2)(A).

Criminal forfeiture of property related to certain crimes is mandated by statute and has a punitive purpose, unlike restitution. *See United States v. Taylor*, 582 F.3d 558, 565-66 (5th Cir. 2009) (citing *United States v. Webber*, 536 F.3d 584, 602-03 (7th Cir. 2008)). Multiple overlapping statutes govern forfeiture. The Court must look to each count for which the defendants were convicted and identify the specific statutory basis for forfeiture setting forth the requisite nexus between the crime and any money or property connected to that crime that each defendant will be ordered to forfeit. *See* F. R. Crim. P. 32.2(b)(1)(A).

The Government has the burden to prove that nexus by a preponderance of the evidence. *See United States v. Juluke*, 426 F.3d 323, 326 (5th Cir. 2005); *United States v Hasson* 333 F3d 1264 (11th Cir. 2003); *United States v. Myers*, 21 F. 3d 826 (8th Cir. 1994); *United States v. Voigt*, 89 F.3d 1050 (3rd Cir. 1996); *United States v. Smith*, 966 F.2d 1045, 1050-53 (6th Cir. 1992). The Court may rely on "evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). However, the Court need only make "a reasonable estimate" of the forfeitable sum, given the available information. *United States v. Jiau*, 624 F. App'x 771, 773 (2d Cir. 2015). In a conspiracy case, "co-conspirators subject to criminal forfeiture are held jointly and severally liable for the full amount of the proceeds of the conspiracy." *Nagin*, 2016 WL 98478, at *4; *see also United States v. St. Pierre*, 809 F. Supp. 2d 538, 544; *United States v. Edwards*, 303 F.3d 606, 643 (5th Cir. 2002). As such, the government

4

need only demonstrate that the money or property at issue was connected to or benefitted the conspiracy as a whole and not necessarily each individual defendant.

### B.    Count 1

The Government argues that, because both Defendants were convicted of Count 1 (Conspiracy), they are jointly and severally liable for the entire proceeds of every overt act charged under that Count, namely $78,539.11. *Id*. The Government reaches its $78,539.11 total for Count 1 in the following way. (1) Payments from the campaign to Globop, S. Reed's company, totaling $22,658.76, including $14,300 for a public service video and $8,358.76 for the Open House party. *Id*. at 5. (2) A $29,400 payment from the campaign to Liquid Bread, S. Reed's company, for bar services at the "America Event." (3) Payments funneled from the campaign through third party vendors for the "America Event," including $5,000 to Liquid Bread through the catering company and $5,000 to Globop through an entertainment vendor. (4) Payments from the campaign for products and services for the Open House, including $221.95 to Kentzel's Printing, $1,351.24 to Martin Wine Cellar, $3,207.16 to Coles Rental World, $4,700.00 to Charles Gambino, and $7,000 to Vince Vance & Valiants. *Id*. at 5-6.

W. Reed and S. Reed both oppose the Government's legal conclusions and the total forfeitable amount. (R. Docs. 364, 365).

*Open House*

S. Reed and W. Reed make various arguments supporting their contention that they should not have to forfeit the funds sought in connection with the Open House Event, namely $24,839.11.

First, both Defendants argue the Open House was a political event, making the expenditures proper and not forfeitable. S. Reed further argues that even if the Open House were not a campaign event, he had no way of knowing that and should not be held liable. (R. Doc. 364

at 2). To convict the Defendants of Count 1, the jury only had to find that the Government had proven at least one of the twenty-one overt acts beyond a reasonable doubt. *Id*. Both Defendants argue that they were not clearly found guilty of the "Open House" overt act under Count 1. Further, because it was not charged in a separate count, the Court must now determine whether or not the event was related to the campaign or the holding of public office. (R. Docs. 364 at 2, 365 at 8).

S. Reed argues the evidence is insufficient to prove the Open House was a personal event, pointing to the evidence that W. Reed's breakfast club members, major supporters, and other elected and political figures attended the event. (R. Doc. 364 at 1-3). W. Reed points to trial exhibits showing that judges, councilmen, mayors, political supporters, employees of the district attorney's office, and St. Tammany Parish Hospital board members attended the event. (R. Doc. 365 at 8 (citing R. Docs. 707 at 53-54, 312 at 49-52)). During oral argument, W. Reed introduced photographs showing prominent guests in attendance, a photo of W. Reed making a speech for his guests, and evidence that the event included security guards and an outdoor tent. In its reply, the Government acknowledges the Court must decide, by a preponderance of the evidence, whether the Open House is a campaign event, but argues the event was not campaign-related because it bore no markings of a political event. (R. Doc. 367-1 at 1).

Considering the evidence presented at trial and at the forfeiture hearing, this Court finds that the Government did not prove, by a preponderance of the evidence, that the Open House was a personal event unrelated to the campaign. In fact, it appears to be squarely political – the party was attended by W. Reed's breakfast club members, major supporters, judges, councilmen, mayors, employees of the District Attorney's office, and other elected and political figures. Further, W. Reed hired security guards and rented an outdoor tent for the Open House –

6

expenses not typically incurred for a personal house party. In addition, W. Reed's speech or toast using a microphone is an act expected at a political function, not a personal event.

Campaign or political events are not, as the Government appears to contend, always fundraisers or overtly campaign-oriented. To curry favor and support, political figures sometimes throw parties that do not contain the markings of a 'typical' political or fund-raising event; they may not include party wares with campaign insignia or the 'passing of the hat' to collect campaign contributions but such events are nevertheless clearly for political purposes. It is also worth noting that, given the event's attendees and appearance, S. Reed would have no indication that the event was anything but a political one. Because this Court finds that the Open House is a political event, however, this argument is moot.

Because the jury did not indicate upon which overt act it based its finding of guilty for Count 1, this Court has the responsibility to determine whether the forfeitable sum should include the amount associated with the Open House. Because this Court finds the Government failed to prove the event was not related to the campaign or the holding of public office, neither W. Reed or S. Reed are responsible to forfeit the $24,839.11 sought for the Open House.

_The Drug Abuse Video and Golf Tournament_

Even if the jury found the Defendants guilty of the overt act in Count 1 concerning the $14,300 invoice to Globop for the public service video, S. Reed argues that it is not clear how much of that total was found to be related to the fraud. (R. Doc. 364 at 7). He points out that, at trial, the Government admitted that $2,500 was a fair price for the drug abuse video, $2,500 was for the production of W. Reed's golf tournament, and $2,000 was for S. Reed's work on a subsequently-cancelled safe driving initiative. _Id_. Therefore, S. Reed argues the amount should be reduced to, at most, $7,300. W. Reed argues the same. (R. Doc. 365 at 7-8). S. Reed also

argues, however, that $2,500 does not fairly reflect the amount of work he put in to the drug abuse video – the $9,800 invoice more fairly represented the work he performed. (R. Doc. 364 at 7). Accordingly, S. Reed contends that none of the $14,300 charged on the November 2009 invoice should be forfeitable given the preponderance of the evidence.

The Government disagrees, contending that the purported value of the drug abuse video has no bearing on the forfeiture analysis. (R. Doc. 371 at 3-4). While the Government concedes that direct costs are deductible, the estimated value of a good or service is not a direct cost. *Id.* (citing 18 U.S.C. § 981(a)(2)(B)). The Government also asserts that the evidence does not support the Defendants' contention that a portion of the funds was payable to Globop for the golf tournament ($2,500) and for the safe driving initiative ($2,000). (R. Doc. 371 at 4). The Government notes that the campaign invoice only mentioned the drug abuse video. *Id.* The checks presented at trial included three checks totaling $11,800 with various references to the drug abuse video, and one $2,500 check with "golf tournament production" in the memo line. (Gov. Tr. Ex. 137.)

This Court finds the forfeitable amount is $11,800: $14,300 minus the $2,500 payment to Globop for production of the golf tournament because the Government did not prove, by a preponderance of the evidence, that the latter amount was forfeitable. S. Reed put on evidence at the forfeiture hearing, including testimony by his cousin who attended the tournament, that demonstrated his legitimate role in producing W. Reed's golf tournament. Accordingly, given the preponderance of the evidence, this Court finds the $2,500 he was paid for producing that event is not forfeitable under Count 1.

On the other hand, S. Reed failed to prove that one of the $2,000 checks was related to a safe driving initiative. Neither the campaign finance report nor the checks mention the initiative,

and S. Reed failed to demonstrate that the $2,000 payment was related to any such initiative for which he did work. While at trial the Government gave an estimated value for S. Reed's work on the drug abuse video, an estimated value of goods or services, whether made by the Defendant or Government, is not a direct cost and therefore is not deductible as such. 18 U.S.C. § 981(a)(2)(B) states:

> …the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

S. Reed failed to put on evidence of any expenses or direct costs sustained in the making of this drug abuse video – no receipts, employee salaries, etc. He cannot rely on the Government's estimated value to deduct direct costs for a video he produced and for which he over charged the campaign fund.

Accordingly, the total forfeitable amount for the Drug Abuse Video is $11,800.

*America Event*

S. Reed argues the $29,400 the Government seeks for his provision of liquor and bar services for the America Event is excessive. (R. Doc. 364 at 8). Further, he argues that the Government does not show by a preponderance of the evidence that he did not earn that money. *Id*. at 9. In his opposition, S. Reed lists the amount of money he believes he spent on the liquor for the event, "around $7,548.00," and avers that amount should be deducted from the forfeiture amount as a direct cost pursuant to § 981(a)(2)(B).[1] *Id*. at 10. However, apart from the deductions for direct costs, S. Reed concedes that his conviction as to the related Count 7

---

[1] W. Reed echoes this argument. (R. Doc. 365 at 9).

suggests the jury also found him guilty of the same acts charged in Count 1, totaling $29,400. *Id.* at 10. W. Reed adopts these arguments. (R. Doc. 365 at 9). The Government disagrees that S. Reed's estimated expenditures should be deductible as a direct cost, arguing that he does not meet his burden to prove he incurred those costs. (R. Doc. 371 at 5).

Under 18 U.S.C. § 981(a)(2)(B) the Defendant bears the burden to prove direct costs. In this case, S. Reed has failed to prove how much direct cost he incurred for this event. While it may be true that he spent a significant amount of money on liquor for bar services, his estimations are insufficient to meet his burden. Had he provided receipts or invoices detailing the amount spent, this Court may have been able to deduct that cost from the forfeitable amount. Because he provides nothing more than an estimate, however, that amount is not deductible as a direct cost and the entire amount sought, $29,400, is therefore forfeitable.

<u>Lakehouse Funds</u>

S. Reed argues that forfeiture of the $5,000 payment from The Lakehouse is excessive, but acknowledges that the Defendants' conviction as to Count 7 suggests they found the Lakehouse payment to be an overt act under Count 1. (R. Doc. 364 at 8, 10).

W. Reed argues that, because he reimbursed his campaign for the $5,000 Lake House charge, it should not be subject to forfeiture. (R. Doc. 365 at 10). The Government, however, contends his reimbursement is irrelevant to forfeiture. (R. Doc. 371 at 6). While W. Reed makes a cognizable argument for reimbursement and, at first blush, fairness seems to be in his corner, forfeiture has a punitive rather than rehabilitative goal, making his repayment of the funds irrelevant for the purpose of forfeiture. *Id.* (citing *United States v. Taylor*, 582 F.3d 558, 566 (5th Cir. 2009)).

This Court, with some pause, finds the entire $5,000 forfeitable, as conceded by S. Reed. W. Reed fails to legally support his contention that a subsequent reimbursement of the funds renders them not forfeitable. As explained in *Taylor*, forfeiture has a punitive purpose unrelated to the repayment of the victims of a fraudulent scheme. *Taylor*, 582 F.3d at 566. In fact, both forfeiture and restitution may be ordered for the same illegal activity, disgorging the Defendant of twice the amount gained from the criminal scheme. *Id*. Accordingly, whether or not W. Reed repaid the victims of his illegal behavior is of no consequence. The $5,000 is forfeitable despite that alleged repayment.

*White Oak Funds*

Both Defendants also argue that the $5,000 the Government seeks for the payment from White Oak Productions to Globop is excessive. (R. Docs. 364 at 8, 365 at 9). Although the Government seeks the funds pursuant to an overt act charged in Count 1, Defendants aver that the Government fails to meet its burden under the preponderance of the evidence given that the jury acquitted both Defendants of Count 10, which charged the same conduct. The Defendants argue that, given the acquittal, the jury presumably would not then find the Defendants liable for the exact same conduct under Count 1. Further, both Defendants maintain their innocence as to that overt act, explaining that W. Reed had hired Ed White to produce the America Event but, at the last minute, Mr. White was unable to attend. Mr. White testified that S. Reed produced the event in his stead because he was familiar with the event and with production, and Mr. White saw it as an opportunity to strengthen his relationship with W. Reed. (R. Docs. 364 at 9; 306 at 244; 313 at 57-58; 396 at 221-38). Defendants argue the $5,000 accurately reflected S. Reed's work and value at the America Event. Accordingly, the Defendants argue they should not be liable to forfeit the $5,000 White Oak payment.

The Government disagrees with the Defendants' analysis, arguing that the $5,000 charged through White Oak Productions was an inflated amount not commensurate with the work S. Reed performed. (R. Doc. 371 at 5). They point to another section of Mr. White's testimony wherein he admits that $5,000 is a large payment for one night of production work. *Id.*; (R. Doc. 396 at 220-223). Further, the Government points out that, while the Defendants were acquitted of money laundering in Count 10, Count 1 charges conspiracy to commit fraud, which is a different offense with a different theory of liability. (R. Doc. 371 at 5).

This Court finds the Government did not prove by a preponderance of the evidence that the $5,000 payment to White Oak was related to the conspiracy charged in Count 1. It is reasonable to assume that when the jury acquitted both Defendants of money laundering through White Oak in Count 10, they did not then find them guilty of that same conduct under Count 1. While it is true that the charge in Count 1, conspiracy to commit fraud, is different than that charged in Count 10, money laundering, the Government did not provide sufficient proof that the Defendants were guilty of conspiracy to commit fraud by nature of their White Oak payment. Because the jury's acquittal indicates they did not find S. Reed and W. Reed had done anything improper in making the payment through White Oak for the America Event, a conceded campaign event, this Court finds the $5,000 payment not forfeitable.

*Joint and Several Liability*

Though the Government seeks to hold W. Reed and S. Reed jointly and severally liable for the entire amount forfeitable under Count 1, S. Reed argues he should not be held liable for the proceeds he did not acquire. (R. Doc. 364 at 1); *United States v. Cano-Flores*, 796 F.3d 83 (D.C. Cir. 2015). While he admits joint and several liability is recognized in this circuit, S. Reed asks the Court to recommend the Fifth Circuit reconsider its precedent on joint and several

liability in the context of forfeiture. In *U.S. v. Cano-Flores*, the D.C. Circuit found joint and several liability inapplicable under 21 U.S.C. § 853. 796 F.3d 83, 91 (2015). §853 permits forfeiture "only of amounts *obtained* by the defendant on whom the forfeiture is imposed." The Court found joint and several liability to be at odds with the language of statute, specifically the requirement that the amounts be *obtained*. *Cano-Flores* 796 F.3d. Relevant to the instant case, § 981(a)(2)(B) provides for forfeiture only of "the amount of money *acquired* through the illegal transactions . . . ." (emphasis added). S. Reed avers that allowing joint and several liability in this case is similarly at odds with requiring the statutory requirement that the amounts be 'acquired.' (R. Doc. 364 at 6).

While this Court recognizes that circuits have reached different conclusions when addressing joint and several liability, the Fifth Circuit indisputably recognizes joint and several liability for money judgments imposed pursuant to a forfeiture order. *United States v. Nagin*, 810 F.3d 348, 353 (5th Cir. 2016). Although the D.C. Circuit in *Cano-Flores* may provide persuasive authority and the circuit may wish to reconsider its position in the future, the law is presently clear in this circuit that co-conspirators are jointly and severally liable for the entire forfeiture amount and this Court is bound by present jurisprudence. Further, the statute at issue in *Cano-Flores*, while similar, is not the statute at issue in the instant case. Accordingly, this Court finds W. Reed and S. Reed jointly and severally liable for the forfeitable amount in Count 1.

For similar reasons, this Court denies the request made at oral argument to delay S. Reed's forfeiture determination until after the Supreme Court rules on *United States v. Honeycutt*. 816 F.3d 362 (6th Cir. 2016). *Honeycutt* is inapposite to the present case given that it, like *Cano-Flores*, contemplates different criminal behavior, namely a drug conspiracy, and a different forfeiture statute, namely 21 U.S.C. § 853(a)(1). Because it is not altogether clear that

the Supreme Court's holding in that case will be binding on the instant case, this Court declines

to postpone its ruling.

### C.      Counts 2-6, and 8, and 15-19

The Government also seeks the forfeiture of $609,489.57 from W. Reed, representing the

proceeds of the wire and mail fraud counts: Counts 2-6, 8, and 15-19. Though W. Reed was also

convicted of Count 7, the amount therein was sought under Count 1 and is accordingly not re-

alleged. *Id*. at 7.

W. Reed argues that the Government confuses forfeiture with restitution. (R. Doc. 365 at

6). He argues the campaign fund was legitimate but that the expenses were improper and should

be reimbursed. Accordingly, the amounts paid to innocent third party vendors should be

reimbursed to the fund as the victim of a crime, not forfeited, which is proper when there are

proceeds of a crime. *Id*. As explained above, forfeiture is mandatory and W. Reed's arguments to

the contrary are unavailing.

### 1.      Counts 2-6 and 8

The total amount the Government seeks from Counts 2-6 and 8 is $35,426.32, including

(1) $2,635 for an annual steak dinner for ministers and their wives; (2) a $25,000 referral fee;

(3) $4,701.79 for a prime rib dinner for a group of pastors and their wives; and (4) non-

campaign-related gifts for friends and family, including $614.49 spent at Flowers N Fancies,

$589.68 spent at Annadelle's Plantation, and $1,885.36 spent at Dakota Restaurant. *Id*. at 8.

Because he reimbursed the campaign for the amount paid to Gerald's Steakhouse for the

annual steak dinner, W. Reed argues that amount is not forfeitable. *Id*. at 12. In its reply, the

Government avers that any reimbursed funds are irrelevant. (R. Doc. 367-1 at 6). The

Government argues that repayment is only relevant to restitution, not to forfeiture, whose

purpose is punitive. *Id*. As explained above, a Defendant's reimbursement of the victim of his or

her crime does not release him from forfeiture payments. Accordingly, W. Reed is responsible for the $2,635 payment to Gerald's Steakhouse.

W. Reed next avers that the majority of expenditures in these counts went to third parties not involved in the conspiracy: the recipient of the $25,000 check to build a new church gym (which the Government calls the referral fee) and the recipients of flowers, gifts, and food. (R. Doc. 365 at 5, 12). Accordingly, W. Reed contends this amount should not be forfeitable. Though W. Reed avers none of the charges in this category are appropriate for forfeiture, he acknowledges that the Court may find the amount spent for flowers unrelated to the Open House to be forfeitable. (R. Doc. 365 at 13). If the Court so finds, the remaining amount would be $342.00.[2]

The Government avers that the steak dinner, referral fee, and prime rib dinner were all efforts by W. Reed to recruit clients for his private legal practice and are therefore forfeitable. (R. Doc. 361-1 at 8). The other expenses, they argue, were personal expenditures such as flowers, gifts, gift cards, and holiday meals. *Id*. Further, the Government contends that W. Reed misunderstands or misstates the deductibility of "proceeds" and innocent third-party vendors. *Id*. at 2. The Government argues that the payments out of the fund to third party vendors are not collateral costs, but the essence of the fraud. *Id*. Further, Defendants benefitted from the payments even though he didn't directly possess the money because he did not have to pay for the items or services from his personal account. *Id*. at 2-3. The Government avers that W. Reed's

---

[2] In total, W. Reed argues that the Court should not order any forfeiture Counts 1, 2-6, and 8, but instead should order restitution for $29,152, totaling the amount to Liquid Bread and the remaining charges for the video made by S. Reed. As was discussed above and more fully elucidated in *Taylor*, both restitution and forfeiture can be ordered for the same criminal activity. Under 18 U.S.C. §981, forfeiture is mandatory in this case. *See*, *e.g.*, *Taylor*, 582 F.3d at 565; *see also United States v. Harms*, 442 F.3d 367, 380 (5th Cir. 2006).

control of the campaign funds is sufficient to subject the funds to forfeiture. S*ee United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012); *St. Pierre*, 809 F. Supp. 2d at 545.

In addition to the $2,635 related to Gerald's Steakhouse, this Court finds forfeitable the $25,000 referral fee, the $4,701.79 for a prime rib dinner, $589.68 spent at Annadelle's Plantation, $1,885.36 spent at Dakota Restaurant, and $342.00 spent at Flowers N Fancies, which excludes the flowers purchased for the Open House event. Because this Court found the Open House to be a campaign event, the money spent on flowers for that event is not forfeitable. As this Court explained in *St. Pierre*, funds that were "directly or indirectly acquired or *otherwise benefitted*" defendants are forfeitable. 809 F. Supp. 2d at 545. W. Reed had control of and access to the campaign fund and, in writing these checks, he acquired funds meant to benefit his campaign and used them to pay for his personal expenses. Further, by using the campaign funds to pay personal expenses and to recruit clients for his law firm, W. Reed benefitted financially in that he did not have to use his own money to pay for those expenses. The money taken from the campaign did not merely go to innocent third party vendors – it profited W. Reed as well.

The Court finds the forfeitable amount under Counts 2-6 and 8 to be **$35,153.83**.

### 2.     Counts 15-19

The total amount the Government seeks for Counts 15-19 (Mail Fraud) is $574,063.25, which is the proceeds of twenty years of payments from St. Tammany Parish Hospital. (R. Doc. 361-1 at 9). The Government provided the following chart:

| Year | Months | Amount | Yearly Total | Trial Exhibit |
|------|--------|--------|--------------|---------------|
|      |        |        |              |               |
| 1994 | 8      | $2,247.75 | $17,982.00 | 47.03, 50, 76 |
| 1995 | 12     | $2,247.75 | $26,973.00 |               |
| 1996 | 12     | $2,247.75 | $26,973.00 |               |
| 1997 | 12     | $2,247.75 | $26,973.00 |               |

16

| Year | Months | Payment | Total | Ref |
|---|---|---|---|---|
| 1998 | 12 | $2,247.75 | $26,973.00 | |
| 1999 | 12 | $2,247.75 | $26,973.00 | |
| 2000 | 12 | $2,247.75 | $26,973.00 | |
| 2001 | 3 | $2,247.75 | $6,743.25 | |
| 2001 | 9 | $2,500.00 | $22,500.00 | 47.18, 53, 56 |
| 2002 | 12 | $2,500.00 | $30,000.00 | |
| 2003 | 12 | $2,500.00 | $30,000.00 | |
| 2004 | 12 | $2,500.00 | $30,000.00 | |
| 2005 | 12 | $2,500.00 | $30,000.00 | |
| 2006 | 12 | $2,500.00 | $30,000.00 | |
| 2007 | 12 | $2,500.00 | $30,000.00 | |
| 2008 | 12 | $2,500.00 | $30,000.00 | |
| 2009 | 12 | $2,500.00 | $30,000.00 | |
| 2010 | 12 | $2,500.00 | $30,000.00 | |
| 2011 | 12 | $2,500.00 | $30,000.00 | |
| 2012 | 12 | $2,500.00 | $30,000.00 | |
| 2013 | 12 | $2,500.00 | $30,000.00 | |
| 2014 | 2 | $2,500.00 | $5,000.00 | 68.17 |
| | | | | |
| | | | $574,063.25 | |

This total exceeds the $12,500 specified in the five counts of conviction, which were each for discreet $2,500 payments. *Id*. at 10. However, the Government argues that because W. Reed was convicted of a continuing scheme, he is liable for the entire proceeds of that scheme, not just the proceeds of the counts of conviction. *Id*. *See*, *e.g.*, *United States v. Venturella*, 585 F.3d 1013, 1015, 1015-17 (7th Cir. 2009) (defendant's plea to one count of mail fraud involving $477 rendered her liable for a money judgment for the entire scheme: $114,000). The Government argues the forfeitable amount should include all proceeds, even those not obtained through use of the mails or that were realized outside of the statute of limitations for the substantive offense of conviction. *See United States v. Budden*, 2012 WL 1315366, *4 (D. S.C. April 17, 2012) (requiring defendant convicted of mail fraud to forfeit proceeds of the entire scheme, even if defendant used the mails only with respect to one of the many victims); *United States v. Sagillito*, 899 F. Supp. 2d 850, 861-62 (E.D. Mo. 2012) (requiring defendant to forfeit proceeds

17

of the entire fraud scheme, even where some of the proceeds were realized outside of the five-year statute of limitations). W. Reed opposes the Government's motion, arguing that the Government should not be permitted to retrieve twenty years of payments, but should be limited. (R. Doc. 365 at 4).

*Five Specific Charges*

First, W. Reed argues that forfeiture should be limited to the five discrete violations alleged in the indictment. (R. Doc. 365 at 3-4). W. Reed cites to *United States v. Capoccia*, which limited the defendant's forfeiture amount, finding that the Government sought funds derived from uncharged conduct and did not bear the requisite nexus to the charge of conviction. 503 F.3d 103. As stated above, the Government avers the entire amount is forfeitable because W. Reed was charged with and convicted of a continuing scheme. (R. Doc. 361-1 at 10-11). *Capoccia* is inapposite to the present case. The Government does not seek funds for uncharged conduct, but seeks funds W. Reed obtained in the course of his fraudulent scheme. Conversely, as in *Venturella*, "forfeiture is not limited to the amount of the particular mailing but extends to the entire scheme." 585 F.3d at 1015-17. W. Reed's argument is without merit.

*Excessive Fines*

Secondly, W. Reed argues that the Government's efforts to seek forfeiture of this entire amount violates the Eighth Amendment's prohibition against excessive fines. *Id*. at 4; *United States v. Bajakajian*, 524 U.S. 321 (1998). He argues the amount charged is grossly disproportionate to the gravity of the offense considering that the legal services were not *per se* improper and that the harm was not proportionate to the amount sought. (R. Doc. 365 at 4). Further, the amount is excessive because the statute of limitations for mail fraud is five years and the forfeiture should be similarly limited. *Id*. at 5, 17-18. The Government avers this claim is

18

meritless, as they only seek the amount W. Reed illegally received and kept as income over the 20 years he represented the Hospital as the District Attorney, and no more. (R. Doc. 367-1 at 10). Accordingly, the Government argues the constitution is not implicated. Further, the Government avers that because it charged a continuing scheme, the statute of limitations is not relevant for forfeiture analysis. (R. Docs. 361-2 at 11, 371 at 9 (citing *United States v. Sagillito*, 899 F. Supp. 2d 850, 861-62 (E.D. Mo. 2012))).

As was discussed above, forfeiture for an entire scheme is proper. Accordingly, this Court finds that W. Reed has failed to prove that requiring him to forfeit the exact amount he obtained through his fraudulent scheme is either disproportionate or excessive. *See*, *e.g.*, 18 U.S.C. § 983(g)(3) ("The claimant shall have the burden of establishing that the forfeiture is grossly disproportional by a preponderance of the evidence...."); *United States v. Bajakajian*, 524 U.S. 321, 322 (1998) ("a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.");[3] *United States v. Loe*, 248 F.3d 449, 464 (5th Cir. 2001) ("The court ordered Babo Loe to forfeit only so much of the property as was purchased with illegally obtained funds--money that she had no right to in the first place. We therefore find no disproportionality, let alone the "gross disproportionality" required by *United States v. Bajakajian*."). This facts of this case are not analogous to *Bajakajian*; the amount sought in the present case is the total amount W. Reed actually received during the fraudulent scheme and bears a relationship to the gravity of the offense committed. W. Reed's argument fails.

*Meetings Attended by Assistant District Attorneys*

---

[3] It is also worth noting that the Supreme Court in *Bajakajian* found it salient that the defendant in that case had committed no fraud on the Government, nor had their crime resulted in any loss to the public. Not so in this case. W. Reed's crime resulted in a loss to the Office of the District Attorney to the tune of $30,000 a year.

Third, W. Reed argues the forfeiture amount should be limited to the times in which an assistant district attorney attended the Hospital board meetings in his stead. (R. Doc. 365 at 18). This limitation, however, merely represents a failed trial theory that was presented to and rejected by the jury. W. Reed was found guilty of keeping for himself the payments intended for the District Attorney's office. Even when he attended the board meetings himself, he was not representing the Hospital in his personal capacity and therefore should not have kept the funds. Accordingly, this argument has no merit.

*10-year limitation*

W. Reed alternatively urges the Court to enforce the amount alleged in a letter from former First Assistant United States Attorney Richard Westling, which was sent in response to W. Reed filing a Motion Bill of Particulars. *Id.* at 16. In that letter, the Government explained that the amount alleged in the Notice of Fraud Forfeiture is comprised of the money W. Reed received from the Hospital in the ten years leading up to the indictment. (R. Doc. 361-2 at 2). W. Reed argues the Government should be bound by that time frame because the letter was not mere discovery but was a response to motion practice and allegations that he lacked notice of forfeiture. (R. Doc. 365 at 16).[4] The Government disagrees with W. Reed's interpretation of the letter, arguing that the letter expressly stated the forfeiture amount was preliminary and would likely change. (R. Doc. 361-1 at 13). At the time of the letter (14 months before trial) the Government argues it did not have sufficient information to give a final forfeiture amount. *Id.* Further, it argues W. Reed cannot allege surprise or lack of notice given the letter was received long before this proceeding and because he was given sufficient time to prepare his defense in

---

[4] W. Reed also draws the Court's attention to his previously-filed Motion in Limine to limit the forfeiture to five years from the date of indictment, to which the Court deferred ruling. The Court has already addressed this argument and will not do so again.

this forfeiture proceeding. *Id*. at 13-14; *see United States v. Diaz*, 190 F.3d 1247, 1257-58 (11th Cir. 1999).

Rule 32.2(a) requires the indictment to notify the defendant of the government's plan to seek forfeiture as a remedy. However, the indictment "need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Fed. R. Crim. P. 32.2(a). The purpose of the Notice of Forfeiture, which the Government included in the Indictment, is merely to provide notice that the government plans to seek forfeiture from the defendant. *See United States v. Loe*, 248 F.3d 449, 464 (5th Cir. 2001); *United States v. Simpson*, No. 3:09-CR-249-D(06), 2011 U.S. Dist. LEXIS 76881, at *60-61 (N.D. Tex. July 15, 2011).

If the indictment lacks sufficient detail to inform the defendant of the charges against him, the court may order a bill of particulars. Fed. R. Crim. P. 7(f); s*ee also United States v. Perez*, 489 F.2d 93, 95 (5th Cir. 1974); *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004). The bill of particulars, however, is not a discovery tool, it is not meant to provide the defendant with "evidentiary detail," and it is not intended to freeze the Government's evidence. *See, e.g.*, *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978); *Downing v. U. S.*, 348 F.2d 594 (5th Cir. 1965); *United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016); *United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). Though W. Reed filed for a bill of particulars in this case, the Court denied the Motion as premature. (R. Doc. 30 at 5). However, the Government's letter response to W. Reed's motion is an official correspondence upon which the Defendant can reasonably rely, and may stand in the place of a bill of particulars.

In response to W. Reed's request to explain how the Government reached the amount in the Notice of Fraud Forfeiture, the Government explained that the amount was "comprised of the

amount your client received from St. Tammany Parish Hospital in violation of federal law in the ten years prior to the date of the Indictment. . . ." (R. Doc. 361-2 at 2). However, the letter goes on to notify W. Reed that "the government expressly states that the forfeiture amount set forth in the indictment is a preliminary number and that it can, and likely will, change prior to the trial of this case. . . ." *Id*. In the Notice of Fraud Forfeiture in the Indictment, the Government notifies the Defendants of their intent to seek forfeiture of "any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of [applicable codes], including but not limited to: *at least* $390,932.00. . . ." (R. Doc. 64 at 28) (emphasis added). Further, "[t]he Government specifically provides notice of its intent to seek a personal money judgment against the defendant in the amount of the fraudulently-obtained proceeds." *Id*. at 29.

As stated above, the purpose of the notice of forfeiture is to put the defendant on notice that the Government plans to seek forfeiture in this case. Fed. R. Crim. P. 32.2(a); 28 U.S.C. § 2461(c); *United States v. Loe*, 248 F.3d 449, 464 (5th Cir. 2001) ("An indictment is sufficiently specific if it 'puts the defendant on notice that the government seeks forfeiture and identifies the assets with sufficient specificity to permit the defendant to marshal evidence in their defense.'") (internal citations omitted). In this case, the Government notified the Defendants of its intent to seek forfeiture and, though the Government provided a specific forfeiture amount, they are not required to do so under Rule 32.2(a). This Court finds the Government adequately notified Defendants of its intent to seek forfeiture. Further, because the Government informed both Defendants of its intent to seek *all* funds associated with the fraud including *at least* $390,932.00, this Court is bound by present case law to find that the Defendants were fairly on notice that the amount was subject to change as the Government more fully developed its

evidence. Accordingly, this Court finds W. Reed's argument that the forfeiture amount should be limited to the 10-year time frame is unavailing.

*Direct Costs*

W. Reed again avers the costs of goods and services should be deducted from the total forfeitable amount. (R. Doc. 365 at 5). Further, because he provided the Hospital with legal services, and because the District Attorney is under no obligation to represent the Hospital, W. Reed argues the proper venue for reimbursement is restitution, not forfeiture. *Id*. at 6, 14-15; La. R.S. 1051(a). This Court has already discussed the appropriateness and necessity of forfeiture in this case. *Taylor* 582 F.3d at 565. Accordingly, as discussed above, any argument that the value of W. Reed's services should be deducted from his forfeiture amount is fruitless. *See also United States v. Poulin*, 461 F. App'x 272, 288 (4th Cir. 2012).  It is also worth noting that the charges in this section demonstrate that the 'victim' is, at least in part, the Office of the District Attorney, from whom W. Reed fraudulently kept the Hospital's payments. Accordingly, W. Reed's argument that the Hospital received a benefit from his services is inapposite. Finally, W. Reed's assertion that his forfeitable about should be reduced by the amount of income taxes paid also fails. Under 18 U.S.C. §981(a)(2)(B), direct costs do not include income tax paid.

This Court finds W. Reed responsible for the entire forfeitable amount alleged by the Government: $574,063.25.

**D.    Counts 9-14**

The Government does not seek forfeiture for Counts 11-14 because forfeiture is unavailable for tax offenses. *Id*. at 4 n.1. Nor does the Government seek forfeiture for Counts 9-10 because the money laundering alleged in those counts were also alleged as overt acts in Count 1 (Conspiracy). *Id*.

III.     **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that W. Reed and S. Reed are jointly and severally liable for **$46,200.00** forfeitable under Count 1.

**IT IS FURTHER ORDERED** that W. Reed is liable for **$609,217.08**, which includes $35,153.83 forfeitable under Counts 2-6 and 8, and $574,063.25 forfeitable under Counts 15-19.


New Orleans, Louisiana, this 3rd day of March, 2017.

_____
UNITED STATES DISTRICT JUDGE