Richard T. Simmons, Jr.
Hailey McNamara Hall Larmann & Papale
1 galleria Blvd., Ste. 1400
Metairie, Louisiana 70001
Tel: 504-836-6500
Email: rts@hmhlp.com
https://compassionaterelease.com
Louisiana Bar #12089

*Attorney for Walter P. Reed*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **\*** | |
| **versus** | **\*** | |
| **WALTER P. REED** | **\*** | |
| | **\*** | **CRIMINAL DOCKET NO. 15-100** |
| | | **SECTION L     MAG. 2** |
| | **\*** | |

**\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \***

## WALTER REED'S MOTION FOR COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT

### I.  INTRODUCTION

Walter Reed was convicted in 2016 of federal offenses involving (a) violations of state campaign law; (b) related IRS violations ($33,000.00); and (c) obtaining personal compensation from state hospital board which was to be directed to the District Attorney's Office. This Court sentenced Reed to four (4) years of incarceration, $15,000.00 fine, along with restitution and forfeitures.

At the completion of his appellate process and with a reporting date in early 2020, it was discovered that Walter Reed had prostate cancer, causing a delay in his reporting date while the prostate was totally removed. Reed reported to Morgantown Correctional Facility on May 23, 2019 with Stage 3 cancer, and he was in need of radiation of treatment once his condition stabilized. Stabilization never occurred and radiation was delayed until his recent hospitalization on March 17th, 2020 when Dr. James Littles determined the incontinence condition was permanent. As of January of this year, Reed has been in need of a "wheelchair pass" at the facility. On March 17, 2020 he reported chest pain and was rushed to MON Hospital where two stents were placed in his blocked arteries. During his hospital stay at MON (March 17 to March 20) he was diagnosed with extreme diabetes (Type II with levels in the high 300s). Radiation treatment was finally started during this hospital visit. March 2020 Medical Records of MON Medical Facility. See Exhibit 1.

Reed has completed two of three stages of the RDAT - Residential Drug Abuse (Alcohol) Treatment Program - as part of reduction in his sentence. It is anticipated that he will complete the RDAT program on May 23, 2020 (completion of one year confinement). He has a Bureau of Prisons (BOP) present release date of October 2021. See Exhibit 2.

## II.  JURISDICTION OF THIS COURT

On December 21, 2018, the President signed the First Step Act ("FSA") into law, allowing judicial review of sentences to determine whether "extraordinary and compelling reasons" exist to permit a sentence reduction that is "sufficient, but not greater than necessary," See 18 U.S.C. §3553(a). First Step Act of 2018, Pub. L 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). Only the BOP could move for a sentence reduction under § 3582(c)(1)(A) before Congress enacted the FSA. *See* P.L. 98-473 (H.J. Res. 48), P.L. 98-473, 98 Stat. 1837 (Oct. 12,

1984). Even if a federal prisoner qualified under the Sentencing Commission's definition of "extraordinary and compelling reasons", absent a BOP motion, the sentencing court had no authority to reduce the sentence.

Under the FSA, this Court has afforded jurisdiction to make the § 3553(a) determination of whether Reed's time in prison is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C.§3582, states that a district court can modify a final term of imprisonment after consideration of the § 3553(a) factors if "extraordinary and compelling reasons  warrant such a reduction." 18 U.S.C. §3582(c)(1)(A)(i).

Additionally, under the recent CARES Act, the Attorney General is authorized to consider home incarceration based upon finding of emergency conditions and Attorney General Barr has made such findings in two (2) recent memos. (March 26, 2020, Exhibit 3 and April 3, 2020, Exhibit 4).

### III. EXHAUSTION OF REMEDIES

Pursuant to the FSA, this Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i) if it concludes that: (1) Reed has "fully exhausted all administrative rights to appeal a failure[1] of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days  from the receipt of the request by the Warden of the defendant's facility, whichever is earlier"; (emphasis added); (2) "extraordinary and compelling reasons" warrant a reduction in sentence; (3) consideration of "the factors set forth in section 3553(a)"; and (4) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.§ 3582(c)(1)(A)(i).

On March 26, 2020 Walter Reed submitted a Request for Compassionate Release to the Warden F. Bowers of Morgantown Federal Correctional Institute, requesting the BOP move

---

[1] Since the filing was on March 26, 2020, the deadline for a response was April 25, 2020.

under 18 U.S.C. §3582(c)(1)(A) for a reduction in sentence.[2] (Letter to Warden attached as Exhibit 5.) On April 9, 2020 Reed was advised that his application was denied (documentation will be filed upon receipt).

Pursuant to the authority provided by the FSA, Reed has exhausted his remedies and now brings his request for a sentence reduction directly[3] to this Court.

## IV.  THE STATUTORY BASIS - EXTRAORDINARY AND COMPELLING WARRANT A REDUCTION IN SENTENCE

Walter Reed is eligible for reduction of this confinement based on the "First Step Act", signed into law by President Trump in November 2018. Public Law 115-3911 (2018). Under 18 U.S.C. 4205(g), a sentencing court, on motion of the Bureau of Prisons, may make an inmate with a minimum term sentence immediately eligible for parole by reducing the minimum term of the sentence to time served. Under 18U.S.C. 3582(c)(1)(A), a sentencing court, on motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment of an inmate sentenced under the Comprehensive Crime Control Act of 1984.

Presently, Walter Reed has completed the two stages of RDAT special programs which have the effect of reducing his four (4) year sentence to under just three (3) years. The Bureau of Prisons presently has his eligibility for release in eighteen (18) months (10/11/21). (See Exhibit 6).

Included in the First Step Act of 2018 was a reauthorization of the "Second Chance Act" (Second Chance Act of 2007 (PL110199)) which reauthorized certain BOP Pilot Programs to provide early release for elderly patients who offenders to be eligible must:

- Be at least 65 years old

---

[2] On March 2020, Reed requested compassionate relief, undersigned was advised verbally of the denial on April 6th, 2020.
[3] While 30 days has not lapsed, the U.S. Attorney General's recent directive provides a basis for the Court to address conditions of release for the public protection (addressed below).

- Never been convicted of a violent, sex related espionage or terrorism offense
- Sentenced to less than life
- Served 75% of his sentence (elder inmate with debilitating condition – 50%)
- Not received a determination by BOP to have a history of violence
- Not escaped or attempted to escape
- Received a determination that if released to home detention would result in a substantial reduction in cost to the federal government
- Received a determination that he is not a substantial risk of engaging in criminal conduct in the future

The Defendant Reed qualifies as to each of these categories, since the reduction of the sentence under RDAT Program reduces the initial sentence to under three years.[4]

With the First Step Act, Congress has changed the process for compassionate release and returned to the Federal Judiciary the authority to reduce sentences for "extraordinary and compelling reasons" under the sentencing guidelines U.S.S.G. §1b1.13:

"Extraordinary and compelling reasons exist under any of the circumstances set forth below:

a. "Medical Condition of the Defendant

    i. Defendant is suffering from a terminal illness (Not applicable)

$$*\quad*\quad*$$

    or

    ii. Defendant is

        I. Suffering from a serious physical or medical condition
        II. Suffering from serious functional impairment
        III. Experiencing deteriorating, physical or mental health because of the aging process

That substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional institute

---

[4] On May 23, 2020 Reed will have finished one year in confinement, completed the RDAT program and also be eligible for 54 days of good time credit and home incarceration.

and from which he or she is not expected to recover… (Emphasis added)

    b. <u>Other reasons</u> – as determined by the Director of the Bureau of other Prisons, there exists in a defendant's case an <u>extraordinary and compelling reasons</u> other than or <u>in combination with</u> the reasons described in subsection A (medical condition) (Emphasis added)

Under this statute, the Bureau of Prisons is not limited to terminal illnesses situation in determining whether compassionate release is in order. Certainly Reed is: (1) suffering from <u>serious physical and medical conditions</u>; (2) is <u>suffering from serious functional impairment</u>; and (3) is <u>experiencing deteriorating physical health because of the aging process</u>. While Reed qualifies for the above, there are "other reasons" for the Director of the Bureau of Prisons to grant relief based on the various factors listed in the Application for Compassionate Release (i.e., age, lack of recidivism concerns, service of nearly one year of his time, model prisoner, payment of his fine and criminal restitution, need for ongoing medical care such as radiation treatment for cancer, lumbar disc ailments and need for wheelchair mobility at the prison) and his diabetes. ("Other Reasons" – i.e. corona virus epidemic – is addressed below, Section X).

Ordinarily, a prisoner must complete at least 2/3 of the sentence, but as an elderly inmate with debilitating medical conditions (50% of the reduced sentence after the RDAT reduction), Reed can be ordered to home incarceration for the remainder of his sentence.

## V. EXTRAORDINARY AND COMPELLING CIRCUMSTANCES DID NOT EXIST AT THE TIME OF SENTENCE

Walter Reed was sentenced in April 2016. Near the completion of the appellate process, it was discovered that he had a lump on the prostate and later biopsies dictated the total removal of his prostate with the prognosis of radiation treatment to insure the cancer did not spread past Stage 3. See letter of Dr. Troy Scroggins (Exhibit 6). As addressed below, Reed's medical condition has deteriorated in the last several weeks and is such that he would be eligible for a

"compassionate release". Thus, all the circumstances of Reed's medical condition were <u>not</u> <u>known to this Court at the time of his sentencing</u> in 2016.

## VI. REDUCING REED'S SENTENCE WOULD BE CONSISTENT WITH THE § 1B.13 POLICY STATEMENT

Section <u>3582(c)(1)(A)</u> requires all reductions in sentence be "consistent with applicable policy statements issued by the Sentencing Commission." U.S.S.G.§ 3582(c)(1)(A). In and the consideration of §3553(a) factors, the Court must determine that Reed is eligible under 18 U.S.C. § 3142(g). U.S.S.G. §1B1.13(2).

## VII. THE § 3142(G) FACTORS TO BE CONSIDERED

A review of the § 3142(g) factors demonstrates that Reed presents no danger to any person or the community, has no history of violence and is a first time offender.

### A. <u>Nature and Circumstances of Offense charged, 18 U.S.C. §3142(g)(1)</u>

Nature and circumstances of the offense, including whether the offense is a crime of violence or involves narcotic drugs, §3553(a)(1).

#### 1. *The Offenses for which he was convicted relate to the holding of public office which will never occur again.*

Walter Reed's conviction relates to three types of offenses. The first set was a violation of state campaign law which can never occur again because he will not be holding public office, and not be in a position to utilize campaign fund expenditures.

The second set of IRS violations for which he was convicted related primarily to the utilization of campaign funds. Given the fact that his income will never reach the level of income in the past, it is unlikely there will be repeat offense of IRS violations.[5]

---

[5] During the four tax years charged, Reed did pay over $500,000.00 to the IRS and the $33,000.00 is about 6% of his total payment.

The third set of counts related to monies he received because of his District Attorney position by receiving payments from the hospital board. In view of the fact that he will not be in public office, again, there is no chance of any such violations.

Thus, all three of the set of counts for which he has been convicted relate to the holding of public office and without prospects of such future public office holding, there is no chance of recidivism for these type of violations.

2. *All of the Offenses for which he Was Convicted Were Non-Violent Offenses and Did Not Involve Drugs*

B. <u>History and Characteristics, 18 U.S.C. §3142(g)(3)</u>

1. *Walter Reed has an extensive history and experience in law enforcement since the late 60s, which reflects a respect for law enforcement generally*

a. <u>*Undercover Drug Operations*</u>

Walter Reed served in the New Orleans Police Department as an undercover agent in narcotics for nearly two years (1968-1970) stemming of drug traffic and accumulated narcotic evidence against 140 defendants and received Merit for his NOPD service.  He was awarded  by Clarence Giarruso, Chief of the NOPD, the Medal of Merit, with the citation reading as follows:

> *The personal sacrifice of this agent* . . .  *is a high price to ask any man to give for his community.*  (See Exhibit 7) (Emphasis added)

During his tenure as a narcotics agent, he spent several days in Orleans Parish Prison to avoid detection and to protect fellow officers in their undercover role.

b. <u>*The Mark Essex Sniper/Shooting Incident (1973)*</u>

When the City of New Orleans in 1973 was a victim of a sniper, Mark Essex, who paralyzed the City by shooting 15 people, (killing 7 people), particularly targeted police officers, as he retreated to the top floor of the Howard Johnson Hotel in downtown New Orleans. (See

Exhibit 8) Walter Reed was one of the police officers on the front line who had to recapture the hotel with a room by room search.  See letter from NOPD Officer, Billy Schultz, Exhibit 9.

        **c.** ***Walter Reed Served as an Investigator of the Louisiana Attorney General (1973 to 1976); Assistant U.S. Attorney Under John Volz 1978-1979; Walter Reed Served as District Attorney of St. Tammany (1985-2015)***

      **2.** ***Payment of Fines and Partial Restitution***

Walter Reed has paid his $15,000.00 fine, along with the Special Assessment of $1,800.00. See Exhibit 10. Pursuant to an agreement with the U.S. Attorney's Office Walter Reed's condo in the New Orleans area was sold in December 2019. The equity of $115,184.89 was placed into the Registry of the Court for payment of Restitution after completion of the sale. (Letters between Assistant United States Attorney Peter Mansfield, and Reed's counsel, Exhibit 11) Thus, Walter has commenced payment of the restitution with a substantial payment.

      **3.** ***Reed is a First Time Offender, With a Lengthy History of Residency Within the Community***

      **4.** ***Model Prisoner***

Walter Reed has been a model prisoner. He accepted the consequences of his action and reported to prison with no animosity towards anyone. He has been cooperating with prison staff and was on two occasions awarded recognition as "most inspirational" by his fellow inmates. (Exhibit 12).

In addition to completing his RDAT, he has been awarded certificate of completions for: nutrition, diabetic wellness and the "silent killers" as reflected by the certificate signed by the Wellness Coordinator C. McClendon. (Exhibit 13)

9

    **C.** **Reed Release Would Pose No Danger to any person or the community, 18 U.S.C. §3142(g)(4)**

As set forth above, the nature of Walter Reed's Indictment and, conviction along with his extraordinary 40 years in law enforcement demonstrate the unlikelihood of any further criminal action. Thus, the public is not at risk of repeat offenses.

**VIII.** **FULL CONSIDERATION OF THE § 3553(A) FACTORS**

    **A.** **With Full Consideration of the § 3553(a) Factors, a Sentence to Home Incarceration Constitutes A Sentence Sufficient but Not Greater Than Necessary to Accomplish the Goals of Sentencing for Reed**

A review of the §3553(a) factors, to the extent that they apply, weigh in favor of a reduction in sentence – compassionate release would not undermine the goals of Reed's original sentence. Under §3553(a)(1) the Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." This factor is addressed above under §3142(g)(1) and (3).

These were non-violent offenses and Reed is a first-time offender.

    **B.** **Compassionate Release Would Not Diminish the Seriousness of the Offense, Respect for the Law, and Goal of Providing Just Punishment, §3553(a)(2)(A) Nor Would it Diminish the Deterrent Effect Reed's Sentence Has on the Criminal Conduct of Others, §3553(a)(2)(B)**

Reed has been out of public office for over 5 years.[6] Reed cannot impose any more harm and the "compassionate thing to do in this case is to release Reed early, consistent with the intent of Congress when it passed the First Step Act."

    **C.** **The Public Will Not Be Harmed by Further Crimes, §3553(a)(2)(C)**

See the arguments above as to 18 U.S.C. §3142(G)(4) (Release would not pose a danger to the public).

---

[6] Reed finished his term on office on January 15, 2015.

**D. A Sentence Reduction Would Afford Reed Medical Care in the Most Effective Manner, §3553(a)(2)(D)**

18 U.S.C. §3553(a)(2)(D) addresses the need to provide a defendant with "medical care in the most effective matter". Reed's health has and will continue to deteriorate, and he will require more physical and medical assistance in the future.

While the BOP might claim that it is capable of providing adequate medical care and treatment for Reed, that claim seems unlikely given the complexities associated with Reed's many conditions causing an increased need for care, and the significant issues with the BOP's provision of health care services, given the present corona virus epidemic. Moreover, even if the BOP can provide competent care, Reed's conditions are "extraordinary" under § 3553(a)(2)(D) and there is the need "to provide Reed with … medical care … in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).[7]

Granting Reed's compassionate release would allow him to receive care in his local community, which would be more efficient, timely, and less burdensome[8] on the BOP. Compassionate release and treatment outside of a correctional environment is not only the most effective manner of treatment, it is also be the most efficient and least expensive.

**IX. REED'S MEDICAL CONDITION**

**A. Prostate Cancer**

As noted above, Walter Reed has prostate cancer, and his entire prostate was removed before he reported to prison. He was being treated at the facility with certain hormone treatment to stabilize his condition before the commencement of radiation activity. His situation is being

---

[7] In the Eighth Circuit case of *United States v. Wadena*, 470 F.3d 735 (8th Cir. 2006), the court recognized that while the defendant could obtain dialysis treatments and medical care in prison, "[1818 U.S.C.] § 3553(a)(2)(D) explicitly states that the effective provision of necessary medical care is an appropriate factor for the district court's consideration in sentencing." *Id.* at 739. Moreover, "[t]he district court had the discretion to decide that it would be more efficient and effective for [the prisoner] to receive treatment from his current healthcare provider." *Id.*

[8] A substantial reduction in costs to the federal government is a listed consideration.

treated at Mon Medical Facility nearby the prison. As noted by his initial treating physician, it is stage 3 cancer, but with the proper treatment he can recover from the cancer.

Walter's urologist, who actually diagnosed his cancer of the prostate is Dr Jerry Rosenburg, whose office is only about 5 miles from his home. He has been Walter's treating physician for over 20 years, and is probably more familiar with his overall medical condition than anyone. Dr. Rosenberg not only diagnosed Walter's prostate cancer, but made the referral to Tulane Medical Center, that actually removed it, and also to Ochsner Hospital to Dr Troy Scroggins who was his radiation oncologist immediately after surgery. Dr Rosenburg has been fully involved with each step of his surgery and recovery.

After the removal of his prostate, Mr. Reed was treated by radiologist oncologist, Dr. Troy G. Scroggins[9] of Ochsner Health System in New Orleans. He was referred to Dr. Scroggins for post-operative radio-therapy and hormone deprivation therapy. Dr. Scroggins made a finding of an aggressive prostate cancer which breached the capsule of the prostate and opined as likely that he will have persistent cancer with a high likelihood of re-occurrence, and Reed is in need of radio-therapy for approximately 7 to 8 weeks. Dr. Scroggins suggested this therapy should begin in August 2019 once Mr. Reed regained his "urinary continence". In the interim, Dr. Scroggins recommended the use of hormonal deprivation therapy to prevent further progression of the disease.  Exhibit 6.

After reporting to Morgantown Prison, Walter was sent to Mon Medical Facility, where he is presently being treated by Dr. Littles, who informed Walter that he and Dr. Scroggins were in medical school together, and that they had already discussed Walter's proposed treatment. The transition in treatment from Dr. Littles to Dr. Scroggins would be an easy and smooth transition.

---

[9] Dr. Scroggins is a nationally recognized radiation oncologist.

As part of the proposed release plan, Reed would receive any additional radiation treatment during the requested period of home incarceration from Dr. Scroggins.

Attached to this Motion is a number of the Bureau of Prisons Health Services consultation reports and related medical records.  Exhibit 14.

### B.  Recent Auto Accident and Lumbar Injuries

In addition to discovery of his prostate cancer in early 2019, Mr. Reed was also involved in an interstate car crash after he was driven off the road into a ditch near his home. As a result of this accident on February 24, 2019, Mr. Reed sustained severe injuries to his lumbar spine, muscle spasms and lumbar facet joint pain. He was treated for these injuries immediately after the accident by local doctor, T. Joel Berry who opined:

> "I anticipate these injuries are permanent and will cause Mr. Reed both substantial disability and pain for many years in the future."

> \*        \*        \*

> "Mr. Reed should not be required to do any heavy lifting or hard physical labor and that he was in need of a bed with a soft mattress and pad to avoid further damage to his lumbar and spine." See Exhibit 15. (Emphasis added)

The medical records related to his lumbar injury are attached as Exhibit 16.

Reed's medical condition in this regard has further deteriorated in the last several weeks where he has been assigned "a wheelchair pass" to negotiate some of the inclined walkways necessary for various functions within the prison.

Additionally, Mr. Reed's course of treatment at the Mon Health Medical Center in Morgantown, West Virginia is reflected by the 2019 MON medical records. See records of bone scan, 11/5/19. See Exhibit 17.

C. **Emergency Surgery (March 20, 2020) to Implant Two Stents After Heart Attack Symptoms**

A few weeks prior to this emergency surgery on March 20, Walter Reed suffered from angina pains which on Tuesday, March 17 became unusually tense along with a sharp pain in his right jaw. He recognized this as possible signs of a heart attack and he was taken by ambulance to MON Medical Facility in Morgantown. Upon his entry into the hospital there were several diagnostic tests including an effort at a normal stress test. He was too weak to perform the test, and instead was given a chemical stress test which is similar to the standard treadmill test. As a result of the testing he was scheduled for two stents on March 20 to remedy two significant artery blockages to the heart. After the procedure on March 20, he was returned to the prison. See Exhibit 1.

During the emergency room visit to MON Hospital he once again was treated by Dr. Littles who concluded that the incontinence condition is permanent and that the radiation treatment will prevent any further remission of the problem. Thus, this is a permanent situation which will require implantation of certain medical devices to be remedied. Since the radiation treatment could not commence after his commencement of his prison sentence, hormone treatments have been utilized since August 13, 2019. The result is the experience of hot flashes on a daily basis. During his stay at the hospital Dr. Littles commenced radiation treatment which will have the side effects of exhaustion, fatigue, diarrhea and urinary problems.

The total removal of prostate, continuous incontinence, the need for radiation treatment, severe diabetes, back injury and nearly blocked arteries compel a conclusion that Walter Reed is in need of multiple treatments for his deteriorating conditions which have taken a toll on his immune system making him at high risk for the corona virus disease. He is in need of more

medical care, dietary supplements and individual care which should be given in home incarceration scenario where he can continue his various treatments near his residence.

### D. Discovery of the Diagnosis of Extreme Diabetes

During his treatment at MON from March 17 to March 20, Reed was diagnosed with extreme diabetes (high 300 level) He was administered multiple shots of insulin but even this process was never able to break the blood sugar level lower than 250. He is in need of special dietary regime to assist in the reduction of the diabetes condition. See diabetes lab results, Exhibit 1A.

### E. Reed's Present Debilitating Condition (See A to D)

A combination of the above factors has caused a deterioration in Mr. Reed's medical condition. The discharge summary from his hospitalization on March 20, 2020 provides a list of his present diagnosis:

1.    Hypertension

2.    CAD (Coronary Artery Disease)

3.    Hyperlipidemia

4.    Diabetes mellitus;

5.    GERD

6.    Metastatic Prostate Cancer; and

7.    History of atrial fibrillation  (Exhibit 1B)

### X. *OTHER REASONS* "IN COMBINATION WITH" THE CORONA VIRUS EPIDEMIC

As noted above, the extraordinary and compelling reasons include the "medical condition of the defendant" (i) suffering from terminal illness… (not applicable) or (ii)(a) suffering serious

physical conditions; (b)serious functional impairment and (c) experiencing deteriorating physical and mental health because of the <u>aging</u> process.

The statute also contains a "catch all" provision entitled "Other Reasons" which can be considered <u>in combination with</u> the "medical conditions" of the defendant" (under Section A):

> **b. Other Reasons**
> As determined by the Director of the Bureau of Prisons there exist in a defendant's case an extraordinary and compelling reason other than or <u>in combination with</u> the reasons described in Section A . . . U.S. Sentencing Commission, U.S.S.G. 1B1.13 (Emphasis added)

In Walter Reed's case this "Other Reason" relates to the corona virus epidemic which is spreading throughout the country and raising concerns which resulted in nationwide "stay at home orders" and guidance as to "social distancing" – which is a very difficult directive to follow in a prison environment.

It is universally accepted that the population most susceptible to the disease with its deadly consequences are those who are (1) elderly, and (2) have preexisting conditions. Walter Reed will be 74 years old in June, he suffers from high diabetes levels, has recently had cardiac issues leading to surgery for stents and is receiving radiation for his prostate cancer. Recent data about the epidemic verifies that the three pre-existing conditions related to the high casualty rate for this disease are a <u>diabetic condition</u>, <u>cardiac problems</u> and obesity. Reed is in a high risk of corona virus infection.

In the above described "extraordinary and compelling reasons", the language is "<u>in combination with</u>". Given the severe medical conditions for which Reed is suffering in <u>combination with corona virus epidemic</u> supports his release for an extraordinarily and compelling reason".

XI.   **THE RECENT CARES ACT AUTHORIZES THE ATTORNEY GENERAL TO CONSIDER HOME RELEASE UPON A FINDING OF EMERGENCY CONDITIONS WHICH MAY MATERIALLY AFFECT THE FUNCTIONING OF THE BUREAU OF PRISONS.**

The Congress enacted the CARES Act or Relief from the Corona virus epidemic which included provisions of the Attorney General to make certain emergency findings. The Attorney General Barr has activated those provisions of law through his recent memorandums of March 26 and April 3, 2020.

A.   **March 26, 2020 Memo by Attorney General Barr (Exhibit 3)**

In his March 26 2020 memo, entitled "Prioritizing of Home Confinement As an Appropriate Response to the COVID-19 Pandemic", the Attorney General referenced the fact that there were "some <u>at risk inmates</u> who were <u>non-violent</u> and pose a <u>minimum likelihood of recidivism</u>, who might be safer serving their sentences in home confinement rather than a BOP facility". Therefore, Attorney General Barr directed "**transfer of inmates to home confinement where appropriate to decrease the risk to their health**". The Attorney General directed prioritizing of statutory authority to grant home incarceration noting that "some eligible inmates, <u>home incarceration</u> might be more effective in protecting their health." (Emphasis added)

The Attorney General memo suggested that "the <u>totality of the circumstances</u> of each inmate" be considered and set forth in a non-exclusive list of discretionary factors. Each of these factors is applicable to Walter Reed as follows:

1. *Age and Vulnerability to the Virus in Accordance with CDC Guidelines*

Reed will be 74 in June and the various illnesses referenced above are within the CDC guideline, particularly his diabetes.

2. *The Security Level of the Facility*

Minimum security.

17

3. *Inmates Conduct in Prison*

Reed has been a model prisoner as referenced above.

4. *Inmates Score Under PATTERN*

On May 23, 2020, Reed will have served one year of confinement and have completed the RDAT Program to further reduce his sentence.

5. *A Re-Entry Plan Presents a Lower Risk of Contracting Disease That Would be Faced at the BOP Facility*

Reed's plan for release includes home incarceration to his personal residence in Covington, Louisiana. While Orleans Parish (the City of New Orleans) and neighboring parishes along the Mississippi River are "hotspots," this is not the same situation for St Tammany Parish where Reed will reside. Thus, there is no increased likelihood of contracting the disease from his relocation, in comparison to the dangers of contracting the disease in a prison environment.

6. *Assessment of Danger Posed to Community*

Reed's release does not pose a danger to the community.

**B. April 3, 2020 Memo by Attorney General Barr (Exhibit 4)**

In his April 3, 2020 memo, the Attorney General Barr made a specific finding "that emergency conditions are materially affecting the function of the Bureau of Prisons" and that he was authorized under the CARES Act to expand the number of inmates considered for home release. The release of April 3rd focuses on three institutions (e.g. Oakdale – in North Louisiana) and any other facility "similarly situated".

Independent of the focusing on these institutions, the Attorney General directed the BOP Directors as follows:

> For all inmates whom you deem suitable candidates for home incarceration, you are directed to <u>immediately</u>

process them for transfer and then <u>immediately transfer</u>
them following a 14 day quarantine at the appropriate BOP
facility <u>or in appropriate cases</u>, subject to your case by case
discretion, <u>in the residence for which the inmate is being
transferred.</u> (Emphasis added)

The Attorney General reiterated the guideline factors from his March 26 memo.

The Order effectively "authorize BOP to transfer inmates to home incarceration even if

electronical monitoring is not available, so long as the BOP determines in every instance that

doing so is appropriate and consistent with their obligation to protect the public safety"…

In both Attorney General memos, the focus is on protecting the public primarily from

recidivism by inmates prone to such actions and minimizing the public's risk from inmate

release. Memos from Attorney Barr emphasize that "time is of the essence."

Below Reed suggests an Order that will (a) expedite his private travel with family

members to home incarceration (thereby prohibiting commercial travel); (b) call for minimum 14

day quarantine at home; (c) direct medical care under specific doctors.

For the reasons set forth above, Walter Reed is a model candidate for the Attorney

General's directive for release to home incarceration.

## XII.   RECENT FEDERAL CASES ADDRESS THE PANDEMIC PARTICULARLY HIGH RISK INMATES WITH DIABETES

<u>U.S. v. Rodriguez</u>, No. 2:03-cr0002710AB-1 (E.D.Pa. Apr 1, 2020), 2020 WL
1627331, the court found extraordinary and compelling reasons existed for the
release of an inmate suffering from Type 2 diabetes mellitus with diabetic
neuropathy, essential hypertension, obesity, and "abnormal liver enzymes" .

<u>U.S. v. Resnick</u>, 14 CR 810 (CM), (S.D.N.Y. Apr. 2, 2020),  2020 WL 1651508,
the Court granted compassionate release to a 65 year old  Type II diabetic with
high blood pressure and cholesterol.

In <u>U.S. v. Rodgriguez</u>, No. 2:03-cr0002710AB-1 (E.D.Pa. Apr 1, 2020), 2020 WL
1627331, the court found extraordinary and compelling reasons existed for the release
of an inmate suffering from Type 2 diabetes mellitus with diabetic neuropathy,
essential hypertension, obesity, and "abnormal liver enzymes" .

In *U.S. v. Resnick*, 14 CR 810 (CM), (S.D.N.Y. Apr. 2, 2020),  2020 WL 1651508, the court granted compassionate release to a 65 year old  Type II diabetic with high blood pressure and cholesterol.

In <u>U.S. v. Colvin</u>, No. 3:19rc179 (D.Conn. Apr. 2, 2020), 2020 WL 16139343, the court granted compassionate release to a defendant suffering from Type II Diabetes due the CoronaVirus,

In <u>U.S. v. Foster</u>, No 1:14-cr-324-02 (M.D.Pa. Apr. 3, 2020), the court granted defendants' Supplemental Motion for Compassionate Release and Reduction of Sentence, to a defendant suffering from a chronic lung condition finding that the Defendant's high likelihood of contracting Covid-19 from which we would not be expected to recover constituted a compelling or extraordinary reason.

In <u>U.S. v. Perez</u>, No. 1:17-CR-0513 (S.D.N.Y. Apr. 1, 2020), the court granted a compassionate reduction of sentence under 18 U.S.C. 3582(c)(1)(A), finding that extraordinary and compelling reasons warranting release included the existence of "a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13."

In <u>U.S. v. Campagna</u>, No. 16 CR 78-01(LGS) (S.D.N.Y. Mar. 27, 2020), 2020 WL 1489829, the court granted a motion to modify a defendant with a compromised immune system to replace his outstanding term of imprisonment with an equal period of home incarceration as a result of the Covid-19 public health crisis.

## XIII.  PLAN FOR RELEASE

Walter Reed will live in a three bedroom home (his prior residence which he owns in part) in an established neighborhood in Covington, La. He will receive daily care from his girlfriend who has been by his side for the last several years and even accompanied Walter to surrender at Morgantown Federal Correctional Institution in May 2019. She has made a number of trips to West Virginia to visit him and has been in continued contact with Walter during his imprisonment. She is a licensed massage therapist and a professional holistic medicine specialist, also versed in vitamins and diet. She is highly motivated to help Walter in his recovery, and is familiar with his health care providers, medications and medical situation.

Walter's home for the proposed home incarceration is located only two blocks from St. Tammany Parish Hospital, which is a large and established medical facility. It has a full regimen of diagnostic facilities, including a cancer center in affiliation with Mary Bird Perkins Cancer Center, and Ochsner Hospital of New Orleans.  There is also a fulltime fully staffed emergency room as well.

Walter will be 74 in June and has Medicare, together with a medical supplement with a Humana policy (number can be provided). In addition, he has the personal funds available to pay all copayments, and other medical expenses.

And finally, Walter has a very large family, and a large circle of friends, who are all willing and anxious to help him by picking up prescriptions, driving him to doctor appointments, and any other assistance that he needs in dealing with his health issues.

**XIV.   PLAN OF RETURN COVINGTON, LA FOR HOME INCARCERATION**

Of legitimate concern to BOP officials and the Court is the release of prisoners to the community when they may be at high risk for the virus. In view of this consideration, Reed proposes that if release is recommended that he would be transported by family members via private transportation directly to his house in Covington for home incarceration. There he would be in quarantine for a minimum of 14 days (perhaps longer if any symptoms develop)[10] and be under the care of his local physicians, Dr. Jerry Rosenberg and Dr. Troy Scroggins, his radiologist. See Proposed Order, Exhibit 17.

**<u>PROPOSED ORDER:</u>**

Defendant, Walter Reed has sought Compassionate Release under the First Step Act and has been granted such release under separate order of the Court:

---

[10] There is presently no indication he has the disease.

In consideration of the corona virus concerns, IT IS FURTHER ORDERED that the defendant Walter Reed be released from Morgantown Federal Corrections Institute and transported privately by family members from the institution to his home in Covington, Louisiana, where he:

(a) will quarantine for a minimum of 14 days;

(b) be under the care of the physician Dr. Jerry Rosenberg, along with Dr. Troy Scroggins, radiologist

(c) upon arrival and commencement of home incarceration, he will contact both the Bureau of Prisons in Morgantown and the Probation Office in the Eastern District of Louisiana to advise of his arrival and be subject to further directives for the probation officer to carry out his home incarceration.

Defendant shall not <u>use commercial transportation</u> and be brought to his home in the <u>most expeditious manner</u> without contact to the general public during transit.

Reed's medical condition, along with the high risk for infection from the Corona Virus, dictates that he should be released to home incarceration.

## <u>CONCLUSION</u>

Walter Reed presents extraordinary and compelling reasons in support of "compassionate release" as embodied by the First Step Act. A reduction in Reed's sentence is consistent with the sentencing guidelines, and Reed poses no danger to society. Granting compassionate release would not diminish the goals of sentencing under §3553(a). Reed satisfies the requirements for compassionate release, and it is unnecessarily retributive and punitive to continue to incarcerate given his medical condition and the present environment.

According to the criteria setforth in two recent Attorney General memos, Reed is a prime candidate for release. Recent federal cases further support his release particularly because of his high risk factors (particularly diabetes).

While in the best of times, Walter Reed would be eligible under the extraordinary and compelling reasons relating to his medical reasons, these are the worst of times as the country is suffering from the corona virus epidemic.

Accordingly, for all of the above reasons, the Court should grant this motion and reduce Reed's sentence to home incarceration and subject to further orders of Court to protect the public as he commences home incarceration.

Respectfully submitted,

**HAILEY, MCNAMARA, HALL,**
**LARMANN  & PAPALE, LLP**

/s/Richard T. Simmons, Jr.
**RICHARD T. SIMMONS, JR., #13116**
One Galleria Boulevard, Ste. 1400
P.O. Box 8288
Metairie, Louisiana 70011-8288
Telephone: (504) 836-6500
Facsimile: (504) 836-6565
Counsel for *Walter P. Reed*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management and that a copy of the same was either served on all counsel of record by electronic notification or by U.S. Mail, postage pre-paid.

Metairie, Louisiana this 9th day of April, 2020.

/s/ Richard T. Simmons, Jr.