**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA** | * | **CRIMINAL** |
| **VERSUS** | * | **NO. 15-100** |
| **WALTER P. REED** | * | **SECTION "L"** |

**<u>ORDER & REASONS</u>**

Before the Court is Defendant Walter Reed's Motion for Compassionate Release Under the First Step Act. R. Doc. 535. The Government opposes the motion. R. Doc. 548. Defendant filed replies. R. Docs. 550, 561. Having considered the parties' briefs and the applicable law, the Court now rules as follows.

**I.      BACKGROUND**

On October 22, 2015, Walter Reed was charged by a Superseding Indictment for conspiracy to commit wire fraud and to launder money, wire fraud, money laundering, making and subscribing false income tax returns, and mail fraud. R. Doc. 64. After an 11-day trial, Reed was found guilty on Counts 1 to 9 and 11 to 19 of the superseding indictment. R. Docs. 240, 247. The Court set Reed's sentencing for September 15, 2016, R. Doc. 240, which was continued several times until it was finally held on April 5, 2017, R. Doc. 444.

In preparation for sentencing, the U.S. Probation Office provided the Court with a Pre-Sentence Investigation Report ("PSR") and Sentencing Recommendation, which calculated Reed's applicable Sentencing Guideline range to be 108 to 134 months in prison. *See* R. Docs. 407, 408. Reed's PSR also provided details about his health and recorded Reed's numerous objections to his PSR. R. Doc. 407. At the April 5, 2017 sentencing, the Court considered each of Reed's objections to the PSR, but ultimately agreed with the PSR's calculation of the applicable guideline range. R. Doc. 472 at 76. Nevertheless, the Court found that a substantial downward

variance was appropriate pursuant to 18 U.S.C. § 3553 and sentenced Reed to 48 months in prison. R. Doc. 472 at 83–88. Moreover, the Court granted Reed's request to remain on bond pending his extensive appeal process. R. Doc. 472; *see* R. Doc. 399.

Reed's appeal was ultimately unsuccessful and after hearing argument on the Government's motion to reconsider its prior ruling allowing Reed to remain on bond pending his appeal, the Court granted the Government's motion and ordered Reed to begin serving his sentence on April 1, 2019. *See* R. Docs. 513, 514. However, Reed requested two extensions of his reporting date because of treatment he was receiving for prostate cancer, R. Docs. 516, 519, which the Court granted and allowed Reed to delay his reporting date to May 17, 2019, R. Doc. 521. Reed is currently serving his sentence at Morgantown (West Virginia) Federal Correctional Institute ("Morgantown FCI") with a release date of October 11, 2021. R. Doc. 535-2. While incarcerated, on March 17, 2020, Reed reported experiencing chest pain and went to the hospital to have two stents placed. R. Doc. 535-15 at 3, 7. Subsequently, he petitioned the warden at Morgantown FCI for compassionate release on March 26, 2020, R. Doc. 535-14 at 2, which was denied on April 9, 2020, R. Doc. 543-2.

## II.     PENDING MOTION

On April 9, 2020, Reed filed the instant motion for compassionate release under the First Step Act of 2018. R. Doc. 535. Reed seeks to have the Court grant him compassionate release or sentence him to home confinement for the remainder of his sentence because his medical condition, as well as the COVID-19 pandemic, warrant such a reduction in his term of imprisonment. R. Doc. 535 at 15–16. Reed takes the position that compassionate release is justified because his medical condition, in addition to the COVID-19 pandemic, constitute an "extraordinary and compelling reason" under 18 U.S.C. § 3582(c)(1)(A)(i). Further, Reed

contends that the § 3553(a) factors weigh in favor of compassionate release because: the offenses for which he was convicted relate to holding public office, which will never occur again; the offenses for which he was convicted were non-violent offenses that did not involve drugs; he has an extensive history and experience in law enforcement, which reflects a respect for the system; he has paid his fine and has commenced restitution payments; he is a first-time offender and model prisoner; a sentence reduction would allow him to receive medical care in the most effective manner; and his release would not pose a danger to any person or to society as a whole. R. Doc. 535 at 7–11. Moreover, Reed argues that he has served one year in prison and according to the BOP, he is eligible for release in 18 months, so he has served at least 50 percent of his sentence based on his release date. R. Doc. 535 at 4–5. Reed thus seeks to be released or at least be ordered to home incarceration for the remainder of his sentence. R. Doc. 535 at 6.

The Government opposes the motion for several reasons, arguing that: (1) Reed failed to exhaust administrative remedies; (2) the BOP is in the best position to determine where and how Reed should serve his sentence; (3) Reed has failed to demonstrate that his medical conditions meet the criteria required for compassionate release; and (4) the BOP is best situated to assess Reed's health and safety in the context of the COVID-19 pandemic. R. Doc. 548 at 1.

In reply, Reed contends that he has exhausted his administrative remedies based on an email received from the BOP at Morgantown FCI, where he is currently being housed. R. Doc. 550 at 3. Moreover, Reed highlights the fact that he has developed numerous other medical issues that warrant his release or transition to home confinement and his existing medical conditions have worsened as well. *See* R. Doc. 561 at 2–9.

III.   **LAW AND ANALYSIS**

In relevant part, 18 U.S.C. § 3582(c)(1)(A) provides that a court may not modify a term of

imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors from § 3553(a), finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commissions' relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13.

Although historically sentence reductions could be ordered only upon a motion by the Director of the Bureau of Prisons, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act, and consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the Bureau of Prisons upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. 1B1.13. This discrepancy has been recognized by many courts. *See United States v. Crinel*, No. CR 15-61, 2020 WL 955054, at *2 (E.D. La. Feb. 27, 2020) (citing *United States v. Brown*, 411 F. Supp. 3d 446, 451–52 (S.D. Iowa 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United*

*States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019)).

Many courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. *See, e.g., Beck*, 2019 WL 2716505, at *5. Accordingly, other district courts have found that they have discretion to determine what constitutes an "extraordinary and compelling reason[]" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive. *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *Cantu*, 2019 WL 248923, at *5 ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief."). Accordingly, the Court will consider whether Reed has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to any other person of the community, all in light of the Section 3553(a) factors.

### A. Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582.

Although the First Step Act expanded the criteria for compassionate released and provided defendants with the opportunity to challenge the BOP's denial of compassionate release in federal district court, it did not alter the requirement that inmates must first exhaust their administrative

remedies before seeking judicial relief. *See United States v. Bolino*, No. 06-CR-806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) (collecting cases). BOP Program Statement No. 5050.50 explains that a prisoner seeking a compassionate release must first file a petition with the prison warden requesting that the BOP move for compassionate release on the prisoner's behalf. *See Federal Bureau of Prisons, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), Program Statement No. 5050.50, 3 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf (citing 28 C.F.R. § 571.61). If the warden denies the prisoner's request, then the prisoner must appeal the denial through the BOP's Administrative Remedy Procedure.[1] *See id.* at 15 (citing 28 C.F.R. § 571.63); *see also Bolino*, 2020 WL 32461, at *1. Courts in this district have generally recognized that this exhaustion requirement is mandatory. *See, e.g., United States v. James*, CM/ECF No. 13-85, R. Doc. 95 at 12 (E.D. La. Apr. 16, 2020) (denying compassionate release for failure to exhaust administrative remedies and observing that"[t]his Court agrees with the overwhelming majority of courts on the exhaustion issue. Section 3582(c)(1)(A)'s exhaustion requirement is set out in mandatory terms and does not enumerate any exceptions.") (citing cases); *United States v. Celestine*, CM/ECF No. 18-83, R. Doc. 133 at 3 (E.D. La. Apr. 13, 2020) ("While this Court is sympathetic to Defendant's request, it has no authority to consider it until Defendant exhausts the requirements of the [First Step Act].").

---

1 The Court notes that the BOP states that "[u]nder 18 USC 3582 (c) (1), an inmate may file a request for a reduction in sentence with the sentencing court after receiving a BP-11 response under subparagraph (a) . . . ." BOP's Program Statement No. 5050.50. A simple Google search reveals that BP-11 is a "Central Office Administrative Remedy Appeal" Form, which is used to submit an appeal of a BOP decision—here, the warden's denial of the compassionate release request—to the Central Office. *See* Federal Bureau of Prisons, Administrative Remedy Program, Program Statement No. 1330.18, 5 (Jan. 6, 2014), https://www.bop.gov/policy/progstat/1330_018.pdf. Therefore, it is clear to the Court that the inmate may file a motion to reduce sentence with the sentencing court only after 30 days have lapsed since filing a petition with the warden or after receiving a response to the inmate's appeal of the warden's denial of his request for compassionate release.

Courts in other jurisdictions have similarly concluded that a defendant must comply with the statutory text of Section 3582(c)(1)(A) before filing a motion with the sentencing court. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (concluding that defendant must comply with the § 3582(c)(1)(A) requirement that the BOP have 30 days to consider his request for compassionate release, or that he receive an adverse decision by the BOP constituting administrative exhaustion during that time period); *United States v. Reeves*, No. CR 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic and the heightened risk at the Oakdale facilities, § 3852(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period. Accordingly, the Court does not have authority at this time to grant the relief Reeves requests."); *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020) (rejecting defendant's argument that 30-day requirement should be ignored during COVID-19 crisis); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (rejecting COVID-19 compassionate-release request "[b]ecause defendant has not satisfied the exhaustion requirement, the court lacks authority to grant relief under § 3582(c)(1)(A)(i)"); *United States v. Williams*, No. JKB-15-0646, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (denying relief based on COVID-19 because "§ 3582(c)(1)(A) mandates that the defendant exhaust his or her administrative remedies prior to seeking relief in this Court").

This exhaustion requirement does not appear to be satisfied here. Reed first petitioned the warden of Morgantown FCI for compassionate release on March 26, 2020, asserting that his prostate cancer diagnosis and treatment, a back injury suffered due to a car accident in February 2019, his diabetes, and heart issues constitute extraordinary and compelling circumstances

warranting his release from prison. R. Doc. 535-14 at 2. On April 9, 2020, the warden denied Reed's request, concluding that his medical condition does not meet the criteria for compassionate release, as his condition is "neither terminal nor debilitating" and he is "capable of complete self-care, and [he is] not confined to a bed or chair." R. Doc 543-2. Rather than appealing the denial of his petition, however, Reed immediately filed the instant motion in this Court.

Nevertheless, contrary to the BOP's own Program Statement No. 5050.50 that lays out the administrative appeal process in detail, it appears that Morgantown FCI is allowing inmates to bypass the appeal process for the warden's denial of a compassionate release request and instead file a motion directly with the sentencing court after 30 days have lapsed since the inmate received the warden's denial notice. *See* R. Doc. 550-1 at 1 ("We at the institution have been instructed the inmates may file with their sentencing court after 30 days of receipt of the Warden's denial."). Accordingly, it appears that there is some confusion over whether Reed has exhausted his administrative remedies and may file a motion for compassionate release before his sentencing court. Due to this confusion, the Court will assume that Reed has exhausted his administrative remedies for the purpose of this motion and will evaluate whether Reed qualifies for compassionate release on the merits of his case.

### A. Safety to Others and Community

A defendant seeking compassionate release must also demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13. Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristic of the defendant, and the nature of seriousness of the danger to a person or the community at large posed by the defendant's release. 18 U.S.C. § 3142(g).

Here, Reed was convicted of a number of serious crimes, but none were crimes of violence or offenses involving controlled substances. Moreover, Reed does not have a history of criminal activity, *see* R. Doc. 407 at 26, nor does he have a record of violence while incarcerated. Further, Reed appears to have a wide and stable support system, as the Court has heard from a number of his friends and family members offering to support him if he is released from prison. Accordingly, the Court finds that Reed does not pose a risk to others or to his community if released.

## B. *Extraordinary and Compelling Reasons*

Although the relevant policy statement has not been amended to reflect legislative changes brought about by the First Step Act, the policy statement remains instructive to the Court's determination of whether extraordinary and compelling reasons warrant a sentence modification. In relevant part, the policy statement provides that an extraordinary condition exists if the defendant suffers from a terminal illness or another "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13 cmt. 1(a).

Reed clearly suffers from several medical conditions. However, a vast majority of them were in existence prior to his sentencing and were therefore considered when the Court granted him a significant downward variance on his imprisonment term. Specifically, Reed's high blood pressure and diabetes were diagnosed 15 years ago in 2005, and he has had a history of coronary artery disease for decades, as he underwent bypass surgery in 1997. R. Doc. 407 at 28. Moreover, although Reed did have two new stents inserted in March 17, 2020, the doctors concluded that Reed had not experienced a heart attack and he was found to be "alert, oriented" and in "no apparent distress" at subsequent doctor's appointments on April 8, 2020 and April 14, 2020. R.

Doc. 535-13 at 21 ("On admission, he was ruled out for acute coronary syndrome with negative trending troponins and negative EKG"), 32 ("Troponin was negative x4"), R. Doc. 535-19 at 27, 61.

It is also not clear to the Court that Reed's medical problems "substantially diminish" his ability to provide self-care within his correctional facility. *See* U.S.S.G. 1B1.13 cmt. 1(a). In fact, it appears that Reed has consistently received prompt care for his medical issues whenever they arise. As discussed above, when Reed reported experiencing chest pains, he was admitted to the hospital for testing and had stents inserted, which alleviated his symptoms. See R. Doc. 535-19 at 61 ("Inmate alert and oriented times 3. Inmate in no apparent distress."). Moreover, after initially deferring radiation, Reed has been receiving radiation routinely from oncologists for his prostate cancer. *See* R. Doc. 535-22. Reed has also received numerous blood glucose tests and whenever he reports symptoms, he is evaluated, and his insulin is adjusted as needed. See, e.g. R. Doc. 535-21 at 1–2. Finally, medical personnel have been responsive to all of Reed's requests for treatments, ranging from prescribing creams for a rash, *see* R. Doc. 535-21 at 238, acupuncture for hot flashes, R. Doc. 535-21 at 221, Tylenol and a catheter for a urinary tract infection, R. Doc. 535-21 at 36, 47, and scheduling Reed for labs and chest x-rays to evaluate any and all causes of his fatigue, R. Doc. 535-21 at 240.

Accordingly, the Court finds that Reed's medical condition does not constitute an extraordinary or compelling circumstance warranting compassionate release. However, even if Reed's medical condition did constitute an "extraordinary or compelling reason" that would warrant his release, the factors set forth in 18 U.S.C. § 3553(a) do not support his release at this time, as discussed in more detail below.

### C.  Section 3553(a) Factors

The Court must be satisfied that defendant's release is supported by the factors set forth in 18 U.S.C. § 3553(a). Section 3553(a) requires a court to consider the certain factors when imposing a sentence, including the nature and circumstances of the offense and history and characteristics of the defendant, the need for the sentence, and the variety of sentences available.

The Court recognized the severity of Reed's criminal offenses at the time of his sentencing, but after considering the amorphous and fluid state of the jurisprudence defining unlawful action relating to holding public office, as well as Reed's age and physical infirmities, the Court concluded that a significant downward variance was warranted and reduced Reed's sentence from the guideline range of 108 to 134 months in prison down to 48 months in prison. R. Doc. 472 at 83–88. Of the four-year prison term to which he was sentenced, Reed has served one year of it, or 25 percent. Thus, Reed was already sentenced to 60 months less than the low end of the guideline range suggested for a criminal defendant with similar offense levels and criminal histories and is now seeking to be released after serving only 12 months. The Court concludes that early release at this time would create sentencing disparities between Reed and other defendants with similar records convicted of similar crimes, which is what § 3553(a) attempts to prevent. *See* 18 U.S.C. § 3553(a)(6).

The Court is also not concerned with Reed's access to quality medical care while in the custody of the Bureau of Prisons. Section 3553(a)(2)(d) instructs a court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(d). As discussed above, Reed has been receiving constant care while in custody and the BOP is taking all of his reported symptoms and ailments seriously. The Court therefore is not

convinced by Reed's claim that the "complexities associated with [his] many conditions" are not likely to be addressed while he remains in BOP custody. *See* R. Doc. 535 at 11.

### D. *Home Confinement*

Reed repeatedly requests that the Court release him from prison or sentence him to home confinement. As discussed above, the Court is not inclined to grant Reed's request to be released after serving only one year of a four-year sentence. With respect to home confinement, it is well-established that the BOP has sole authority to determine an inmate's placement, with consideration given to a district court's non-binding recommendation. *See* 18 U.S.C. § 3621(b) (the BOP "shall designate the place of the prisoner's imprisonment" and will consider the sentencing court's recommendation in determining the placement); *United States v. Voda*, 994 F.2d 149, 151 (5th Cir. 1993) (citing cases that conclude that a sentencing court "may recommend that a sentence imposed under section 3621 be served in a particular prison or jail," but "only the Bureau of Prisons has the actual authority to designate the place of incarceration"). Although Congress expanded the BOP's authority to transfer additional defendants to home confinement through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), nothing in the CARES Act gave district court's authority over placement decisions. *See, e.g., United States v. McCann*, No. CR 5:13-52, 2020 WL 1901089, at *3 (E.D. Ky. Apr. 17, 2020) (finding that "the Court has no authority under [the CARES Act] to order that a prisoner be placed on home confinement"); *United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); *United States v. Engleson*, No. 13-CR-340-3 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (recognizing that the "ultimate decision of whether to release an inmate to home

confinement rests with the BOP"). This Court thus lacks the authority to order the BOP to transfer Reed to a home confinement placement.

Finally, the Court notes that "the BOP not only is aware of COVID-19, but also is taking its own measures to address the disease's impact," and "the BOP must use its expertise to consider both the impact of COVID-19 on individual prisoners, as well as the system-wide consequences of releasing prisoners as a response." *United States v. Calogero*, CM/ECF No. 18-203, R. Doc. 74 at 4 (E.D. La. Apr. 14, 2020). In light of COVID-19, the "BOP has increased [h]ome [c]onfinement by over 40% since March and is continuing to aggressively screen all potential inmates for [h]ome [c]onfinement," and "[i]nmates do not need to apply to be considered for home confinement." Federal Bureau of Prisons, Update on COVID-19 and Home Confinement (Apr. 5, 2020), https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp. The Court thus concludes that not only does the BOP have sole authority to determine whether home confinement is appropriate, it is also the best positioned to make this determination. In the instant case, the BOP has not determined that Reed is an appropriate candidate for home confinement.

## IV.     CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant Walter Reed's Motion for Compassionate Release Under the First Step Act, R. Doc. 535, is hereby **DENIED.**

New Orleans, Louisiana, this 2nd day of June, 2020.

**UNITED STATES DISTRICT JUDGE**